**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **KROY IP HOLDINGS, LLC,** | § | |
| | § | **C. A. No.: ________** |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **GROUPON, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Kroy IP Holdings, LLC ("Kroy IP"), by and through its undersigned counsel, hereby submits this Complaint for patent infringement against Defendant Groupon, Inc. ("Groupon"), and alleges as follows:

**NATURE OF THE ACTION**

1. This action arises under 35 U.S.C. § 271 for Groupon's infringement of Kroy IP's United States Patent No. 6,061,660 ("the '660 Patent").

**THE PARTIES**

2. Plaintiff Kroy IP Holdings, LLC is an inventor-owned company. Kroy IP is a limited liability company organized under the laws of the State of Delaware and is located at 301 South Fremont Avenue, Suite 300, Baltimore, Maryland 21230.

3. Upon information and belief, Defendant Groupon, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 600 West Chicago Avenue, Suite 400, Chicago, Illinois 60654. Groupon may be served

through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4. Groupon operates online local commerce marketplaces to connect merchants to consumers by offering goods and services at a discount through its website, www.groupon.com, and through Groupon mobile applications.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.* This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Groupon because Groupon is incorporated in Delaware, is registered to do business in Delaware, has committed acts within Delaware giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Groupon would not offend traditional notions of fair play and substantial justice. Groupon maintains substantial, systematic, and continuous contacts with Delaware, and/or Groupon has purposefully directed infringing activities at residents of Delaware, and this litigation results from those infringing activities. Groupon has committed and continues to commit acts of infringement in this District by, among other things, using, offering for sale, and selling products and/or services that infringe the ’660 Patent.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Groupon resides in this District by virtue of being incorporated in Delaware.

## PATENT-IN-SUIT

8. Kroy IP is the owner by assignment of all right, title, and interest in and to the ’660 Patent, entitled “System and Method For Incentive Programs And Award Fulfillment,”

which was duly and legally issued on May 9, 2000 by the United States Patent and Trademark Office to the inventors York Eggleston and Andrey Ukhov. The ’660 Patent is valid, enforceable, and currently in full force and effect. A true and correct copy of the ’660 Patent is attached hereto as **Exhibit 1** and incorporated herein by reference.

9. The ’660 Patent claims an incentive program builder with an award fulfillment system that permits multiple sponsors to customize and market incentive programs through a central market place utilizing an interface. The ’660 Patent discloses technology that allows sponsors to build incentive programs easily and efficiently along with the ability to track participation and fulfillment. *See*, *e.g.*, Exhibit 1, ’660 Patent, Col. 5:38-44. Prior conventional incentive program systems were limited to a specific type of incentive program or to the products and/or services of a single merchant. These prior conventional incentive programs required the merchant to use an independent contractor to code the computer software necessary for running the incentive program. *See*, *e.g.*, *id.* at Col. 5:1-26. Prior conventional incentive programs also could not track customer participation and automatically validate, authenticate, and fulfill awards. Further, conventional incentive program systems relied on conventional mechanisms for award fulfillment, such as issuing a paper certificate to the customer by mail that was redeemable at a retail location of the merchant. *See*, *e.g.*, *id.* at Col. 4:17-24.

10. To solve the issues with the conventional incentive program systems, the ’660 Patent introduced a novel incentive program builder with an award fulfillment system. The incentive program builder with an award fulfillment system of the ’660 Patent creates a customizable incentive program that permits users to select and/or enter parameters and track customer participation in multiple incentive programs. *See*, *e.g.*, *id*. at Abstract, Fig. 20, Cols. 5:46-54, 6:13-19, 6:53-7:6, 7:8-14, 14:40-49, 19:32-55, 30:47-31:24, 32:7-19, 32:25-28. The

incentive program builder with an award fulfillment system further provides verification, authentication, and automated fulfillments of awards. *See*, *e.g.*, *id.* at Figs. 13-14 Cols. 21:29-22:32, 46:33-54. The incentive program builder with an award fulfillment system is also centrally located at a host server. *See id.* at 12:21-57. The placement of the incentive program builder with an award fulfillment system in a central location at a host server allows for (1) multiple sponsors to create customized incentive programs without having to incur the added expense of hiring software developers to build their respective incentive program and (2) sponsor's customers to search for incentive programs at a single central location. *See id*. The incentive program builder with an award fulfillment system allows for sponsors to quickly and efficiently create promotions that can begin running immediately.

