### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KROY IP HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 17-1405-MN |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| GROUPON INC., | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S OBJECTIONS TO THE
### OCTOBER 9, 2018 REPORT AND RECOMMENDATION

OF COUNSEL:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
Jack Shaw
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
Tel: (650) 453-5170

Hershy Stern
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1700

Rodney R. Miller
KASOWITZ BENSON TORRES LLP
1349 West Peach tree Street, Suite 1500
Atlanta, GA 30309
Tel: (404) 260-6080

Dated: October 23, 2018
5972401 / 44459

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff Kroy IP Holdings, LLC*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................1

II.     STANDARD OF REVIEW .................................................................................................1

III.    ARGUMENT .......................................................................................................................2

        A.  The Report Erred by Narrowing *Alice* Step One Only to Improvements in the Functioning of a Computer ........................................................................................2

        B.  The Report Erred by Omitting Significant Claim Elements .........................................5

        C.  Claim Construction and Fact Discovery Are Required Before Determining *Alice* Step One Because Claim Limitations Are Not Generic Components ..................8

IV.    CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   890 F.3d 1354 (Fed. Cir. 2018)..........................................................................................9

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)..........................................................................................7

*Alice Corp. Pty.v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014).............................................................................................. passim

*Data Engine Techs. LLC v. Google LLC*,
   No. 2017-1135, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018)......................................3, 4, 5

*Enfish LLC v. Microsoft, Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..................................................................................passim

*Execware, LLC v. BJ'S Wholesale Club, Inc.*,
   C.A. No. 14-233-LPS, 2015 WL 5734434 (D. Del. Sept. 30, 2015).............................. 8-9, 10

*JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*,
   C.A. No. 16-212-GMS, 2016 WL 4639140 (D. Del. Sept. 6, 2016) ....................................2, 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299, 120 U.S.P.Q. 2d 1091 (Fed. Cir. 2016) ..........................................................3

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
   827 F.3d 1042 (Fed. Cir. 2016)......................................................................................2, 6

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
   675 Fed. App'x. 1001 (Fed. Cir. 2017) ..............................................................................3

**STATUTES & RULES**

28 U.S.C. § 636(b)(1)(c) .......................................................................................................1

FED. R. CIV. P. 12(b)(6) .......................................................................................................10

FED. R. CIV. P. 72(b)(2) .........................................................................................................1

FED. R. CIV. P. 72(b)(3) .........................................................................................................2

D. DEL. LR 72.1 ...................................................................................................................1

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 72(b)(2) and D. Del. LR 72.1, Plaintiff Kroy IP Holdings, LLC ("Kroy IP") respectfully objects to Magistrate Judge Fallon's Report and Recommendation (D.I. 39, the "Report"). Kroy IP respectfully objects to the Report's conclusion as to *Alice* step one that the challenged claims of the '660 patent are directed to an abstract idea. The Report errs in three respects in its analysis of *Alice* step one. First, the '660 patent claims recite a technical improvement to the functioning of prior art computer incentive programs. The claimed computer-based incentive program builder application allows the generation of incentive programs and storage of data at a central location, which improves the efficiency of the retailer's system. Second, at minimum, the Court erred by making its determination prior to construing the terms "incentive program builder application," "generator application program" and "executor application," which are important to provide further support that these limitations are not standard computer functions. Third, in holding that the '660 patent does not claim a manner for improving the memory, storage, or processing of a computer, the Court eliminated Kroy IP's ability to demonstrate at *Markman* and through discovery that these benefits flowed from these claimed limitations as understood by a person of ordinary skill in the art. As discussed further below, Kroy IP respectfully requests that the Court hold that the asserted claims of the '660 patent are directed to patentable subject matter under both *Alice* steps one and two.

