IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KROY IP HOLDINGS, LLC,               )
                                     )
                Plaintiff,           )
                                     )
        v.                           )    C.A. No.  17-1405 (MN)
                                     )
GROUPON INC.,                        )
                                     )
                Defendant.           )

## MEMORANDUM OPINION

David E. Moore, Bindu A. Palapura, Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP,
Wilmington, DE; Jonathan K. Waldrop, Darcy L. Jones, Marcus A. Barber, John W. Downing,
Heather S. Kim, Jack Shaw, KASOWITZ BENSON TORRES LLP, Redwood Shores, CA; Hershy
Stern, KASOWITZ BENSON TORRES LLP, New York, NY, Rodney R. Miller, KASOWITZ BENSON
TORRES LLP, Atlanta, GA– attorneys for Plaintiff

Steven J. Balick, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Thomas L. Duston, Tron
Y. Fun, MARSHALL, GERSTEIN AND BORUN, LLP, Chicago, IL – attorneys for Defendants

December 10, 2018
Wilmington, Delaware

*[signature]*

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are the objections of Plaintiff Kroy IP Holdings, LLC ("Plaintiff" or "Kroy") (D.I. 41) to Magistrate Judge Fallon's Report and Recommendation (D.I. 39, "the Report"). The Report recommended denial of Defendant Groupon Inc.'s ("Defendant" or "Groupon") motion to dismiss for failure to state a claim (D.I. 10) on the grounds that certain claims of U.S. Patent No. 6,061,660 ("the '660 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. The Court has reviewed the Report, Plaintiff's objections and Defendant's responses thereto, and the Court has considered *de novo* the relevant portions of Defendant's motion to dismiss, materials submitted with the motion and the transcript of the May 22, 2018 hearing before Magistrate Judge Fallon. For the reasons set forth below, Plaintiff's objections are OVERRULED, the Report is ADOPTED and Defendant's motion to dismiss is DENIED.

## I.   BACKGROUND

On October 6, 2017, Plaintiff filed the present action, alleging that Defendant's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals and Deal Builder offerings infringe claims 1, 10, 16-21, 25 and 27-30 of the '660 Patent ("the Asserted Claims"). (*See, e.g.*, D.I. 1 ¶¶ 1, 44). On December 14, 2017, Defendant filed the present motion to dismiss (D.I. 10) for failure to state a claim upon which relief may be granted, arguing that the Asserted Claims of the '660 Patent are invalid as claiming ineligible subject matter under 35 U.S.C. § 101.

The '660 Patent, which is titled "System and Method for Incentive Programs and Award Fulfillment," is generally directed to conducting incentive programs over computer networks and providing sponsors, retailers and consumers with the ability to fulfill awards received through the

incentive program. ('660 Patent at Abstract; *see also id.* at 1:20-22, 5:47-54).[1] The '660 Patent

originally contained fifteen claims, each directed to a system or method[2] for "incentive program

generation" or "incentive program generation and award fulfillment." (*Id.* at Claims 1-15). In an

*ex parte* reexamination, Plaintiff amended several of these claims and added an additional 100

claims. (*See id.* at Claims 1, 2, 4, 7, 14, 16-115 (reexam certificate)).

Claims 1 and 10 of the '660 Patent are the only independent claims of the Asserted Claims.

Claim 1, as amended in the *ex parte* reexamination, recites:

> 1. A system for incentive program generation, comprising:
>
>> a network;
>>
>> a sponsor computer connected to the network;
>>
>> a host computer connected to the network, the host computer having a server;
>>
>> an incentive program builder application, running on the server;
>>
>> a database of objects associated with parameters of the incentive program builder application; and
>>
>> an interface of the incentive program builder application for sponsor entry of parameters for an incentive program,
>>
>> wherein the sponsor builds an incentive program by interacting with the incentive program builder application,
>>
>> wherein the host computer is configured to receive first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors, receive second input from a consumer selecting an incentive program from among the plurality of incentive programs, issue an award to the consumer corresponding to the selected incentive program, receive a request to validate the award from a sponsor among the

---

[1]    The '660 Patent is attached as Exhibit 1 to the Complaint (D.I. 1).

[2]    In the present case, Plaintiff has only asserted system claims.

