## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KROY IP HOLDINGS, LLC,          ) | |
|          ) | |
|      Plaintiff,          ) | |
|          ) | C.A. No. 17-1405-MN |
|     v.          ) | |
|          ) | **JURY TRIAL DEMANDED** |
| GROUPON INC.,          ) | |
|          ) | |
|      Defendant.          ) | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Kroy IP Holdings, LLC ("Kroy IP"), by and through its undersigned counsel, hereby submits this Amended Complaint for patent infringement against Defendant Groupon, Inc. ("Groupon"), and alleges as follows:

### I.  NATURE OF THE ACTION

1.      This action arises under 35 U.S.C. § 271 for Groupon's infringement of Kroy IP's United States Patent No. 6,061,660 C1 ("the 660 Patent").

### II.  THE PARTIES

2.      Plaintiff Kroy IP Holdings, LLC is an inventor-owned company. Kroy IP is a limited liability company organized under the laws of the State of Delaware and is located at 301 South Fremont Avenue, Suite 300, Baltimore, Maryland 21230.

3.      Upon information and belief, Defendant Groupon, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 600 West Chicago Avenue, Suite 400, Chicago, Illinois 60654. Groupon may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.      Groupon operates online local commerce marketplaces to connect merchants to consumers by offering goods and services at a discount through its website, www.groupon.com, and through Groupon mobile applications.

### III.      JURISDICTION AND VENUE

5.      This action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Groupon because Groupon is incorporated in Delaware, is registered to do business in Delaware, has committed acts within Delaware giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Groupon would not offend traditional notions of fair play and substantial justice. Groupon maintains substantial, systematic, and continuous contacts with Delaware, and/or Groupon has purposefully directed infringing activities at residents of Delaware, and this litigation results from those infringing activities. Groupon has committed and continues to commit acts of infringement in this District by, among other things, using, offering for sale, and selling products and/or services that infringe the 660 Patent.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Groupon resides in this District by virtue of being incorporated in Delaware.

### IV.      PATENT-IN-SUIT

8.      Kroy IP is the owner by assignment of all right, title, and interest in and to the 660 Patent, entitled "System and Method For Incentive Programs And Award Fulfillment," which was duly and legally issued on May 9, 2000 by the United States Patent and Trademark Office to

inventors York Eggleston and Andrey Ukhov.[1] The 660 Patent is valid, enforceable, and currently in full force and effect. A true and correct copy of the 660 Patent is attached hereto as **Exhibit 1** and incorporated herein by reference.

9.      The 660 Patent claims an incentive program builder with an award fulfillment system running on a host computer that permits multiple sponsors to customize and market their respective incentive programs in a central market place and validate their promotions in real-time. The 660 Patent discloses technology that allows sponsors (e.g., retail merchants) to build incentive programs easily and efficiently along with the ability to track participation and fulfillment in real-time, constituting several technical improvements over the prior art by improving the efficiency and operation of computer incentive programs. *See, e.g.*, Exhibit 1, 660 Patent at 5:38-7:6; 10:43-47; 14:43-49; 19:38-44; and 32:15-20.

A.      **Technical Problems in Conventional Computer Incentive Programs**

10.     The 660 Patent solved the persisting technical problems of the 1990s when retail merchants began using computer-based incentive programs, which were "quite limited" during that time. *Id.* at 4:17-5:47. The 660 Patent laid the foundation for companies like Groupon, which has generated significant revenue and experienced commercial success by exploiting the inventions disclosed in the 660 Patent.

11.     Prior conventional incentive program systems suffered from a number of technical problems and were limited to a specific type of incentive program or to the products and/or services of a single merchant. *Id.* at 4:14-24. As such, prior conventional incentive programs required specialized software, requiring the merchant to hire an independent contractor to develop custom software code, and specific hardware to run the incentive program.  *See*, *e.g.*,

---

[1] The 660 Patent was filed on March 18, 1998, a decade before Groupon was founded.

*id.* at Col. 5:1-26. Prior systems also required merchants to maintain database servers because their merchant-specific incentive programs were operated and offered via their individual websites. Prior conventional incentive programs did "not provide for automatic generation of incentive programs based on parameters entered by a [merchant] company." *Id.* at 5:33-36.