11. On May 19, 2014, the '660 Patent was placed in *ex parte* reexamination by Kroy IP. In June 2014, the Supreme Court, in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), issued a decision about patentable subject matter under 35 U.S.C. § 101. To address any potential invalidity issues with the '660 Patent, Plaintiff amended claims 1, 2, 4, 7, and 14, and added claims 16-115. Following a reexamination of the '660 Patent, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number 6,061,660 C1, on February 6, 2015, confirming the validity of claims 1, 2, 4, 7, and 14, and allowing additional claims 16-115. A true and correct copy of Ex Parte Reexamination Certificate, Number 6,061,660 C1 is included hereto in **Exhibit 1** and incorporated herein by reference.

## FACTUAL BACKGROUND

### A. York Eggleston, The Innovator

12. Co-inventor York Eggleston has a history as an innovator and an entrepreneur. Mr. Eggleston is the named inventor on three issued U.S. Patents and has five published patent

applications pending in areas relating to promotion automation, privacy, data transformation and analytics, and personalization.  Some of Mr. Eggleston's intellectual property has been commercialized via licensing programs with several leading global brands and businesses.

13. After obtaining his bachelor's degree from Harvard College and an MBA Degree with Distinction from Harvard Business School with an emphasis on Finance and Operations, and gaining experience at global management consulting and investment firms such as Booz Allen & Hamilton, Salomon Brothers, and Schroeder Ventures, Mr. Eggleston founded Crave Technologies, Inc. ("Crave") in 1996, with the goal of driving online marketing activity to retail locations.

14. While at Crave, Mr. Eggleston developed, among other things, a proprietary technology that facilitated connections between retailers and consumers by enabling retailers and other sponsors to create and implement network-based marketing, promotion, and incentive programs.  Mr. Eggleston was granted patents, including the '660 Patent, covering this proprietary technology.

15. Crave, through Mr. Eggleston's patented technology, developed, among other things, PromoBuilder™ and PromoClub™.

16. PromoBuilder™ was designed to enable manufacturers, retailers, and site hosts to purchase prepackaged promotions, and/or develop fully customized and unique promotional campaigns.  PromoBuilder™ was also designed to allow the sponsor of the promotion campaign to designate the method of fulfillment of a promotion by, for example, distributing the promotion across the Internet or to designated consumers via wirelesses devices or email.

17. PromoClub™ was designed to allow consumers to monitor and manage their participation in various promotion programs.  Features of PromoClub™ included quick

registration for participating promotions, award tracking, promotion-specific searches, and a directory of services.

18. PromoBuilder™ and PromoClub™ were designed to revolutionize the process for initiating and implementing incentive and promotional programs across networks. Crave set out to transform the promotions industry on the Internet by enabling merchants to build promotions for themselves and pioneered electronic Promotional Campaign Management, a methodology that enables a modular end-to-end or network to point-of-sale promotion solution to merchants that is both automated and customizable.

19. Mr. Eggleston is also the co-founder and managing member of YE Ventures, LLC ("YE Ventures"), a technology commercialization company, comprised of two operating units: Venture Capital and Venture Labs.

20. Venture Capital focuses on investing, providing growth capital, and harvesting of the firms in Venture Labs as well as non-Venture-Labs investments.

21. Venture Labs is a network of labs, each with a research focus area, independent IP portfolio, and proprietary technology assets. Each lab focuses on transforming technology-driven ideas into viable business applications, commercial entities, or corporate enterprises, *e.g.*, artificial intelligence used in real-time consumer applications, and artificial intelligence in telematics or environmental and health outcome predictions.