## II. STANDARD OF REVIEW

In examining the Report, the Court "shall make a *de novo* determination of those portions of the report of the specified proposed findings or recommendations to which an objection is made." 28 U.S.C. § 636(b)(1)(c). The Court "may accept, reject, or modify the recommended

disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**III. ARGUMENT**

"At the motion to dismiss stage a patent claim can be found directed towards patent-ineligible subject matter if the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, C.A. No. 16-212-GMS, 2016 WL 4639140, at *1 (D. Del. Sept. 6, 2016) (*quoting Tuxis Techs., LLC v. Amazon.com, Inc.*, C.A. No. 13-1771-RGA, 2014 WL 4382446, at *2 (D. Del. Sept. 3, 2014)). In *Alice* step one, the inquiry focuses on the characterization of the claims—*i.e.*, what the claims, considered as a whole and in light of the specification, are directed to. *Enfish LLC v. Microsoft, Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1045 (Fed. Cir. 2016). In asking this threshold question, courts focus on the specific claimed solution, rather than high-level simplification, because "[a]t some level, 'all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. Pty.v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). A patent's description of technological shortcomings in the prior art supports the conclusion that the claims are directed to a specific, patent-eligible invention, rather than to an abstract idea. *See Enfish*, 822 F.3d at 1337.

**A. The Report Erred by Narrowing *Alice* Step One Only to Improvements in the Functioning of a Computer**

The Report incorrectly found that a patent is required to improve the way a computer operates to be patentable. For example, the Report found that the challenged claims of the '660 patent did not satisfy *Alice* step one because the claims "[did not] improve[] the functionality of the computer itself," (D.I. 39 at 24) "claim 10 [] fails to recite a specific improvement to computer functionality," (*id*.) "the '660 patent claims and specification do not identify any improvements to

2

the functionality of the computer itself" (*id*. at 31), "the asserted claims of the '660 patent do not change the functionality of the computer itself" (*id.* at 30), and "the claims did not identify an improved computer or network" (*id*. at 29).  But such a narrow interpretation of § 101 is inconsistent with Federal Circuit law confirming the patentability of claims directed to improvements to other prior art technologies or technological processes, beyond computer improvements themselves.  *See*, *e.g.*, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316, 120 U.S.P.Q. 2d 1091, 1103 (Fed. Cir. 2016) (claims to automatic lip synchronization and facial expression animation found eligible at *Alice* step one as directed to an improvement over prior art); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed. App'x. 1001, 1002–04 (Fed. Cir. 2017) (claims directed to the functionality of an electronic stock trading system found eligible at *Alice* step one as directed to improvement in software arts).  *Data Engine Techs. LLC v. Google LLC*, No. 2017-1135, 2018 WL 4868029, at *6 (Fed. Cir. Oct. 9, 2018) (finding claims directed to a user interface feature in three-dimensional spreadsheets eligible at *Alice* step one).  Indeed, the plain focus of the challenged claims, like those analyzed in *McRO*, *Trading Techs.*, and *Data Engine*, is on a technical improvement in the computer functionality of prior art computer incentive programs.

In its recent decision in *Data Engine*, the Federal Circuit analyzed numerous cases in which it found that technical improvements over prior art systems were not abstract.  For example, the Court noted that the claims in *Core Wireless* were an improvement in computer functionality because they "increased the efficiency with which users could navigate through various views and windows" and, thus, "recite[d] a specific improvement over prior systems." *Data Engine*, 2018 WL 4868029, at *6.  Here, the incentive program builder application in the challenged claims of the '660 patent increase the efficiency of prior art computer incentive programs by allowing

multiple retailers to automatically generate incentive programs from a central location, without having to host the computer incentive program on the retailer's servers and websites. ('660 patent at 28:19-30; 32:15-20; 36:13-19.) The Federal Circuit in *Data Engine* also reviewed and ratified its prior decision in *Trading Technologies* where it held that the claims increased the "speed, accuracy, and usability" in "computerized trading" and, thus, solved problems in the prior art. *Data Engine*, 2018 WL 4868029, at *7. Similarly, here the incentive program builder application in the challenged claims of the '660 patent allows retailers to create multiple custom, interactive incentive programs in real-time on a single platform, without having to hire or employ software engineers to design individualized programs for each promotion or use of their own server memory, thereby improving the speed, efficiency, and operation of prior art computer incentive programs. (*See* '660 patent at 3:18-20; 3:40-43; 4:19-22; 5:33-36; 5:1-26; 6:10.) The Federal Circuit in *Data Engine* also noted that the claims in *Affinity Labs* recited a specific structure that implements a specific function. *Data Engine*, 2018 WL 4868029, at *8 and fn 3. Here, the challenged claims of the '660 patent recite a specific structure (*i.e.*, incentive program builder application) with a user interface that performs a specific function (*i.e.*, generation of multiple custom, interactive incentive programs in real-time on a single platform). ('660 patent at 3:18-20; 3:40-43; 4:19-22; 5:1-26; 5:33-36; 6:10.)