2

plurality of sponsors associated with the selected incentive program, and validate the award,

wherein the host, the sponsor, and the consumer are different entities, and

wherein the host and the sponsor are different individuals or corporate entities.

('660 Patent at Claim 1 (reexam certificate)). Claim 10 is directed to a system like claim 1 but with additional limitations regarding award fulfillment (*e.g.*, "a fulfillment automation application program" and "an electronic card for fulfillment") and computer code for the incentive builder application:

10. A system for incentive program generation and award fulfillment, comprising:

a host computer connected to a network;

a client computer of a consumer connected to the network;

a sponsor computer of a sponsor connected to the network;

an incentive participation application program for participation by the consumer in an incentive program, wherein the participation may be in incentive programs of a plurality of sponsors;

a server of the host computer;

a web site, located on the server of the host computer, wherein the consumer may participate in an incentive program via the web site;

a database of the host computer of awards associated with the incentive participation application programs;

an award association application program for associating an award with an incentive program;

a fulfillment automation application program for associating a fulfillment method with an award;

an electronic card for fulfillment of an award, having memory for storing information associated with the consumer, wherein the information may be a personal identification number or

3

information associated with the consumer's participation in an incentive program; and

an incentive builder application program, running on the server of the host computer, wherein the sponsor may build an incentive program by interacting with the incentive builder application program, wherein the incentive builder application program comprises a database of objects associated with incentive programs, wherein each object is associated with an action that is associated with the incentive program, an interface for permitting a sponsor to enter parameters associated with an incentive program, an object association application for associating objects with the parameters entered by a sponsor and building a file comprising the objects associated with all of the parameters entered by a sponsor, an editor for generating an electronic file containing code for the incentive program, a classifying application program for classifying the code in numbers that represent the elements of the code, a generator application program for generating tables of the numbers that represent the code for the incentive program, and an executor application that is capable of interpreting the tables and executing the code.

(*Id.* at Claim 10).

The remaining Asserted Claims were added in the *ex parte* reexamination and ultimately depend from claim 1 (through claim 16). Each of these claims requires the incentive program to be a promotion offered by a sponsor to the consumer and facilitated by the host. ('660 Patent at Claim 16). Claims 17-19 add limitations related to the host computer and interface that the sponsor uses to build the incentive program, and claims 20-21, 25 and 27-28 add limitations related to parameters that the sponsor inputs into the interface. (*See id.* at Claims 17-21, 25 and 27-28 (reexam certificate)). Claim 29 adds to claim 16 that a website interface on the host receives consumer interaction. (*See id.* at Claim 29 (reexam certificate)). Claim 30 further adds that the consumer interaction is registration at the host's website. (*See id.* at Claim 30 (reexam certificate)).

On October 9, 2018, Magistrate Judge Fallon issued a Report and Recommendation that recommended denial of Defendant's motion to dismiss.[3] (*See* D.I. 39). As to step one of the *Alice* framework for determining patent-eligible subject matter under § 101, the Report concluded that the Asserted Claims are directed to an abstract idea. (*See id.* at 21-31). In particular, the Report found that the Asserted Claims are directed to the abstract idea of "using generic computer components to create and implement incentive award programs." (*Id.* at 22). At step two of the *Alice* framework, the Report concluded that issues of fact remain as to whether the claims recite more than "well-understood, routine and conventional" activities previously known in the industry such that the claimed abstract idea is transformed into patent-eligible subject matter. (*See id.* at 31). Additionally, the Report noted that claim construction – which has not yet occurred – could also impact the analysis under step two. (*Id.*). The Report therefore recommended denial of Defendant's motion to dismiss so that "additional evidence outside the scope of the pleadings" could be considered in determining whether the Asserted Claims are directed to ineligible subject matter under § 101. (*Id.*).

On October 23, 2018, Plaintiff filed objections to the Report only as to its conclusion that the Asserted Claims are directed to an abstract idea at *Alice* step one. (*See* D.I. 41). Plaintiff asserted three purported errors in the Report's analysis. First, according to Plaintiff, the Report "found that a patent is required to improve the way a computer operates to be patentable." (*Id.* at 2; *see also id.* at 3-5). Second, the Report ignored "significant claim elements" that are not generic computer components but are instead improvements in computer incentive programs. (*Id.* at 5-8).