12.     Prior conventional incentive programs also lacked the ability to track customer participation and automatically validate, authenticate, and fulfill awards. Further, conventional incentive program systems relied on conventional mechanisms for award fulfillment, such as issuing a paper coupon/certificate to the customer by mail that was redeemable at a retail location of the merchant. *See*, *e.g.*, *id.* at Col. 4:17-24. "[A] problem with coupon redemption systems is verification. Because the verification of redemption conditions is performed by a check-out clerk, a consumer can in some instances present so many coupons that it is impractical to verify the required purchases for all of them. As a result, some coupons are redeemed without the required purchase." *Id.* at 2:48-55.

**B.     The 660 Patent's Technical Solutions to Problems in Conventional Computer Incentive Programs**

13.     To solve the issues with the conventional computer incentive program systems, the 660 Patent introduced a novel incentive program builder with an award fulfillment system, including the unconventional combination of (1) a host computer; (2) an incentive program builder application, (3) a database of parameter source code modules, (4) a referential table for capturing merchant's parameter selections and assigning each a unique identifier, and (5) a validation system. Reexam Cert. at 1:28-52; Exhibit 1, 660 Patent at 5:38-7:6; 10:43-47; 14:43-49; 19:38-44; 32:15-20; and 47:66-48:48. The incentive program builder application allows multiple retail merchants to generate custom, interactive promotions via host-supplied parameters, from a central server without the need for specialized software or hardware. *Id.* at

32:7-20, 32:66-33:1, 33:12-38, 33:62-65, 36:13-19. The incentive program builder and award fulfillment system of the 660 Patent creates a customizable incentive program that permits users to select and/or enter parameters and track customer participation in multiple incentive programs. *See*, *e.g.*, *id*. at Abstract, Fig. 20, Cols. 5:46-54, 6:13-19, 6:53-7:6, 7:8-14, 14:40-49, 19:32-55, 30:47-31:24, 32:7-19, 32:25-28. As the 660 Patent specification explains, the data structure of the incentive program builder application is an interface that includes icons, buttons, and pull-down menus that represent the parameters to be selected by the merchant for generating a custom promotion, provides promotion ideas to the merchant, and provides an interactive experience. *Id.* at 29:21-38, 31:25-32:20, 34:20-35:2. Once the merchant's selected parameters are collected,the incentive program builder application generates a customized incentive program that is immediately available for purchase. *Id.* at 31:9-14.

14. The incentive program builder with an award fulfillment system also provides verification, authentication, and automated fulfillments of awards. *See*, *e.g.*, *id*. at Figs. 13-14 Cols. 21:29-22:32, 46:33-54. The 660 Patent specification discloses specific ways to validate the authenticity of awards using specific information. For example, the validation tool (*e.g.*, source code module) determines whether the customer satisfied the eligibility requirements and successfully completed the merchant's incentive program. *Id.* at 36:1-19.  A different source code module is used for "controlling the objects that appear to the user and for updating the various databases to reflect creation of a new incentive program and successful completion of an incentive program." *Id.*

15. The incentive program builder with an award fulfillment system is also centrally located at a host computer, which provides merchants with the ability to safeguard against counterfeiting or attempts at multiple redemptions (*e.g.*, validations, verifications). *See id*. at

2:29-55, 12:21-57. In particular, the use of the host computer in the 660 Patent provided improvements over conventional incentive program systems by allowing for "a plurality of sponsors" to participate and offer incentive programs to the customers and obtain operation security through validation by utilizing the incentive program builder and for a "plurality of customers" to search and access the incentive programs from a central location. *Id*. The host computer also increased customer traffic as multiple merchants could market their promotions at a single location, which resulted in customers making more purchases than they otherwise would have had if only a single promotion been advertised by a single merchant in a single location.

16.     By placing the incentive program builder with an award fulfillment system in a central location at a host computer, the 660 Patent discloses several improvements over conventional computer incentive program systems, including at least the following:  (1) providing a merchant with the ability to create customized incentive programs without having to incur the added expense of hiring software developers to build a custom incentive program from scratch; (2) providing a merchant with the ability to generate incentive programs in real-time; (3) saving a merchant from having to host the incentive program on its own systems and servers; and (4) allowing customers to search for incentive programs at a single central location. *See id*. at 1:47-62, 5:1-26. As such, the 660 Patent claims entail unconventional technological solutions to technological problems in the prior art.