22. For example, in 2005, Mr. Eggleston co-founded Semantic Labs for the development of advanced multi-channel applications leveraging modular software development platform technology, innovative artificial intelligence, natural language processing, real-time data analytics and visualization, search, and messaging. The core technologies from Semantic Labs was commercialized in several ventures, including a nascent application focusing on

personalized alert creation recommendation services, a meme search, aggregation and analytics, and sentiment analysis of social media for opinion trends on stocks and companies.

23. Over the last several years, Mr. Eggleston has extended his lab venture model beyond Semantic Labs to several other technology and IP proprietary verticals, including those using advanced pricing analytics for intelligent agent shopping tools to those around using big environmental data and machine learning in the development of applications for smart water systems and for assessing and predicting the impact of particulate matter on health outcomes.

24. Mr. Eggleston also developed a strategic partnership and technology transfer relationship with the University of Maryland Baltimore College ("UMBC"), and his efforts have led to the receipt of a state grant to commercialize data analytics technology and natural language software for the analysis of social media for sentiment and opinion detection to be applied to the financial service and consumer goods and services domains.

25. Mr. Eggleston serves or has served on the boards of the Institute for Integrated Health, Maryland Academy of Sciences (at Maryland Science Center) Sub-Basement Art Studios and Communiversal, Inc., Network for Teaching Entrepreneurship Baltimore, Johns Hopkins Technology Transfer Advisory Board, and on the advisory board of the UMBC's Alex Brown Center for Entrepreneurship and Co-Founder and Past Chairman of National Association of Multi-Cultural Digital Entrepreneurs, and has been a frequent speaker and a contributor to both academic and commercial journals and publications.

**B. Co-Inventor Andrey Ukhov**

26. Co-inventor Andrey Ukhov obtained a Ph.D. in financial economics, an MBA degree, and an undergraduate degree in economics from Yale University. Professor Ukhov is an assistant professor of finance in the School of Hotel Administration at Cornell University, and an

expert on a wide range of investments, including preferred stocks, warrants, derivative securities, and convertibles. Professor Ukhov is a frequent presenter and discussant at international finance conferences. Prior to joining the School of Hotel Administration at Cornell University, he taught both undergraduate and graduate finance courses at the Kelley School of Business, Indiana University and the Kellogg School of Management, Northwestern University. Professor Ukhov has received numerous teaching awards at Cornell, Indiana, and Northwestern for undergraduate, masters, and Ph.D. level courses.

**C. Groupon and Its Infringing Products**

27. Groupon is a well-known company that operates online local commerce marketplaces to connect merchants to consumers by offering goods and services at a discount through its websites, including www.groupon.com, and through the Groupon mobile applications, including those running on the Apple iOS, Microsoft Windows, BlackBerry, and Google Android operating systems. Groupon has grown rapidly and now generates billions of dollars of revenue per year.

28. Groupon has appropriated the inventions of the '660 Patent. Upon information and belief, Groupon receives input from multiple merchants related to Groupon's various incentive programs and self-service platforms, including without limitation, Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center for Now! Deals, and Groupon's Deal Builder. For example, www.groupon.com displays thousands of restaurants, services, and other promotions, each of which include promotion parameters. The promotions are facilitated by Groupon and displayed on www.groupon.com or Groupon's application interfaces.

29. The website www.groupon.com and Groupon's mobile applications also allow consumers to select an incentive program out of many other incentive programs (*e.g.*, consumer

may select a dinner and movie incentive program). Once the promotion is selected, the consumer receives a "Groupon" or voucher (award) that the user can print out or present to the sponsor on a mobile device. The merchant using Groupon software, including but not limited to Groupon Merchant, can send a request to validate the voucher. To validate the voucher, the merchant can manually enter the Groupon number or scan the printed voucher or electronic copy of the voucher presented on the consumer's mobile device.