The Report also contradicts the Federal Circuit's reasoning in *Data Engine* by finding that the benefit of the challenged '660 patent claims result from "the automation of a task previously performed by software engineers." (D.I. 39 at 29.) The *Data Engine* Court found that:

> "[i]t is not enough [] to merely trace the invention to some real-world analogy…. That question is reserved for §§ 102 and 103. The question of abstraction is whether the claim is 'directed to' the abstract idea itself. We must consider the claim as a whole to determine whether the claim is directed to an abstract idea or something more."

4

*Data Engine*, 2018 WL 4868029, at *8 (citation omitted). Here, the '660 patent's claimed system employs an incentive program builder to generate a new, customized incentive program based on the selection of parameters representing source code modules, which is not the product of pure automation. ('660 patent, claim 1 at 1:23-54.) Accordingly, the challenged claims of the '660 patent are directed to patent-eligible subject matter under *Alice* step one because they recite technical improvements to the functioning of prior art computer incentive programs. ('660 patent at 3:18-20; 3:40-43; 4:19-22; 5:1-26; 5:33-36; 6:10.)

### B. The Report Erred by Omitting Significant Claim Elements

The Report incorrectly concluded that the challenged claims of the '660 patent "are directed to the abstract idea of using generic computer components to create and implement incentive award programs."[1] (D.I. 39 at 22.) In other words, the Report incorrectly found that the challenged claims only recite generic computer components. The Report's conclusion does not capture the character of the challenged claims, and instead, omits significant claim elements. *Enfish*, 822 F.3d at 1335. Specifically, unlike the claims in *In re TLI Communications LLC Patent Litigation,* which the Report relies on (D.I. 39 at 23-24), the claimed "incentive program builder application," "generator application program," and "executor application" are not generic computer components, but are instead directed to technical improvements in computer incentive programs.

Claim 1 is directed to an incentive program builder that generates a customizable, interactive incentive and award program and webpages based on user-selected parameters, which are capable of tracking customer participation in multiple incentive programs and provide

---

[1] The Report correctly found that the claims of the '830 patent at issue in *Safeway* differ substantively from the challenged claims of the '660 patent. (D.I. 39 at 22.)

5

verification and automated fulfillment of the awards. ('660 patent, claim 1 at 1:23-54.) Claim 1 further teaches that the incentive program builder is located on a *host server*, which allowed for "a plurality of sponsors" to participate and offer incentive programs (*e.g.*, a central marketplace) to the consumer and obtain operation security through validation. (*Id*.) While the Report identifies some of the shortcomings in the prior art that the '660 patent addresses (D.I. 39 at 2), the Report failed to consider some of the major technical problems in the prior art discussed in the specification for which the '660 patent claims are directed to. *Rapid Litig.*, 827 F.3d at 1050 ("[I]t is not enough to merely identify a patent-ineligible concept underlying the claims; we must determine whether that patent-ineligible concept is ***what the claims is 'directed to***.'") (emphasis added). In particular, the Report failed to consider how the '660 patent describes how prior art computer incentive programs were offered by a *single sponsor* and were limited to offering consumers the ability to participate in incentive programs offered by the single sponsor. ('660 patent at 4:17-24.) This is significant because prior art computer incentive programs ran and were offered through the individual sponsor's *own* server and website, thus requiring the sponsors to have database storage capabilities. (*Id*.) These prior art computer incentive programs further required the sponsor to have specialized computer software that required programming to run the incentive program. (*Id*. at 5:16-22.) These prior art computer incentive programs also had limited safeguards in place to prevent counterfeiting or attempts at multiple redemptions (*i.e.*, validation). (*Id*. at 2:49-55.) The specification of the '660 patent recognizes these technical drawbacks, and makes clear that the specific combination of the incentive program builder application on a host in the challenged claims of the '660 patent improves upon prior art computer incentive programs by alleviating storage and processing burdens from the host system. *Alice*, 134 S. Ct. at 2358 (claims that "improve[ ] an existing technological process" fall within the scope of Section 101.)