---

[3]     The Report also recommended denial of Defendant's motion to transfer (D.I. 17) and Plaintiff's motion for a stay of the transfer decision pending jurisdictional and venue-related discovery (D.I. 26). (*See* D.I. 39 at 14-15). Neither party objected to the Report's recommended denial of these motions, and the Court adopted those portions of the Report on November 1, 2018. (*See* D.I. 43).

And third, claim construction and fact discovery are necessary to resolve the issue of whether the Asserted Claims are directed to an abstract idea under step one of *Alice*. (*Id.* at 8-10). Defendant did not object to the Report but responded to Plaintiff's objections on November 6, 2018. (*See* D.I. 44).

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

### B.     Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful

improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2354 (2014). These "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 134 S. Ct. at 2354. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 134 S. Ct. at 2355. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1.     Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In performing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 134 S. Ct. at 2354; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2.     Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 134 S. Ct. at 2355; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T*

*Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

## III.  **DISCUSSION**

### A.  Step One of the *Alice* Framework

Defendant argues that the Asserted Claims of the '660 Patent are directed to ineligible subject matter under § 101. As to step one of *Alice*, Defendant argues that the Asserted Claims[4] are directed to the abstract idea of "creating and implementing incentive programs through the use of general purpose computers and networks, such as the Internet" or, more generally, "providing an incentive award program to consumers." (D.I. 11 at 10). Citing the '660 Patent itself, Defendant notes that incentive award programs have been around for many years to encourage consumers to purchase products or services. (*Id.*; *see also* '660 Patent at 1:27-30 ("Incentive award programs, in which incentive companies contract with sponsoring companies for programs to promote sales of the sponsoring companies' products or services, are well-known.")). Those incentive programs, according to Defendant, have been conducted by humans for a long time

---

[4]    Despite characterizing claim 1 as "representative" (D.I. 11 at 4, 10), Defendant addresses each of the Asserted Claims in its § 101 analysis (*see, e.g.*, *id.* at 15-16). The Court will also address each of the Asserted Claims separately.

without the use of computers – *e.g.*, distributing promotional coupons through circulars for redemption at the relevant retailer. (D.I. 11 at 9-10). That the claimed incentive award program is implemented on computers and a network does not change the abstractness of the invention in Defendant's view. The Asserted Claims are not directed to any improvement in computer technology previously used to run incentive programs – rather, generic computers are merely used as a tool to implement the abstract idea of providing an incentive program. (*Id.* at 11).

Plaintiff argues that the Asserted Claims are not directed to an abstract idea, but to an improvement in computer functionality – *i.e.*, "an incentive program builder application running on a central server that allows multiple retailers to generate incentive programs based on retailer-selected parameters reflecting a database of source code objects that validates retailer-created promotions in real-time." (D.I. 14 at 7-8). Plaintiff claims that the invention solves "specific technical problems in the prior art," which purportedly lacked the ability to provide automatic generation of incentive programs through a sponsor's entry of parameters. (*Id.* at 8; *see also* '660 Patent at 5:33-36). According to Plaintiff, the prior systems limited consumer participation to programs offered by an individual retailer on the retailer's own server and programs with "individualized software" for the incentive program developed by the retailer. (D.I. 14 at 8). Coupon verification in the prior art was also problematic in that a check-out clerk tasked with verifying redemption conditions would face difficulty when the customer presented numerous coupons. (*Id.* at 8-9). Plaintiff contends that the '660 Patent invention solves these problems and "improves the efficiency and operation" of incentive award systems in the prior art. (*Id.* at 8). Specifically, Plaintiff argues that its claims incorporate "novel data structures" that create a "new, customized incentive program," which allows retailers to select parameters for award validation. (*Id.* at 9). Plaintiff further argues that the claimed system "reduces memory and processing

requirements as a result of placing the incentive program builder application on a centrally-located server." (*Id.*).

In the present case, the relevant inquiry at step one of *Alice* is whether the claims are directed to an improvement in computing devices or other technology, as Plaintiff asserts, or whether they are simply to "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool," as Defendant contends. *Enfish*, 822 F.3d at 1336; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery."). The Federal Circuit has "repeatedly held that inventions which are directed to improvements in the functioning and operation of the computer are patent eligible." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018); *see also Core Wireless*, 880 F.3d at 1361-62 (collecting cases).