    C.     *Ex Parte* Reexamination of the 660 Patent

17.     On May 19, 2014, the 660 Patent was placed in *ex parte* reexamination by Kroy IP. In June 2014, the Supreme Court, in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), issued a decision about patentable subject matter under 35 U.S.C. § 101. To address any potential invalidity issues with the 660 Patent, Plaintiff amended claims 1, 2, 4, 7, and 14, and

added claims 16-115. Following a reexamination of the 660 Patent, the United States Patent and

Trademark Office issued an *Ex Parte* Reexamination Certificate, Number 6,061,660 C1, on

February 6, 2015, confirming the validity of claims 1, 2, 4, 7, and 14, and allowing additional

claims 16-115. A true and correct copy of *Ex Parte* Reexamination Certificate, Number

6,061,660 C1 is included hereto in **Exhibit 1** and incorporated herein by reference.

       **D.**    ***Inter Partes* Review of the 660 Patent**

       18.    Defendant Groupon petitioned the Patent Trial and Appeal Board to institute *inter*

*partes* review of claims 1, 7, 10, 12, 14, 16–21, 25, 27–30, 67–69, 87, and 101 of the 660 Patent,

(IPR2019-00044) following which the PTAB issued its final written decision on April 16, 2020

finding that claims 1, 7, 10, 12, 14, 16–21, 25, 27–30, 67–69, 87, and 101 of the 660 patent were

not patentable.  These claims are no longer asserted in this litigation.  On June 14, 2021, the

Federal Circuit affirmed the PTAB final written decisions pursuant to Rule 36.  Claims 91-93,

95-97, 100, 103-104, and 107-111 were not addressed in the PTAB's Final Written Decisions

and are and/or remain asserted here.

       **V.**    **FACTUAL BACKGROUND**

       **A.**    **York Eggleston, The Innovator**

       19.    Co-inventor York Eggleston has a history as an innovator and an entrepreneur.

Mr. Eggleston is the named inventor on three issued U.S. Patents and has five published patent

applications pending in areas relating to promotion automation, privacy, data transformation and

analytics, and personalization. Some of Mr. Eggleston's intellectual property has been

commercialized via licensing programs with several leading global brands and businesses.

       20.    After obtaining his bachelor's degree from Harvard College and an MBA Degree

with Distinction from Harvard Business School with an emphasis on Finance and Operations,

and gaining experience at global management consulting and investment firms such as Booz Allen & Hamilton, Salomon Brothers, and Schroeder Ventures, Mr. Eggleston founded Crave Technologies, Inc. ("Crave") in 1996, with the goal of driving online marketing activity to retail locations.

21.     While at Crave, Mr. Eggleston developed, among other things, a proprietary technology that facilitated connections between retailers and consumers by enabling retailers and other sponsors to create and implement network-based marketing, promotion, and incentive programs.  Mr. Eggleston was granted patents, including the 660 Patent, covering this proprietary technology.

22.     Crave, through Mr. Eggleston's patented technology, developed, among other things, PromoBuilder™ and PromoClub™.

23.     PromoBuilder™ was designed to enable manufacturers, retailers, and site hosts to purchase prepackaged promotions, and/or develop fully customized and unique promotional campaigns. PromoBuilder™ was also designed to allow the sponsor of the promotion campaign to designate the method of fulfillment of a promotion by, for example, distributing the promotion across the Internet or to designated consumers via wirelesses devices or email.

24.     PromoClub™ was designed to allow consumers to monitor and manage their participation in various promotion programs. Features of PromoClub™ included quick registration for participating promotions, award tracking, promotion-specific searches, and a directory of services.

25.     PromoBuilder™ and PromoClub™ were designed to revolutionize the process for initiating and implementing incentive and promotional programs across networks. Crave set out to transform the promotions industry on the Internet by enabling merchants to build promotions

for themselves and pioneered electronic Promotional Campaign Management, a methodology that enables a modular end-to-end or network to point-of-sale promotion solution to merchants that is both automated and customizable.