30. Upon information and belief, applications under Groupon's control, including at least Groupon's Groupon Stores, Merchant Center, Deal Builder, and Groupon Now!, use the technology claimed by the '660 Patent to permit multiple sponsors to customize an incentive application based on specific parameters, which tracks participation and verifies and fulfills awards. Groupon's mobile applications, including those running on the Apple iOS, Microsoft Windows, BlackBerry, and Google Android operating systems, use the technology claimed by the '660 Patent to permit multiple sponsors to customize an incentive application based on specific parameters, which tracks participation and verifies and fulfills awards.

**a. Groupon's 2010 Launch of Infringing Merchant Center for Groupon Stores**

31. Upon information and belief, in 2010, Groupon launched Merchant Center for Groupon Stores, a self-service platform that allows merchants to create and launch their own deals. Jennifer Van Grove, Groupon Merchants Can Now Create Their Own Deals, Mashable (Oct. 28, 2010), http://mashable.com/2010/10/28/groupon-stores-merchant-center/#DEnFqBwMlEqJ (last visited Oct. 5, 2017).



elithecomputerguy, Groupon Stores Video Review, YouTube (Dec. 9, 2010), https://www.youtube.com/watch?v=KVi9Apzt4CU (last visited Oct 5, 2017).

32. Upon information and belief, to promote and run a deal using Groupon Stores, the merchant first navigates to the Groupon Stores website. Next, the merchant logs into its store account through the Merchant Center. After logging into the Merchant Center, the merchant can click on the "Create a New Deal" icon. Next, the merchant enters the specifics of its deal, including price, value, and title, and set the terms of the deal, including whether to promote the deal to its Groupon customers (*i.e.*, the merchant's followers on Groupon) or all Groupon subscribers. Next, the merchant submits the deal for approval. Once the deal is approved by Groupon, the deal is scheduled and launched by Groupon.

**b. Groupon's 2011 Launch of Infringing Merchant Center for Now! Deals**

33. Upon information and belief, in 2011, Groupon launched Merchant Center for Now! Deals, a self-service platform that allows merchants to create and launch their own instant deals. Julie M, Groupon Now! Deals Available on Foursquare, GrouponBlog Beyond the Deals (July 29, 2011), https://www.groupon.com/blog/cities/groupon-now-deals-available-in-foursquare (last visited Oct. 5, 2017).

34. Upon information and belief, to promote a deal on Groupon Now!, the merchant first logs into its merchant account on Groupon's homepage. A true and correct copy of the Merchant Center User Guide found at http://www.groupon.com/guides/merchant_center_user_guide.pdf is attached hereto as **Exhibit 2** and incorporated herein by reference

35. Once logged in, the merchant enters the Merchant Center. *Id.* at p. 2. In the Merchant Center, the merchant goes to the Now! Deals tab and clicks "New Deal." *Id.* at p.3. An example image of the Merchant Center for Now! Deals is shown below:

*Id.* at p. 4.

36. The merchant can then enter specifics of its deal, including retail value, discount, and location where customers can redeem their Groupons. *Id.* Next, the merchant schedules when and how its deal will run. *Id.*

37. Next, the merchant clicks the "Launch Deal!" icon in order to launch the deal:

*Id.*

**c. Groupon's 2014 Launch of Infringing Deal Builder**

38. On February 10, 2014, Groupon launched Deal Builder, a 24/7 self-service option for merchants to build their own Groupon deal on the Groupon platform. Deal Builder guides local business owners or merchants through a step-by-step process and allows them to choose from a series of popular deal templates to construct a promotion. Samantha Carlin, Groupon Launches Deal builder, GrouponMerchant (Feb. 10, 2014), https://www.groupon.com/merchant/blog/groupon-launches-deal-builder (last visited Oct. 5, 2017).