Claim 10 is a system claim that, like claim 1, is directed to an incentive program builder application.  Claim 10 teaches additional limitations including, as noted in the Report, "a combination of a generator application program and an executor application that assists in maintaining the proprietary nature of the host's source code." (D.I. 39 at fn. 7.)  Despite acknowledging these limitations,[2] the Report found that these limitations "are functional recitations" and "us[e] only standard computer functions to perform ordinary tasks." (*Id*. at 25-26.)  The specification, however, provides detail regarding the implementation of the novel combination of the generator application program and executor application. ('660 patent at 48:28-48; 36:64-37:14.)  Indeed, the Report correctly noted that "the '660 patent specification provides additional context to the asserted claims." (D.I. 39 at 26.)  Yet, the Report erroneously relied on *Affinity Labs* to determine that "the focus of the § 101 inquiry is on the language of the claims themselves" (*id*.) and that the challenged claims did not "describe how a sponsor may implement the incentive builder application program to build an incentive program" (*id.* at 28).

In *Enfish*, the Federal Circuit clarified that the *Alice* step one inquiry focuses on the characterization of the claims—*i.e.*, what the claims, considered as a whole and **in light of the specification**, are directed to.  *See Enfish*, 822 F.3d at 1335 (claims must be "considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter'").  Further, in *Affinity Labs*, the Federal Circuit held that the claimed "downloadable application" was not an inventive concept because it was a generic component and because the specification failed to explain how the application was implemented. *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1258-59 (Fed. Cir. 2016).   Contrary to the Report's

---

[2] The Report correctly noted that Groupon failed to meet its burden in showing that claim 1 is representative of claim 10. (D.I. 39 at fn. 7).

determination, the challenged claims of the '660 patent are not analogous to those in *Affinity Labs*. In particular, the incentive program application builder is a technical solution to problems in prior art computer incentive programs. ('660 patent at 3:18-20; 3:40-43; 4:19-22; 5:1-26; 5:33-36; 6:10.) Moreover, unlike *Affinity Labs*, the specification of the '660 patent contains detail on how a person of ordinary skill in the art could implement the claimed incentive program application builder. *See*, *e.g.*, '660 patent at 32:7-33:10; *Enfish*, 822 F.3d at 1335. Accordingly, the challenged claims of the '660 patent are directed to patent eligible subject matter because they claim an incentive program builder application running on a central server that allows multiple retailers to generate incentive programs in real-time, and based on retailer-selected parameters reflecting a database of source code objects.

      **C.    Claim Construction and Fact Discovery Are Required Before Determining *Alice* Step One Because Claim Limitations Are Not Generic Components**

As with the claimed "incentive program builder application," the "generator application program" and "executor application" are not generic computer components; each are instead technical improvements in computer incentive programs. The construction of each of these terms is important, and will provide further support that these limitations are not standard computer functions, and instead provide technical solutions to prior art computer incentive programs. Thus, at the very least, the Report's conclusion as to the direction of the challenged claims of the '660 patent is not the *only* plausible reading of the '660 patent. *JSDQ*, 2016 WL 4639140, at *1. Further, under a similar analysis of the claims at issue in *JSDQ* and *Execware*, Courts in this District found that claim construction and fact discovery were necessary in determining whether the claim was directed to an abstract idea. *See JSDQ*, 2016 WL 4639140, at *3 (A court should "address whether there are issues of claim construction that must be resolved before deciding the motion."); *Execware, LLC v. BJ'S Wholesale Club, Inc.*, C.A. No. 14-233-LPS, 2015 WL