As noted above, it is helpful to compare the claims at issue to claims previously found to be directed to an abstract idea in other cases. *See, e.g., Enfish*, 822 F.3d at 1334 (noting the lack of "definitive rule" for determining whether something is an abstract idea and explaining that both the Supreme Court and Federal Circuit "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases").[5] Here, Plaintiff relies on *Enfish* to argue that the Asserted Claims are directed to an improvement in computer

---

[5]     The Court appreciates that step one of *Alice* can be difficult when abstract ideas are at issue. *See, e.g., Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) ("With these guideposts in mind, and cognizant of the difficulty inherent in delineating the contours of an abstract idea, we turn to the claims at issue here."); *Epic IP LLC v. Backblaze, Inc.*, C.A. No. 18-141-WCB, 2018 WL 6201582, at *2 (D. Del. Nov. 26, 2018) (Bryson, J., sitting by designation) ("Defining an 'abstract idea,' as that term is used in section 101 jurisprudence, has not proved to be a simple task.").

functionality for incentive award systems. (D.I. 14 at 9). In *Enfish*, the claims at issue were directed to a method or system of data storage and retrieval for computer memory, where each claim required a self-referential table for storing tabular data. *Enfish*, 822 F.3d at 1336-37. The claims were limited by the self-referential table element and the patents made clear that the invention improved the way prior computer systems stored data. *Id.* at 1337. As the Federal Circuit noted, the specification taught how the claimed self-referential table functioned differently from conventional databases, and how the invention afforded specific benefits over existing data storage and retrieval, such as "increased flexibility, faster search times, and smaller memory requirements." *Id.* Thus, the *Enfish* claims were not directed to an abstract idea, but rather to "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id.* at 1339; *see also id.* at 1336 ("[T]he plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity.").

The Asserted Claims here are unlike those found eligible in *Enfish*. In looking at the "claimed advance over the prior art," the Court finds that the "character as a whole" of the Asserted Claims is to the provision of an incentive award system to consumers using computer technology. *See Affinity Labs*, 838 F.3d at 1257. Claim 1 of the '660 Patent is to a "system for incentive program generation" that requires a network, server, computers connected to the network, an interface and database of objects, an incentive program builder application and certain requirements regarding the host computer (*e.g.*, configured to receive sponsor input, consumer selection, award validation and issuance). ('660 Patent at Claim 1 (reexam certificate)). Similarly, claim 10 is to a "system for incentive program generation and award fulfillment" that requires a network, server, computers connected to the network, database, and incentive program builder

application. (*Id.* at Claim 10). The focus of both claims is on a sponsor's creation of an incentive award system for participation by consumers. Neither claim requires the incentive program to be implemented on any particular or specialized network, server, computer, interface or database. Nor do these claims recite an improvement in the operation of these technologies – rather, they are generic computer components used to run the incentive program. (*See, e.g., id.* at 5:39-40, 5:47-50). The "incentive program builder application" in claim 1 also appears to be generic computer functionality[6] that merely allows input from sponsors and consumers, and the additional limitations to the "incentive builder application program" in claim 10 use computer components (*e.g.*, database, interface, editor, code) in their ordinary capacity to provide the incentive program to consumers. The remaining limitations in both claims are either generic computer components or functional limitations intended to claim a result (*e.g.*, award validation and issuance, application programs for award association and fulfillment).[7] Thus, the plain focus of claims 1 and 10 is providing an incentive award system using generic computer technology.

The '660 Patent's discussion of the problems in the prior art and its description of the purported invention further underscore this characterization. The specification explains that incentive programs generally were well known in the prior art:

> Incentive award programs, in which incentive companies contract with sponsoring companies for programs to promote sales of the sponsoring companies' products or services, are well-known. Incentive programs include discount coupon programs; customer

---

[6]     The specification states that the incentive program "include[s] *any* program for creating incentives" (*id.* at 7:41-42 (emphasis added)) and, further, "the incentive programs that are build [sic] by the host system *may be of any type*, ranging from computer games such as TETRIS and pinball, to question and answer or trivia games, to surveys, to scratchand-win [sic], treasure hunt, sweepstakes, customer loyalty programs *and other typical incentive programs*" (*id.* at 30:58-63 (emphases added)).