26.     Mr. Eggleston is also the co-founder and managing member of YE Ventures, LLC ("YE Ventures"), a technology commercialization company, comprised of two operating units: Venture Capital and Venture Labs.

27.     Venture Capital focuses on investing, providing growth capital, and harvesting of the firms in Venture Labs as well as non-Venture-Labs investments.

28.     Venture Labs is a network of labs, each with a research focus area, independent IP portfolio, and proprietary technology assets. Each lab focuses on transforming technology-driven ideas into viable business applications, commercial entities, or corporate enterprises, e.g., artificial intelligence used in real-time consumer applications, and artificial intelligence in telematics or environmental and health outcome predictions.

29.     For example, in 2005, Mr. Eggleston co-founded Semantic Labs for the development of advanced multi-channel applications leveraging modular software development platform technology, innovative artificial intelligence, natural language processing, real-time data analytics and visualization, search, and messaging. The core technologies from Semantic Labs was commercialized in several ventures, including a nascent application focusing on personalized alert creation recommendation services, a meme search, aggregation and analytics, and sentiment analysis of social media for opinion trends on stocks and companies.

30.     Over the last several years, Mr. Eggleston has extended his lab venture model beyond Semantic Labs to several other technology and IP proprietary verticals, including those using advanced pricing analytics for intelligent agent shopping tools to those around using big

environmental data and machine learning in the development of applications for smart water systems and for assessing and predicting the impact of particulate matter on health outcomes.

31.     Mr. Eggleston also developed a strategic partnership and technology transfer relationship with the University of Maryland Baltimore College ("UMBC"), and his efforts have led to the receipt of a state grant to commercialize data analytics technology and natural language software for the analysis of social media for sentiment and opinion detection to be applied to the financial service and consumer goods and services domains.

32.     Mr. Eggleston serves or has served on the boards of the Institute for Integrated Health, Maryland Academy of Sciences (at Maryland Science Center) Sub-Basement Art Studios and Communiversal, Inc., Network for Teaching Entrepreneurship Baltimore, Johns Hopkins Technology Transfer Advisory Board, and on the advisory board of the UMBC's Alex Brown Center for Entrepreneurship and Co-Founder and Past Chairman of National Association of Multi-Cultural Digital Entrepreneurs, and has been a frequent speaker and a contributor to both academic and commercial journals and publications.

**B.     Co-Inventor Andrey Ukhov**

33.     Co-inventor Andrey Ukhov obtained a Ph.D. in financial economics, an MBA degree, and an undergraduate degree in economics from Yale University. Professor Ukhov is an assistant professor of finance in the School of Hotel Administration at Cornell University, and an expert on a wide range of investments, including preferred stocks, warrants, derivative securities, and convertibles. Professor Ukhov is a frequent presenter and discussant at international finance conferences. Prior to joining the School of Hotel Administration at Cornell University, he taught both undergraduate and graduate finance courses at the Kelley School of Business, Indiana University and the Kellogg School of Management, Northwestern University. Professor Ukhov

has received numerous teaching awards at Cornell, Indiana, and Northwestern for undergraduate, masters, and Ph.D. level courses.

### C.      Groupon and Its Infringing Products

34.      Groupon is a well-known company that operates online local commerce marketplaces to connect merchants to consumers by offering goods and services at a discount through its websites, including www.groupon.com, and through the Groupon mobile applications, including those running on the Apple iOS, Microsoft Windows, BlackBerry, and Google Android operating systems. Groupon has grown rapidly and now generates billions of dollars of revenue per year.

35.      Groupon has appropriated the inventions of the 660 Patent. Upon information and belief, Groupon receives input from multiple merchants related to Groupon's various incentive programs and self-service platforms, including without limitation, Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center for Now! Deals, and Groupon's Deal Builder. For example, www.groupon.com displays thousands of restaurants, services, and other promotions, each of which include promotion parameters. The promotions are facilitated by Groupon and displayed on www.groupon.com or Groupon's application interfaces.