39. Upon information and belief, to begin using Deal Builder, merchants first fill out their basic information. Nick Halliwell, Groupon Launches Deal Builder, A Build-Your-Own-Deal Tool for Merchants, Groupon Investor (Feb. 10, 2014),

http://investor.groupon.com/releasedetail.cfm?releaseid=824464 (last visited Oct. 5, 2017). Next, the merchants choose the right deal structure and discount for their business. *Id*. Afterwards, the merchants have an opportunity to review the final product and e-sign their contract with Groupon. *Id*. Next, the merchants' deal is launched after a short review process. *Id*.

**d. Groupon's 2016 Rebranding of Infringing Groupon Merchant**

40. On March 15, 2016, Groupon expanded its Merchant Platform. Updates included redesigned web and mobile tools, all under the Groupon Merchant™ brand (http://www.groupon.com/merchant), a new tablet app that allows users to track and manage their Groupon campaign and self-service deal options, providing merchants the ability to customize the structure and appearance of their promotion. As part of this expansion, for example, merchants that use Groupon's platforms to create their Groupon promotion would be able to choose a customized discount that works best for them, and merchants would be able to use their own images and descriptions to make their business and Groupon promotion stand out. Nick Halliwell, Groupon Expands Merchant Platform, Providing Local Businesses Everything They Need to Create and Manage a Successful Promotion, Groupon Investor (Mar. 15, 2016), http://investor.groupon.com/releasedetail.cfm?releaseid=960719 (last visited Oct. 5, 2017).

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,061,660**

41. Kroy IP hereby incorporates by reference Paragraphs 1 through 40 above as though fully set forth herein.

42. The '660 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

43. Pursuant to 35 U.S.C. § 271(a), Groupon is liable for direct infringement of at least one claim of the ’660 Patent, including without limitation, claims 1, 10, 16-21, 25, and 27-30, by having made, used, offered to sell, sold, provided, maintained, and/or supported its website portals and applications, including without limitation, www.groupon.com, Groupon’s Groupon Stores, Merchant Center, Deal Builder, and Groupon Now!, and its mobile applications, including without limitation, Groupon app and Groupon Merchant, running on the Apple iOS, Microsoft Windows, BlackBerry, and Google Android operating systems.

44. Attached as **Exhibit 3** is an exemplary claim chart comparing claims 1, 10, 16-21, 25, and 27-30 of the ’660 Patent to Groupon’s Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon’s Deal Builder. Kroy IP does not intend **Exhibit 3** to be comprehensive or limiting and Kroy IP reserves its rights to pursue all available infringement arguments as this case progresses. Upon information and belief, other products provided by Groupon also infringe the ’660 Patent.

45. Claim 1, for example, recites:

A system for incentive program generation, comprising:

a network;

a sponsor computer connected to the network;

a host computer connected to the network, the host computer having a server; an incentive program builder application, running on the server;

a database of objects associated with parameters of the incentive program builder application; and

an interface of the incentive program builder application for sponsor entry of parameters for an incentive program,

wherein the sponsor builds an incentive program by interacting with the incentive program builder application,

wherein the host computer is configured to receive input from a plurality of sponsors

corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors, receive second input from a consumer selecting an incentive program from among the plurality of incentive programs, issue an award to the consumer corresponding to the selected incentive program, receive a request to validate the award from a sponsor among the plurality of sponsors associated with the selected incentive program, and validate the award,

wherein the host, the sponsor, and the consumer are different entities, and

wherein the host and sponsor are different individuals or corporate entities.

46. With regard to claim 1, Groupon controls, owns, and operates a system for incentive program generation, including without limitation, Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center, and/or Groupon's Deal Builder. Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder are programs that guides a sponsor ("merchant") through a step-by-step process to build its own incentive program.

47. Upon information and belief, Groupon uses the internet as a network to connect merchants using, for example, Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and/or Groupon's Deal Builder to the Groupon's host computers. Groupon also uses wireless networks as networks to connect the merchant-side apps, such as Groupon Merchant app, to Groupon's host computer.

48. Upon information and belief, Groupon's uses a central computer and server systems that are connected to the internet and to wireless networks.