8

5734434, at *5 (D. Del. Sept. 30, 2015) (denying motion to dismiss without prejudice, finding that formal claim construction was necessary and finding "discovery must be allowed to explore facts related to, e.g., preemption, questions of patentability, or whether the claims 'solve a technological problem'"). Moreover, the Federal Circuit recently in *Aatrix Software* confirmed that the Report conflates *Alice* step one and *Alice* step two by concluding that the claimed "incentive program builder application," the "generator application program" and "executor application" are generic computer components as such a determination is a question of fact that cannot be made at the 12(b)(6) or 12(c) stage against the patentee without consideration of the relevant facts and claim constructions, as developed in discovery or confirmed to be undisputed by the patentee. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1359 (Fed. Cir. 2018) (denying *en banc* rehearing and confirming that whether a claim element is conventional to a person of skill in the art at a particular time is a question of fact reserved for *Alice* step two and "must be answered under the normal procedural standards").

In its briefing, Kroy IP established why claim construction is required in this case prior to a decision on § 101 issues with citations to specific parts of the intrinsic record. (D.I. 14 at 19-20.) In particular, Kroy IP identified several claim terms and provided an analysis of the parties' dispute regarding the proper construction and importance of these terms, the construction of which are relevant to the Court's § 101 analysis. (*Id.*) (*e.g.*, "incentive program builder application," "validation," "object association application," "editor," "generator application program," and "executor application"). Kroy IP also offered a proposed construction for the "incentive program builder application," which the Report does not address. (D.I. 23 at 4-5.)

The Report further found that "the '660 patent does not claim a manner of decreasing the amount of memory, storage, or processing required by a computer to develop an incentive

9

program, and instead shifts these requirements from the retailer computer to a centrally-located host computer" and "the core of the '660 patent claims are derived from the Internet's provision of shared resources and communications used to access multiple applications…." (D.I. 39 at 30.) But these are issues for fact and expert discovery. Contrary to the Report's determination, discovery can and will support Kroy IP's position that the hosting of the incentive program builder on a central host server directly reduces the computer memory and processing requirements for the sponsor by eliminating the need for the sponsor to run and offer incentive programs from his own server and website. Moreover, additional discovery can and will support Kroy IP's position that the hosting of the incentive program builder on a central host server is not simply derived from the Internet's provision of shared resources and communications used to access multiple applications, but is a technical improvement in prior art computer incentive programs. (*See* '660 patent at 28:19-30.) Thus, at the very least, this factual issue cannot be resolved without discovery on a Rule 12(b)(6) motion. *Execware*, 2015 WL 5734434, at *5 ("discovery must be allowed to explore facts related to [] questions of patentability, or whether the claims 'solve a technological problem'").

## IV.     CONCLUSION

For the foregoing reasons, the Report and Recommendation's determination that the challenged claims of the '660 patent are directed to an abstract idea should be rejected. At minimum, the Court should defer ruling on § 101 issues until after claim construction and further discovery.

|  |  |
|---|---|
| | Respectfully submitted, |
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Jonathan K. Waldrop | |
| Darcy L. Jones | By: */s/ Stephanie E. O'Byrne* |
| Marcus A. Barber | David E. Moore (#3983) |
| John W. Downing | Bindu A. Palapura (#5370) |
| Heather S. Kim | Stephanie E. O'Byrne (#4446) |
| Jack Shaw | Hercules Plaza, 6th Floor |
| KASOWITZ BENSON TORRES LLP | 1313 N. Market Street |
| 333 Twin Dolphin Drive, Suite 200 | Wilmington, DE 19801 |
| Redwood Shores, CA 94065 | Tel: (302) 984-6000 |
| Tel: (650) 453-5170 | dmoore@potteranderson.com |
| | bpalapura@potteranderson.com |
| Hershy Stern | sobyrne@potteranderson.com |
| KASOWITZ BENSON TORRES LLP | |
| 1633 Broadway | *Attorneys for Plaintiff Kroy IP Holdings, LLC* |
| New York, NY 10019 | |
| Tel: (212) 506-1700 | |

Rodney R. Miller
KASOWITZ BENSON TORRES LLP
1349 West Peach tree Street, Suite 1500
Atlanta, GA 30309
Tel: (404) 260-6080

Dated: October 23, 2018
5972401 / 44459

11