[7]     This conclusion also applies to the "electronic card" recited in claim 10, which is merely a generic limitation that covers anything that can achieve electronic payment. (*See* '660 Patent at 13:36-37 (electronic card may be "any type of electronic payment card")).

> loyalty programs, such as frequent flyer programs, and promotional
> games, such as sweepstakes prizes, scratch-and-win games, and the
> like, in which a sponsoring company's products or services are won
> by successful participation in the incentive program.

('660 Patent at 1:27-35). Those systems suffered from various drawbacks such as difficulty in

modifying the incentive program and tracking participation data, as well as undesired costs in

administering the program to consumers. (*See id.* at 1:46-2:5). The specification also describes

some of the computer-based incentive award programs available in the prior art, including ones

administered over the Internet. (*See, e.g., id.* at 2:63-3:14, 3:21-38, 4:17-20, 4:33-54). Those

systems suffered from their own problems – *e.g.*, not allowing sponsors to generate incentive

programs, not allowing consumers to track participation in multiple incentive programs, not

providing for automated and convenient award fulfillment. (*See, e.g., id.* at 3:16-20, 3:38-42, 4:20-

32). Notably, the specification explains that these prior systems were problematic because "they

require specific computer software or computer hardware to be purchased in order to participate

in the incentive program. . . . [A]nd no convenient mechanism existed to convey the information

that the customer had won a prize to the party who was required to fulfill the prize." (*Id.* at 5:2-

10). In describing the need existing in the prior art – as well as the nature of the claimed invention

– the specification provides:

> Accordingly, a need has arisen for an incentive program and award
> fulfillment system that provides easy access to consumers who have
> standard computer hardware and software, that permits sponsors to
> build or purchase incentive programs easily and efficiently, and that
> provides for convenient tracking of participation and convenient,
> automated award fulfillment. . . .
>
> The present invention provides a new incentive program and award
> system for using a computer network, preferably the Internet, to
> provide consumer access to expanded incentive programs using a
> conventional computer, to permit sponsors to build, buy, store,
> modify, offer, track and administer incentive programs and to permit
> sponsors and retailers to offer improved award fulfillment for
> participants in incentive programs.

(*Id.* at 5:37-54).  Although some problems with prior computer-based incentive award systems are detailed, the claimed advance is not described as any specific improvement to the technology used to implement those prior systems.  There is no discussion, as in *Enfish*, of how the invention improves the functioning of any technology.  Instead, the claimed invention is touted as a more fulsome and convenient incentive award program that is simply provided by computers.

Contrary to Plaintiff's suggestion, the claims are not directed to an improvement in technology used to administer incentive award systems, but rather to the more general concept of providing an incentive award system (using computers).  Providing an incentive award system is simply a method of organizing human activity – a concept regularly found abstract at *Alice* step one.  *See, e.g., BSG Tech*, 899 F.3d at 1286 (system and method claims to indexing and retrieving data posted to a network were directed to abstract idea because focus of claims was presenting information to users before data input, a method of organizing human activity); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (system claims directed to filtering content on the internet were directed to an abstract idea because "filtering content is . . . a longstanding, well-known method of organizing human behavior"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (claims directed to tracking and storing financial transactions in database and communicating with user when pre-set spending limit reached were directed to an abstract idea because they were "not meaningfully different" from others involving methods of organizing human activity found ineligible).

Here, it is noteworthy that the '660 Patent states that incentive programs – *i.e.*, the focus of the claimed invention – are about modifying human behavior:

> ***Incentive programs offer awards and incentives to modify behavior of individual consumers and to direct the consumers to some pre-determined action***, such as purchase of products or services upon visiting a retail site, viewing advertising, testing a

> product, or the like. Companies use awards and incentives to
> increase awareness of product offerings, to launch new products, to
> attract the attention of newly identified audience, to differentiate
> products *to encourage certain behavior*, to obtain information, and
> for other purposes.