36.      The website www.groupon.com and Groupon's mobile applications also allow consumers to select an incentive program out of many other incentive programs (e.g., consumer may select a dinner and movie incentive program). Once the promotion is selected, the consumer receives a "Groupon" or voucher (award) that the user can print out or present to the sponsor on a mobile device. The merchant using Groupon software, including but not limited to Groupon Merchant, can send a request to validate the voucher. To validate the voucher, the merchant can

manually enter the Groupon number or scan the printed voucher or electronic copy of the voucher presented on the consumer's mobile device.

37.     Upon information and belief, applications under Groupon's control, including at least Groupon's Groupon Stores, Merchant Center, Deal Builder, and Groupon Now!, use the technology claimed by the 660 Patent to permit multiple sponsors to customize an incentive application based on specific parameters, which tracks participation and verifies and fulfills awards. Groupon's mobile applications, including those running on the Apple iOS, Microsoft Windows, BlackBerry, and Google Android operating systems, use the technology claimed by the 660 Patent to permit multiple sponsors to customize an incentive application based on specific parameters, which tracks participation and verifies and fulfills awards.

   **1.     Groupon's 2010 Launch of Infringing Merchant Center for Groupon Stores**

38.     Upon information and belief, in 2010, Groupon launched Merchant Center for Groupon Stores, a self-service platform that allows merchants to create and launch their own deals. Jennifer Van Grove, Groupon Merchants Can Now Create Their Own Deals, Mashable (Oct. 28, 2010), http://mashable.com/2010/10/28/groupon-stores-merchant-center/#DEnFqBwMlEqJ (last visited Oct. 5, 2017).



elithecomputerguy, Groupon Stores Video Review, YouTube (Dec. 9, 2010),
https://www.youtube.com/watch?v=KVi9Apzt4CU (last visited Oct 5, 2017).

39.     Upon information and belief, to promote and run a deal using Groupon Stores, the

merchant first navigates to the Groupon Stores website. Next, the merchant logs into its store

account through the Merchant Center. After logging into the Merchant Center, the merchant can

click on the "Create a New Deal" icon. Next, the merchant enters the specifics of its deal,

including price, value, and title, and set the terms of the deal, including whether to promote the

deal to its Groupon customers (i.e., the merchant's followers on Groupon) or all Groupon

subscribers. Next, the merchant submits the deal for approval. Once the deal is approved by

Groupon, the deal is scheduled and launched by Groupon.

> ### 2.     Groupon's 2011 Launch of Infringing Merchant Center for Now! Deals

40.     Upon information and belief, in 2011, Groupon launched Merchant Center for

Now! Deals, a self-service platform that allows merchants to create and launch their own instant

deals. Julie M, Groupon Now! Deals Available on Foursquare, GrouponBlog Beyond the Deals

(July 29, 2011), https://www.groupon.com/blog/cities/groupon-now-deals-available-in-foursquare (last visited Oct. 5, 2017).

41.     Upon information and belief, to promote a deal on Groupon Now!, the merchant first logs into its merchant account on Groupon's homepage. A true and correct copy of the Merchant Center User Guide found at http://www.groupon.com/guides/merchant_center_user_guide.pdf is attached hereto as Exhibit 2 and incorporated herein by reference.

42.     Once logged in, the merchant enters the Merchant Center. Id. at p. 2. In the Merchant Center, the merchant goes to the Now! Deals tab and clicks "New Deal." *Id.* at p.3. An example image of the Merchant Center for Now! Deals is shown below:



*Id*. at p. 4.

43.     The merchant can then enter specifics of its deal, including retail value, discount, and location where customers can redeem their Groupons. Id. Next, the merchant schedules when and how its deal will run. *Id.*

44.     Next, the merchant clicks the "Launch Deal!" icon in order to launch the deal:



*Id.*

### 3.     Groupon's 2014 Launch of Infringing Deal Builder

45.     On February 10, 2014, Groupon launched Deal Builder, a 24/7 self-service option for merchants to build their own Groupon deal on the Groupon platform. Deal Builder guides local business owners or merchants through a step-by-step process and allows them to choose from a series of popular deal templates to construct a promotion. Samantha Carlin, Groupon Launches Deal builder, Groupon Merchant (Feb. 10, 2014), https://www.groupon.com/ merchant/blog/groupon-launches-deal-builder (last visited Oct. 5, 2017).