49. Upon information and belief, Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and/or Groupon's Deal Builder is linked to a "database" containing entries ("objects") for many different "parameters" of each "deal," including, for example: (1) the name of the merchant; (2) the title of the deal; (3) the retail value of the deal; (4) dates the "deal" is available; and/or (5) any restrictions on the deal. The

"objects" are the actual names/titles, dates, dollar amounts, etc., inputted into these "parameters" for a particular deal.

50. Upon information and belief, the websites and mobile applications for Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder that the merchants can access from a desktop computer, laptop computer, or mobile device such as a tablet connected to the network are the "interfaces" that the merchants use to "enter" the "parameters" into the "builder application." The "incentive program" is the "deal" Groupon offers to consumers.

51. Upon information and belief, the merchant uses the "interfaces" of Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder to "interact" with Groupon's software (the "incentive program builder application") in order to "build an incentive program" (i.e., create a deal).

52. Upon information and belief, the "host computer" is Groupon's in-house computer system and it communicates with Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and/or Groupon's Deal Builder. Either through the websites or mobile applications for Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder, the "host computer" receives the following:

[a] The "input" (deal details) of merchant which correspond to the "parameters" (e.g., name of deal, price, etc.). This "input" is received by Groupon "via the interface" of the Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center for Groupon Now! Deal, and Groupon's Deal Builder;

[b] Groupon receives "input" from consumers, either via Groupon's consumer-side

website, or via consumer mobile apps. In their "input," the consumers "select" which "incentive program" (i.e., which Groupon "deal") they want to buy;

[c] Groupon's "host computer" then "issue[s]" the consumer an "award" (Groupon calls the "award" a "voucher," which the consumer prints out or downloads). This award "correspond[s] to the selected incentive program" (that is, the Groupon voucher is specific to the "deal" the consumer bought);

[d] When the consumer shows up at the merchant's business to redeem the Groupon voucher, the merchant can use the Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and/or Groupon's Deal Builder website or the merchant-side apps to "validate" the "award" (that is, to check with Groupon that the voucher is valid). Upon information and belief, the merchant can also scan the printed voucher or electronic copy of the voucher presented on the consumer's mobile device to validate the voucher; and

[e] Groupon's computer system then sends back confirmation to the merchant that the voucher is valid. This is the "host computer" "validating" the "award."

53. Upon information and belief, Groupon, the merchant, and the customer are all different entities. Groupon's business model depends on itself being separate from the merchant and "consumers." For example, Groupon appears to make its money by charging consumers more, to buy the "deal," then Groupon returns to the merchants who created the "deal."

54. Therefore, all of the elements of at least claim 1 of the '660 Patent are infringed by Groupon.

55. Kroy IP has been damaged by the infringement of the '660 Patent by Groupon and will continue to be damaged by such infringement. Kroy IP is entitled to recover from

Groupon the damages sustained by Kroy IP as a result of Groupon's wrongful acts.

## PRAYER FOR RELIEF

WHEREFORE, Kroy IP prays for judgment against Groupon as follows:

1. A judgment in favor of Kroy IP that Groupon has infringed and continues to infringe one or more claims of the '660 Patent either literally and/or under the doctrine of equivalents;

2. An award of damages adequate to compensate Kroy IP for the infringement of the '660 Patent by Groupon, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, together with pre-judgment and post-judgment interest, in an amount according to proof;

3. An award of Kroy IP's costs of suit and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 due to the exceptional nature of this case, or as otherwise permitted by law with respect to Groupon;

4. An award of costs and expenses to Kroy IP; and

5. A grant to Kroy IP of such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Kroy IP hereby demands a trial by jury of any and all issues triable by a jury.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff KROY IP HOLDINGS, LLC*

OF COUNSEL:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
Jack Shaw
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
Tel: (650) 453-5170

Hershy Stern
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1700

Rodney R. Miller
KASOWITZ BENSON TORRES LLP
1349 West Peachtree Street N.W., Suite 1500
Atlanta, Georgia 30309
Tel: (404) 260-6080

Dated: October 6, 2017