'660 Patent at 1:36-45 (emphases added).[8] That the claimed incentive program is to be performed

on computers and networks does not save the claims from abstraction. *See, e.g., BSG Tech*,

899 F.3d at 1285 ("If a claimed invention only performs an abstract idea on a generic computer,

the invention is directed to an abstract idea at step one."); *Enfish*, 822 F.3d at 1335 ("[F]undamental

economic and conventional business practices are often found to be abstract ideas, even if

performed on a computer."). As noted above, the computer-related limitations of claims 1 and 10

are generic computer components used in their ordinary capacity to provide an incentive award

system to consumers. This is not a situation where the claimed invention "is necessarily rooted in

computer technology in order to overcome a problem specifically arising in the realm of computer

networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

Instead, these claims are not meaningfully different than others found directed to abstract ideas

implemented on generic computer technology at *Alice* step one. *See, e.g., Move, Inc. v. Real Estate*

*All. Ltd.*, 721 F. App'x 950, 955 (Fed. Cir. 2018) (finding computer-based claims to collecting and

organizing real estate information on a digital map were directed to abstract idea where the claims

did not focus on technological details or improvements, thereby amounting to nothing "more than

---

[8]     It is also possible to characterize the invention as "a fundamental economic practice," as
the '660 Patent itself explains that the use of incentive programs is well known to
encourage consumers to purchase certain goods and services. (*See* '660 Patent at 1:37-45).
Whether described as a method of organizing human activity, or as a fundamental
economic practice, the Court's conclusion is unchanged – the claims are directed to an
abstract idea. *See BSG Tech*, 899 F.3d at 1286 ("Whether labeled as a fundamental, long-
prevalent practice [of commerce] or a well-established method of organizing activity,
[having users consider previous item descriptions before they describe items] qualifies as
an abstract idea.").

the use of a computer for a conventional business purpose"); *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017) (finding computer-based claims directed to locally processing payment for transactions involving remote sellers as abstract because they were "the type of fundamental business practice that, when implemented using generic computer technology, is not patent-eligible under *Alice*").

The dependent claims fare no better. Each of the dependent Asserted Claims ultimately depends from claim 1, and adds limitations related to the nature of the incentive program (claim 16), the host computer and interface used to build the incentive program (claims 17-19), the parameters the sponsor inputs into the interface (claims 20-21, 25, 27-28), and the type of interface that receives certain consumer interaction (claims 29, 30). (*See* '660 Patent at Claims 17-21, 25, 27-30 (reexam certificate)). These additional limitations are either aimed at further organizing human activity or basic functions of generic computers being used in their ordinary capacity – *i.e.*, they do not add anything to the claims that makes their character as a whole any less abstract. Thus, the Court concludes that all of the Asserted Claims of the '660 Patent are directed to the abstract idea of providing an incentive award system over a computer network.

B.    Plaintiff's Objections to the Report's Conclusion at Step One of *Alice*

For the reasons set forth above, the Court finds no error in the Report's conclusion that the Asserted Claims are directed to an abstract idea at *Alice* step one. Plaintiff's objections are based on three purported errors committed by the Report, and the Court addresses these in turn.

First, contrary to Plaintiff's assertion, the Report does not require a claim to improve the way a computer operates to be found non-abstract at step one. (*See* D.I. 41 at 2-5; *see also id.* at 2 ("The Report Erred by Narrowing *Alice* Step One Only to Improvements in the Functioning of a Computer")). Instead, the Report reviewed prior cases involving claims directed to computer-

and technology-based systems (and improvements thereto) and compared those with the Asserted Claims to find that, here, the claims are directed to an abstract idea merely implemented on generic computer components. (*See* D.I. 39 at 27-31). Moreover, it is noteworthy that Plaintiff is the one that argued that the purported invention "is a patent-eligible ***improvement to computer functionality***." (D.I. 14 at 8 (emphasis added)). With this assertion, Plaintiff also signaled that the relevant inquiry ***here*** is whether the Asserted Claims are to an improvement in computer functionality, or whether they are to an abstract idea simply run on that technology. That is the same articulation of the step one inquiry as in *Enfish*, which Plaintiff urges is analogous to this case. *See Enfish*, 822 F.3d at 1335-36 ("[T]he first step in the *Alice* inquiry ***in this case*** asks whether the focus of the claims is on the specific asserted improvement in computer capabilities (*i.e.*, the self-referential table for a computer database) or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." (emphasis added)); *see also* D.I. 14 at 9 (arguing that the Asserted Claims "go well beyond the claims in *Enfish*"). The Court sees no error in this analysis undertaken in the Report.