46.     Upon information and belief, to begin using Deal Builder, merchants first fill out their basic information. Nick Halliwell, Groupon Launches Deal Builder, A Build-Your-Own-Deal Tool for Merchants, Groupon Investor (Feb. 10, 2014), http://investor.groupon.com/ releasedetail.cfm?releaseid=824464 (last visited Oct. 5, 2017).  Next, the merchants choose the

right deal structure and discount for their business. Id. Afterwards, the merchants have an

opportunity to review the final product and e-sign their contract with Groupon. *Id.* Next, the

merchants' deal is launched after a short review process. *Id.*

### 4.     Groupon's 2016 Rebranding of Infringing Groupon Merchant

47.     On March 15, 2016, Groupon expanded its Merchant Platform. Updates included

redesigned web and mobile tools, all under the Groupon Merchant™ brand

(http://www.groupon.com/merchant), a new tablet app that allows users to track and manage

their Groupon campaign and self-service deal options, providing merchants the ability to

customize the structure and appearance of their promotion. As part of this expansion, for

example, merchants that use Groupon's platforms to create their Groupon promotion would be

able to choose a customized discount that works best for them, and merchants would be able to

use their own images and descriptions to make their business and Groupon promotion stand out.

Nick Halliwell, Groupon Expands Merchant Platform, Providing Local Businesses Everything

They Need to Create and Manage a Successful Promotion, Groupon Investor (Mar. 15, 2016),

http://investor.groupon.com/releasedetail.cfm?releaseid=960719 (last visited Oct. 5, 2017).

### VI.     COUNT I:  DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,061,660

48.     Kroy IP hereby incorporates by reference Paragraphs 1 through 47 above as

though fully set forth herein.

49.     The 660 Patent is valid, enforceable, and was duly issued in full compliance with

Title 35 of the United States Code.

50.     Pursuant to 35 U.S.C. § 271(a), Groupon is liable for direct infringement of at

least one claim of the 660 Patent, including without limitation, claims 91-93, 95-97, 100, 103-

104, and 107-111, by having made, used, offered to sell,  sold, provided, maintained, and/or

supported its website portals and applications, including without limitation, www.groupon.com, Groupon's Groupon Stores, Merchant Center, Deal Builder, and Groupon Now!, and its mobile applications, including without limitation, Groupon app and Groupon Merchant, running on the Apple iOS, Microsoft Windows, BlackBerry, and Google Android operating systems.

51.    By way of non-limiting example, independent Claim 91, recites:

91. A method for generating an incentive program, comprising:

providing a computer;

providing an incentive program builder application of such computer;

providing a database of objects associated with parameters of an incentive program;

providing an interface of the incentive program builder application for user entry of parameters for an incentive program;

associating an object with each parameter entered by the user;

generating an incentive program comprising the objects associated with all of the parameters entered by the user;

wherein the computer is a host computer provided by a host through which a sponsor offers the incentive program to a consumer,

wherein the host, the sponsor; and the consumer are different entities, and

wherein the host and the sponsor are different individuals or corporate entities,

wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host;

receiving consumer interaction through a website of the host to participate in the incentive program

wherein the receiving comprises:

receiving a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors.

52.     With regard to claim 91, Groupon implements and uses a method for generating an incentive program, including without limitation, methods performed by Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center, and/or Groupon's Deal Builder. Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder are programs that guides a sponsor ("merchant") through a step-by-step process to enter parameters that Groupon's server systems use to build the sponsor's own incentive program, which is implemented by Groupon using the claimed method.

53.     Upon information and belief, Groupon provides a "computer" including server systems that are connected to the internet and to wireless networks.

54.     Upon information and belief, Groupon's software (the "incentive program builder application") is hosted and operated on such computer and server systems—and Groupon directly infringes the patent-in-suit.

55.     Upon information and belief, Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and/or Groupon's Deal Builder is linked to a "database" on Groupon's servers containing entries ("objects") for many different "parameters" of each "deal," including, for example: (1) the name of the merchant; (2) the title of the deal; (3) the retail value of the deal; (4) dates the "deal" is available; and/or (5) any restrictions on the deal.