Second, as to Plaintiff's argument that the Report erred in ignoring "significant claim elements" in reaching the conclusion that the claims are directed to the abstract idea of an incentive award system being run on generic computers (D.I. 41 at 5-8), the Court disagrees. An examination of each of the claim elements – and their ordered combination – is a process undertaken at step two of *Alice*. At step one, the Court must look at the claims "in their entirety" and determine the "character as a whole" of the Asserted Claims. *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has recognized that, when a patentee points to specific claim elements in attempting to articulate a non-abstract idea at step one, consideration of any "narrowing effect" of those claim limitations may be deferred to *Alice* step two. *See Bascom*, 827

F.3d at 1349 ("Here . . . the claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea. We therefore defer our consideration of the specific claim limitations' narrowing effect for step two."). The Report properly evaluated the Asserted Claims in their entirety to determine that, as a whole, they are directed to providing an incentive award program using generic computer components – an abstract idea at step one.

Finally, Plaintiff argues that fact discovery and claim construction are necessary before a conclusion can be reached at *Alice* step one. (D.I. 41 at 8-10). There is no requirement, however, that a Court construe claims prior to rendering any § 101 decision, even on a motion to dismiss. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Assn*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101."); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."). And as to Plaintiff's suggestion that fact discovery is necessary to determine if the claims are directed to an abstract idea, the Court does not understand recent precedent to stand for the proposition that factual issues may preclude a finding at *Alice* step one. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1359 (Fed. Cir. 2018) ("Our decisions in *Berkheimer* and *Aatrix* are narrow: to the extent it is at issue in the case, whether a claim element or combination is well-understood, routine, and conventional is a question of fact. This inquiry falls under step two in the § 101 framework . . . ."). In any event, here, the patent and claims make clear that the purported invention is an incentive program (*i.e.*, a way "to modify behavior of individual consumers") implemented on standard (*i.e.*, generic) computer components. That is plainly an abstract idea at step one.

C.      Step Two of the *Alice* Framework

Despite finding the claims directed to the abstract idea of creating and providing an incentive program (using generic computer components), the Report recommended denial of Defendant's motion to dismiss because there appeared to be unresolved factual issues as related to step two of *Alice* – *i.e.*, whether the claim elements or their combination recite more than "well-understood, routine and conventional" activities previously known in the industry. (*See* D.I. 39 at 31). The Court notes that the '660 Patent itself contains numerous statements that the computer components used to implement the claimed incentive award system are "conventional" and "standard." (*See, e.g.*, '660 Patent at 5:37-43 (need for incentive award system on "standard computer hardware and software"); *id.* at 5:47-53 (claimed invention provides incentive award system using a computer network, preferably the Internet, and a "conventional" computer); *id.* at 5:58-61 (Internet provides access to award fulfillment to consumers with "standard equipment such as a personal computer, without requiring specific hardware or software"); *id.* at 10:55-56 (client computer may be comprised of various "standard components"); *id.* at 11:15-19 (operating system may be "any standard operating system"); *id.* at 12:7-11 (host computer may be "any conventional server"); *id.* at 19:5-9 (implementation of incentive program includes "conventional incentive program games"); *id.* at 20:1-5 (award database may be searched with "conventional search algorithms"); *id.* at 22:44-48 (electronic gift card "may be any conventional electronic payment card"); *id.* at 36:40-42 ("In an embodiment of the invention the files for an incentive program are stored as conventional graphics and computer code files."). That being said, as neither party has objected to the Report as it relates to *Alice* step two and finding no clear error in the step two analysis, the Court adopts that portion of the Report as well.

## IV.    CONCLUSION

For the foregoing reasons, the Court OVERRULES Plaintiff's objections (D.I. 41) and

ADOPTS the Report and Recommendation (D.I. 39) as it relates to Defendant's motion to dismiss

(D.I. 10).  Defendant's motion to dismiss (D.I. 10) is DENIED.  An appropriate order will follow.