56.     Upon information and belief, Groupon's servers operate the websites and interact with the mobile applications provided by Groupon for Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder that persons affiliated with a merchant ("users") can access from a desktop computer, laptop computer, or mobile device such as a tablet connected to the network. Groupon provides these "interfaces"

that the merchant's users use to "enter" the "parameters" into the "builder application."  Upon information and belief, the merchant use the "interfaces" of Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder "for user entry of parameters for an incentive program."

57.     Upon information and belief, Groupon's software running on its servers associates "objects" with "parameters" of a deal.

58.     Upon information and belief, Groupon's software (the "incentive program builder application") to "generat[e] an incentive program" (i.e., create a deal), that comprises the "objects associated with all of the parameters entered by the user" through the interface provided by Groupon.

59.     Upon information and belief, the "host computer" comprises Groupon's server system and it supports Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and/or Groupon's Deal Builder.

60.     Upon information and belief, Groupon is a "host", a merchant is a "sponsor," and a customer of the merchant is a "consumer".  Upon information and belief, Groupon, the merchant, and the customer are all different entities and/or individuals.

61.     Upon information and belief, consumers can interact with Groupon's host computer to participate in Deal promotions. Through a website operated by the host computer, the host computer allows various sponsors to make Deal incentive programs available to consumers and receives consumer requests to search for Deal incentive programs and to participate in the incentive program offered to consumer by various sponsors.

62.     Therefore, all of the elements of at least claim 91 of the 660 Patent are directly practiced by and infringed by Groupon, literally or under the doctrine of equivalents.

63.     With respect to dependent claim 92, upon information and belief, Groupon's accused method involves Groupon's server system, i.e., host computer, receiving a request from a consumer to search for promotions by use of the merchant's name.

64.     With respect to dependent claim 93, upon information and belief, Groupon's accused method involves Groupon's host computer receiving a request from a consumer to search for promotions by searching for a type of promotions.

65.     With respect to claim 95, upon information and belief, Groupon's accused method carries out each step of the claimed method, literally or by the doctrine of equivalents, for substantially the same reasons described above with respect to claim 91.

66.     With respect to dependent claim 96, upon information and belief, Groupon's accused method involves Groupon's host computer receiving a consumer request to search for promotions by use of the merchant's name.

67.     With respect to dependent claim 97, upon information and belief, Groupon's accused method involves Groupon's host computer receiving a consumer request to search for promotions by searching for a type of promotions.

68.     With respect to claim 100, upon information and belief, Groupon's accused method carries out each step of the claimed method, literally or by the doctrine of equivalents, for substantially the same reasons described above with respect to claim 91.

69.     With respect to claim 103, upon information and belief, Groupon's accused method carries out each step of the claimed method, literally or by the doctrine of equivalents, for substantially the same reasons described above with respect to claim 91, in view of the additional fact that, upon information and belief, Groupon issues electronic vouchers ("electronic

card") to consumers who successfully obtain an award, or promotion, and that electronic voucher holds the consumer's information needed to access the award.

70.     With respect to dependent claim 104, upon information and belief, Groupon's accused method involves issuing an award, via an electronic voucher, for example, and a consumer redeeming said voucher requires validating the electronic voucher by use of Groupon's databases.  Upon information and belief, these electronic vouchers indicate the consumer's participating in the promotion.

71.     With respect to claim 107, upon information and belief, Groupon's accused method carries out each step of the claimed method, literally or by the doctrine of equivalents, for substantially the same reasons described above with respect to claim 103.

72.     With respect to dependent claims 108-110, upon information and belief, Groupon's accused method involves issuing an award, via an electronic voucher, for example, and a consumer redeeming said voucher requires validating the electronic voucher by use of Groupon's databases.  Upon information and belief, these electronic vouchers indicate the consumer's participating in the promotion.

73.     With respect to claim 111, upon information and belief, Groupon's accused method carries out each step of the claimed method, literally or by the doctrine of equivalents, for substantially the same reasons described above with respect to claim 91.

74.     Kroy IP has been damaged by the infringement of the 660 Patent by Groupon and will continue to be damaged by such infringement. Kroy IP is entitled to recover from Groupon the damages sustained by Kroy IP as a result of Groupon's wrongful acts.

## VII.    COUNT II:  INDIRECT INFRINGEMENT OF U.S. PATENT NO. 6,061,660

75.    Kroy IP hereby incorporates by reference Paragraphs 1 through 74 above as though fully set forth herein.

76.    At least since Groupon's receipt of notice and/or the filing of the original Complaint on October 6, 2017 (D.I. 1), Groupon and its customers, subscribers, and users, including but not limited to merchants, that use Groupon's Merchant Center for Groupon Stores, Merchant Center for Groupon Now! Deals, and Groupon's Deal Builder, have been and are presently directly and indirectly infringing at least claims 91-93, 95-97, 100, 103-104, and 107-111 of the 660 Patent.

77.    Groupon is contributing to the infringement by others and/or inducing infringement by others, by, among other things, providing a system for incentive program generation, including without limitation, Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center, and/or Groupon's Deal Builder that guides a customer, subscriber or user (e.g., merchant) through a step-by-step process to build its own incentive program. Groupon has also contributed and/or induced, and continues to contribute to and/or induce the infringement of at least claims 91-93, 95-97, 100, 103-104, and 107-111 of the 660 Patent, by contributing to and/or inducing its customers, subscribers and users to use Groupon's products and applications, such as Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center, and Groupon's Deal Builder, in an infringing manner as described above, including encouraging and instructing its customers, subscribers, and  users to infringe by providing a step-by-step guide detailing how to create their own incentive program.

78.    Groupon has specifically intended that its customers, subscribers, and users use its products and applications that infringe at least claims 91-93, 95-97, 100, 103-104, and 107-111

of the 660 Patent by, at a minimum, providing access to support, training, and instructions, including a step-by-step guide detailing how to create their own incentive program, for its infringing products to its customers, subscribers, and users to enable them to infringe at least claims 91-93, 95-97, 100, 103-104, and 107-111 of the 660 Patent, as described above.

79.     Upon information and belief, Groupon has known, at least as September 14, 2012 through the reference of the 660 Patent during the prosecution of at least U.S. Patent No. 8,799,100 and no later than the date of service of the Complaint (D.I. 1), that its infringing products, such as Groupon's Merchant Center for Groupon Stores, Groupon's Merchant Center, and Groupon's Deal Builder, cannot be used without infringing the technology claimed in the 660 Patent, as described above, and are not staple articles of commerce suitable for substantial non-infringing uses.

80.     Kroy IP has been damaged by the infringement of the 660 Patent by Groupon and will continue to be damaged by such infringement. Kroy IP is entitled to recover from Groupon the damages sustained by Kroy IP as a result of Groupon's wrongful acts.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Kroy IP prays for judgment against Groupon as follows:

1.      A judgment in favor of Kroy IP that Groupon has directly and indirectly infringed and continues to infringe and indirectly infringe one or more claims of the 660 Patent either literally and/or under the doctrine of equivalents;

2.      An award of damages adequate to compensate Kroy IP for the infringement of the 660 Patent by Groupon, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, together with pre-judgment and post-judgment interest, in an amount according to proof;

3.      An award of Kroy IP's costs of suit and reasonable attorneys' fees pursuant to 35

U.S.C. § 285 due to the exceptional nature of this case, or as otherwise permitted by law with

respect to Groupon;

4.      An award of costs and expenses to Kroy IP; and

5.      A grant to Kroy IP of such other and further relief as the Court may deem just and

proper.

## IX.     DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Kroy IP hereby demands a trial by

jury of any and all issues triable by a jury.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David L. Hecht
Conor B. McDonough, Ph.D.
James Zak
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821

By:   _/s/ David E. Moore_____
         David E. Moore (#3983)
         Bindu A. Palapura (#5370)
         Brandon R. Harper (#6418)
         Hercules Plaza, 6th Floor
         1313 N. Market Street
         Wilmington, DE  19801
         Tel:  (302) 984-6000
         dmoore@potteranderson.com
         bpalapura@potteranderson.com
         bharper@potteranderson.com

Dated:  March 10, 2022
10069661 / 44459

*Attorneys for Plaintiff Kroy IP Holdings, LLC*