## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KROY IP HOLDINGS, LLC,      )
            )
          Plaintiff,       )
            )   C.A. No. 17-1405-MN-CJB
      v.                )
            )
            )
GROUPON, INC.,          )
            )
          Defendant.     )

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(b)(6)
## <u>BASED ON COLLATERAL ESTOPPEL OF INVALIDITY</u>

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant*

*Of Counsel:*

Thomas L. Duston
Tiffany D. Gehrke
Ryan N. Phelan
Kwanwoo Lee
Raymond R. Ricordati III
MARSHALL, GERSTEIN AND BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL  60606-6357
(312) 474-6300

Dated:  April 7, 2022

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND AND PROCEDURAL HISTORY ........................................ 1

   A.    Kroy's Patent and Action against Groupon .................................... 1

   B.    Groupon Prevails at the PTAB and Federal Circuit ......................... 2

   C.    Kroy's Continued Litigation and Second Amended Complaint ........... 3

III.  LEGAL STANDARDS ......................................................................... 4

   A.    Failure to State a Claim ............................................................ 4

   B.    Collateral Estoppel .................................................................. 4

IV.   ARGUMENT ..................................................................................... 6

   A.    Kroy is Collaterally Estopped from Asserting the Validity of Claim
         Substantially Identical to Those Invalidated .................................. 6

      1.    The issues are identical ......................................................... 6

         a.    Newly Asserted Claim 111 is identical to invalidated Claim 14 .... 7

         b.    Newly Asserted Claim 100 recites the same websites as
               Invalidated Claims 17 and 29 ........................................... 8

         c.    Newly Asserted Claim 95 is identical to Invalidated Claim 87 .... 11

         d.    Newly Asserted Claims 96 and 97 likewise determined to be
               disclosed in the prior art ............................................... 12

         e.    "Electronic Card" in Newly Asserted Claims 103, 104 and 107-110
               indistinguishable from Invalidated Claims 1 and 12 .................. 14

         f.    Each element of Newly Asserted Claim 91 was found to be
               disclosed in the prior art and unpatentable .......................... 18

         g.    Newly Asserted Claims 92 and 93 Further Recite Searching by
               Sponsor *Name* and Program *Type*—Limitations Declared
               Insufficient to Render Such Claims Patentable ...................... 21

      2.    The issues were actually litigated ........................................... 21

      3.    The determination was essential to the final judgment ................. 21

      4.    Kroy was represented by counsel and had a full and fair
            opportunity to litigate the issues ........................................... 21

## TABLE OF CONTENTS

*(Continued)*

**Page**

B.    The Newly Asserted Claims Lack an "Inventive Concept" and are Invalid Under Section 101 in Light of This Court's Previous Determinations ........................................................................................22

C.    Kroy's Indirect Infringement Allegations (Count II) Fail to Allege a Direct Infringer and are Properly Dismissed ......................................................23

V.    CONCLUSION............................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Anderson v. Kimberly-Clark Corp.*,
    570 F. App'x 927 (Fed. Cir. 2014) ................................................................. 4

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
    713 F.3d 1377 (Fed. Cir. 2013) .................................................................... 5

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015) .............................................................................. 5

*Bennett v. Medtronic, Inc.*,
    285 F.3d 801 (9th Cir. 2002) ...................................................................... 4

*Bias v. Moynihan*,
    508 F.3d 1212 (9th Cir. 2007) ..................................................................... 4

*Chrimar Systems, Inc. v. Ruckus Wireless Inc.*,
    Case No. 16-cv-00186-SI, 2020 WL 4431787 (N.D. Cal. July 31, 2020)................. 14, 17

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F. 3d 1312 (Fed. Cir. 2009)................................................................... 24

*Fellowes, Inc. v. ACCO Brands Corp.*,
    2019 WL 1762910 (N.D. Ill. Apr. 22, 2019) ..................................................... 6

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013)..................................................................... 5

*Groupon, Inc. v. Kroy IP Holdings, LLC*,
    No. IPR2019-00061, 2020 WL 1900402
    (P.T.A.B. Apr. 16, 2020) ............................................ 7, 8, 10, 11, 12, 13, 18, 21

*Groupon, Inc. v. Kroy IP Holdings, LLC*,
    No. IPR2019-00044, 2020 WL 1900398
    (P.T.A.B. Apr. 16, 2020) ............................... 7, 8, 10, 11, 12, 14, 16, 17, 18, 19, 21

*Intellectual Ventures I LLC V. v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017)................................................................... 23

*Intellectual Ventures I, LLC v. Lenovo Group Ltd.*,
    2019 WL 1474460 (D. Mass. Apr. 4, 2019) ..................................................... 5

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.*,
    327 F.3d 1364 (Fed. Cir. 2003).................................................................. 20

## TABLE OF AUTHORITIES

*(Continued)*

**Page(s)**

*Jablonski v. Pan American World Airways, Inc.,*
   863 F.2d 289 (3d Cir. 1988)................................................................................ 4

*Jean Alexander Cosmetics, Inc. v. L'OREAL USA,*
   458 F. 3d 244 (3d Cir. 2006)................................................................................ 5

*M2M Solutions LLC, et al. v. Sierra Wireless America, Inc., et al.,*
   No. 14-cv-01102-RGA, slip op. at 6-7 (D. Del. Mar. 31, 2021) ....................... 5

*MaxLinear, Inc. v. CF CRESPE LLC,*
   880 F.3d 1373 (Fed. Cir. 2018)........................................................................... 5

*Netflix, Inc. v. Rovi Corp.,*
   114 F. Supp. 3d 927 (N.D. Cal. 2015) .............................................................. 22

*Ohio Willow Wood Co. v. Alps South, LLC,*
   735 F.3d 1333 (Fed. Cir. 2013)................................................................ 4, 6, 14

*SAP America, Inc. v. INVESTPIC, LLC,*
   898 F. 3d 1161 (Fed. Cir. 2018)........................................................................ 23

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
   873 F.3d 905 (Fed. Cir. 2017)............................................................................ 4

*Society Hill Civic Association v. Harris,*
   632 F.2d 1045 (3d Cir. 1980)............................................................................. 4

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC,*
   778 F.3d 1311 (Fed. Cir. 2015)........................................................................... 5

*XY, LLC v. Trans Ova Genetics,*
   890 F.3d 1282 (Fed. Cir. 2018)........................................................................... 5

**STATUTES**

35 U.S.C. §101 ............................................................................................................ 21

**RULES**

Fed. R. Civ. P. 12(b)(6).............................................................................................. 4

Fed. R. Evid. 201 ....................................................................................................... 4

Defendant, Groupon, Inc. ("Groupon") submits this Memorandum in support of its Motion to Dismiss for failure to state a claim.

## I.    INTRODUCTION

After two years of litigation over the patent-in-suit before the Patent Trial and Appeal Board ("PTAB") and United States Federal Circuit, each ruled in favor of Groupon on all of the challenged patent claims, finding them to be invalid. The claims invalidated constitute *all* claims that Plaintiff, Kroy IP Holding, Inc. ("Kroy") represented were "exemplary" of the so-called invention Groupon purportedly infringes. D.I. 1, ¶¶ 45-54; D.I. 76, ¶¶ 51-60.

Notwithstanding these binding judgments, Kroy recently engaged new counsel to continue this baseless litigation against Groupon on materially identical claims it belatedly added after *inter partes* review was sought.  Well-established principles of collateral estoppel dictate dismissal of Kroy's Second Amended Complaint with prejudice.

The judgments of the PTAB and Federal Circuit also remove the only remaining impediment to invalidating these claims under 35 U.S.C. §101.  This Court previously found claims of the asserted patented were directed to abstract ideas. D.I. 58. These judgments now establish that none of these claims embody an inventive concept.

Lastly, Kroy's allegations of indirect infringement fail to plead the required direct infringement by a third party.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Kroy's Patent and Action against Groupon

Kroy filed suit against Groupon on October 6, 2017. D.I. 1.  Kroy alleged certain self-service systems through which merchants created "deals" on Groupon's marketing platform infringed it "incentive program builder" invention (U.S. Patent No. 6,061,660 (the "'660 Patent")).  D.I. 1 at 3-4.  In describing its "incentive program builder" invention and Groupon's

alleged infringement, the Complaint expressly cited as exemplary Claims 1, 10, 16-21, 25, and 27-30 of the '660 Patent. D.I. 1, Ex. 3.

Groupon thereafter timely filed two IPR petitions (the "IPRs").  Groupon's petitions challenged claims 1, 7, 10, 12, 14, 16–21, 25, 27–30, 67–69, 87, and 101 ("Invalidated Claims"). Groupon challenged *all* "exemplary" claims on which Kroy based its then-pending Complaint.

After Groupon's IPR filings, Kroy amended its complaint to assert infringement of additional claims 75-76, 88-89, 91-93, 95-97, 100, 103-104, and 107-111.  D.I. 76 at 16-17 and 21-22.  Importantly, although Kroy's Amended Complaint added these claims in a *pro forma* fashion to its list of asserted claims, the Amended Complaint changed nothing *substantive* concerning the content of its alleged invention or the nature of Groupon's alleged infringement. *Compare* D.I. 76, ¶¶ 51-60 and D.I. 1, ¶¶ 45-54.

Because this disclosure followed Groupon's IPR deadline, these added claims (with the exception of Claim 87) were not mentioned explicitly in Groupon's Petitions, but many depend from those challenged, and none are materially different from those invalidated.

### B.      Groupon Prevails at the PTAB and Federal Circuit

After extensive litigation before the PTAB, on April 16, 2020, the PTAB issued Final Written Decisions in both IPRs, determining that all Invalidated Claims were invalid.  Kroy appealed.  On June 10, 2021, the Federal Circuit affirmed the PTAB's decision.

The PTAB and Federal Circuit decisions hold the Invalidated Claims were anticipated by and obvious in light of, a number of prior art references.  Specifically, the PTAB and Federal Circuit agreed with Groupon that the Invalidated Claims were invalid in light of: (1) U.S. Patent No. 5,816,918 ("Kelly"); (2) MICROSOFT FRONTPAGE UNLEASHED (1st ed. 1996) ("Stanek"); (3) U.S. Patent No. 5,905,895 ("Halter"); (4) U.S. Patent No. 5,890,175 ("Wong"); (5) U.S. Patent No. 5,710,887 ("Chelliah"); and, (6) U.S. Patent No. 6,035,280 ("Christensen").

Kelly disclosed a host system through which a plurality of sponsors offered incentive programs (games) to consumers who received and redeemed related awards. The PTAB and Federal Circuit concluded that the Invalidated Claims were obvious in light of Kelly and one or more secondary references (Stanek and Wong).

Chelliah disclosed a central electronic mall through which sponsors could establish storefronts offering various incentives to consumers. The PTAB and Federal Circuit concluded that this reference, both alone and in combination with another secondary reference (Christensen), disclosed the claimed host systems having an interface to an incentive program builder application through which sponsors could build incentive programs made available to consumers.

### C.   Kroy's Continued Litigation and Second Amended Complaint

For four months following the Federal Circuit's decision, Kroy did nothing to pursue its case. In a Joint Status report dated October 29, 2021, Kroy explained it was "determining whether to proceed" and required 30 days to "reach resolution on how to proceed." D.I. 99, at 2. On December 14, 2021, counsel who had represented Kroy since the outset withdrew and new counsel filed an appearance. Newly retained counsel announced its intention to proceed with the case, notwithstanding the invalidation of the exemplary claims of the '660 patent.

Kroy thereafter sought leave to file a Second Amended Complaint. Kroy's motion was granted in part and denied in part. Kroy's Second Amended Complaint limits the present action to claims 91-93, 95-97, 100, 103-104, and 107-111 (the "Newly Added Claims"). D.I. 111. Groupon timely moves to dismiss Kroy's Second Amended Complaint on the grounds that Kroy is collaterally estopped from asserting these claims in light of the decision of the PTAB as affirmed by the Federal Circuit, among others.

## III.    LEGAL STANDARDS

### A.    Failure to State a Claim

Under Rule 12(b)(6), judgment may be granted if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (citing *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)) (citation omitted). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit[.]'" *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Under Federal Rule of Evidence 201, the Court make take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1215 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

Pursuant to Rule 201(c)(2) of the Federal Rules of Evidence, Groupon requests that this Court take judicial notice of the Final Written Decisions by the PTAB in IPR2019-00061 and IPR2019-00044, as well as the Federal Circuit's order affirming those PTAB decisions issued in Case Nos. 20-1916, -1917.

### B.    Collateral Estoppel

"Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).  Under both Third Circuit and Federal Circuit law, collateral estoppel applies where: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the

final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'OREAL USA,* 458 F. 3d 244, 249 (3d Cir. 2006) (collateral estoppel applies to already litigated issues even for alternative findings); *see also Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377 (Fed. Cir. 2013) (circuit law applies to general collateral estoppel principles while Federal Circuit law applies to issues unique to patent cases).

A PTAB's final judgment has an issue-preclusive effect on any pending actions involving that patent.  *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013) ("[T]here is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a final, affirmed PTO decision determining invalidity on a pending litigation"); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376–77 (Fed. Cir. 2018) (applying collateral estoppel based on Board decision, stating that "[i]t is well established that collateral estoppel, also known as issue preclusion, applies") (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015)).

Claims addressed by the PTAB need not be identical to non-adjudicated claims for collateral estoppel to apply.  *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion."); *M2M Solutions LLC, et al. v. Sierra Wireless America, Inc., et al.*, No. 14-cv-01102-RGA, slip op. at 6-7 (D. Del. Mar. 31, 2021) (Exhibit A hereto) (granting summary judgment of claims not materially different from those invalidated by PTAB); *Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, No. 16-10860-PBS, 2019 WL 1474460, at *4 (D. Mass. Apr. 4, 2019) ("PTAB decisions have a collateral-

estoppel effect in district court on unadjudicated claims that do not 'materially alter the question

of invalidity'"); *Fellowes, Inc. v. ACCO Brands Corp.*, No. 10 cv 7587, 2019 WL 1762910, at

*2–8 (N.D. Ill. Apr. 22, 2019) (denying amendment where patent claims sought to be asserted

"are not materially different from claims . . . that the PTAB and Federal Circuit have found to be

invalid").  As the Federal Circuit observed in *Ohio Willow Wood*:

> [P]recedent does not limit collateral estoppel to patent claims that
> are identical.  Rather, it is the identity of the issues that were
> litigated that determines whether collateral estoppel should
> apply.… If the differences between the unadjudicated patent
> claims and adjudicated patent claims do not materially alter the
> question of invalidity, collateral estoppel applies.

735 F.3d at 1342–43 (citations omitted).

## IV.     ARGUMENT

### A.     Kroy is Collaterally Estopped from Asserting the Validity of Claim Substantially Identical to Those Invalidated

The decisions of the PTAB and Federal Circuit estop Kroy from advancing the Newly

Asserted Claims.  As shown below, the decisions finding the Invalidated Claims unpatentable are

final, Kroy has had a full and fair opportunity to litigate the issues, and none of the Newly

Asserted Claims differ materially from those found invalid so as to alter the invalidity analysis.

#### 1.     The issues are identical

The Invalidated and Newly Added Claims are substantially identical.  All are directed to

systems and methods for hosting incentive programs on behalf of a plurality of sponsors. This

host system provides an interface to an "incentive program builder application" through which

sponsors may input parameters from which incentive programs are configured and offered to

consumers.  Consumers may select from among the incentive programs and receive awards

offered by the program's sponsor.  These awards may then be validated.

At best, the Newly Added Claims add miscellaneous elements, such as *webpages* for sponsors and consumers to access the host system, awards stored on *electronic cards*, and *searches of particular types* which permit consumers to select incentive programs.  The PTAB determined that these additional elements were likewise fully disclosed in the prior art.

Below is a claim-by-claim analysis of the Newly Added Claims and a discussion of why those claims are invalid for the same reasons relied upon by the PTAB and the Federal Circuit.

### a.  Newly Asserted Claim 111 is identical to invalidated Claim 14

Claim 14 recited a method for incentive program generation.  The PTAB determined that Claim 14 was "anticipated by Chelliah" (*Groupon, Inc. v. Kroy IP Holdings, LLC*, No. IPR2019-00061, 2020 WL 1900402, at *15 (P.T.A.B. Apr. 16, 2020) ("Groupon I")), "obvious over Chelliah and Christensen" (*id.* at *22), "obvious over Kelly and Stanek" (*Groupon, Inc. v. Kroy IP Holdings, LLC*, No. IPR2019-00044, 2020 WL 1900398, at *14 (P.T.A.B. Apr. 16, 2020) ("Groupon II")), and further "obvious over Kelly and Wong" (*id.* at *21). Newly Asserted Claim 111 is identical to Invalidated Claim 14:

| Invalid Claim 14 | Newly Asserted Claim 111 |
|---|---|
| A method of incentive program generation, comprising: | A method of incentive program generation, comprising: |
| providing a host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; | providing a host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| providing an incentive program builder application, running on the host computer; | providing an incentive program builder application, running on the host computer; |
| providing a database of objects associated with parameters of said incentive program builder application; | providing a database of objects associated with parameters of said incentive program builder application; |
| providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application; | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application; |

| Invalid Claim 14 | Newly Asserted Claim 111 |
|---|---|
| receiving first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors; | receiving first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors; |
| receiving second input from a consumer selecting an incentive program from among the plurality of incentive programs: | receiving second input from a consumer selecting an incentive program from among the plurality of incentive programs; |
| issuing an award to the consumer corresponding to the selected incentive program; | issuing an award to the consumer corresponding to the selected incentive program; |
| receiving a request to validate the award from a sponsor among the plurality of sponsors associated with the selected incentive program; and | receiving a request to validate the award; and |
| validating the award. | validating the award. |

### b. Newly Asserted Claim 100 recites the same websites as Invalidated Claims 17 and 29

Newly Asserted Claim 100 recites a method of incentive program generation and redemption employing websites through which a sponsor builds the incentive program, and a consumer participates. Invalidated Claims 17 and 29 recite the same websites.

Invalidated Claims 17 and 29 depend from Invalidated Claim 16.[1] Claim 16 was found invalid by the PTAB and the Federal Circuit.  The PTAB determined that Claim 16 was "anticipated by Chelliah" (*Groupon I,* 2020 WL 1900402, at *12 ), "obvious over Chelliah and Christensen" (*id.* at *22), and "obvious over Kelly and Stanek" (*Groupon II*, 2020 WL 1900398, at *11).  The Federal Circuit affirmed. As reflected below, Newly Asserted Claim 100 includes all of the elements found unpatentable with respect Invalidated Claim 16:

| Elements of Invalid Claim 16 | Newly Asserted Claim 100 |
|---|---|
| A system for incentive program generation, comprising: | A method of incentive program generation and redemption, comprising: |

---

[1]  Claim 16, in turn, depends from Invalidated Claim 1.

| Elements of Invalid Claim 16 | Newly Asserted Claim 100 |
|---|---|
| a network; a sponsor computer connected to the network; a host computer connected to the network, the host computer having a server; | providing a host computer, said host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| an incentive program builder application, running on the server; | providing an incentive program builder application, running on the host computer; |
| a database of objects associated with parameters of the incentive program builder application; | providing a database of objects associated with parameters of said incentive program builder application; |
| and an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, wherein the host computer is configured to receive first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors, | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program offered to a customer, wherein the sponsor builds an incentive program by interacting with the interface of the incentive program builder application; |
| receive second input from a consumer selecting an incentive program from among the plurality of incentive programs, | |
| issue an award to the consumer corresponding to the selected incentive program, | issuing an award to the consumer in accordance with the incentive program, |
| wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host. | wherein the incentive program is a promotion of the sponsor to the consumer facilitated by the host; |
| receive a request to validate the award from a sponsor among the plurality of sponsors associated with the selected incentive program, | receiving, from the sponsor, a request to validate the award, wherein the award is received by the sponsor from the consumer; |
| and validate the award, | validating the award using the database, |
| wherein the host, the sponsor, and the consumer are different entities, and wherein the host and the sponsor are different individuals or corporate entities. | wherein the host, the sponsor, and the consumer are different individuals or corporate entities, . . . |

Beyond the elements recited in Invalidated Claim 16, Newly Asserted Claim 100 adds

websites through which sponsors and consumers interact with the host.  Invalidated Claims 17

and 29, however, also recited addition of these websites to Invalidated Claim 16's elements. Claims 17 and 29 were invalidated by the PTAB in decisions affirmed by the Federal Circuit.

| Invalid Claims 17 and 29 | Remaining Elements of Newly Asserted Claim 100 |
|---|---|
| **17.** The system of claim 16, wherein the host computer is configured to host a website of the host through which the sponsor builds the incentive program. | wherein the host computer is provided by a host through which the sponsor offers the incentive program to a consumer, wherein the host computer hosts a website of the host through which the sponsor builds the incentive program; |
| **29.** The system of claim 16, wherein an interface of a website of the host receives consumer interaction to participate in the incentive program. | and providing an interface of a website of the host, wherein the consumer interacts with the interface to participate in the incentive program, wherein the website of the host provides to the consumer incentive programs of a plurality of sponsors. |

Invalidated Claim 17 added a website through which the sponsor builds the incentive program. The PTAB found that Chelliah anticipated, and in combination with Christensen rendered obvious, Claim 17 by "disclos[ing] a graphical interface (*e.g.*, the Store Management Dashboard) for the sponsor to build incentive programs, and disclos[ing] **implementing its interfaces as web pages**," and that "[a person of ordinary skill in the art] would have known to implement the Dashboard interface as such." *See Groupon I*, 2020 WL 1900402, at *12-13, *21-22 (emphasis added). The PTAB further determined that the combined teachings of Kelly and Stanek rendered the configuration of Claim 17 obvious because Stanek taught that "the **host's web server** can be configured to provide a sponsor with functionality necessary to build a promotional web game employing the FrontPage Editor." *See Groupon II*, 2020 WL 1900398, at *11 (emphasis added).

Invalidated Claim 29's addition of a website through which the consumer interacted was also found unpatentable. The PTAB found that Chelliah anticipated, and in combination with Christensen rendered obvious, Claim 29 by "disclos[ing] that a consumer participat[ed] in the

incentive programs **via the website of the host** 'using a WWW browser application across a TCP/IP connection.'" *See Groupon I,* 2020 WL 1900402, at *13-14, *21-22 (emphasis added). The PTAB further determined that the combined teachings of Kelly and Stanek taught that a "player in Kelly may **interact via a website of the host** to participate in the promotional game." *See Groupon II*, 2020 WL 1900398, at *12 (emphasis added).

In invalidating Claims 17 and 29, the PTAB necessarily found that Chelliah, as well as a system combining Kelly and Stanek, disclosed host systems having websites with which sponsors interacted to build incentive programs, and consumers interacted to participate. Newly Added Claim 100 recites limitations identical to those recited in the Invalidated Claims.

### c.    Newly Asserted Claim 95 is identical to Invalidated Claim 87

Invalid Claim 87 recited a system for incentive program generation. The PTAB determined that Claim 87 was "anticipated by Chelliah" (*Groupon I,* 2020 WL 1900402, at *18), "obvious over Chelliah and Christensen" (*id.* at *22), "obvious in light of Kelly and Stanek" (*Groupon II*, 2020 WL 1900398, at *15), and further "obvious over Kelly and Wong" (*id.* at *25). Newly Asserted Claim 95 recites simply using this same system to generate an incentive program:

| Invalid Claim 87 | Newly Asserted Claim 95 |
|---|---|
| A system for incentive program generation, comprising: | A method of incentive program generation, comprising: |
| a network; a sponsor computer connected to the network;  a host computer connected to the network, the host computer having a server; | providing a host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| an incentive program builder application, running on the server;[2] | providing an incentive program builder application, running on the host computer; |
| a database of objects associated with parameters of the incentive program builder application; and | providing a database of objects associated with parameters of said incentive program builder application; |

---

[2]  As noted in the immediately preceding limitation, the server is part of the "host computer."

| Invalid Claim 87 | Newly Asserted Claim 95 |
|---|---|
| an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, |
| wherein the host computer is provided by a host, the host computer configured to allow the sponsor to offer the incentive program to a consumer, | wherein the host computer is provided by a host, the host computer configured to allow the sponsor to offer the incentive program to a consumer, |
| wherein the host, the sponsor, and the consumer are different entities, | wherein the host, the sponsor, and the consumer are different entities, and |
| wherein the host and the sponsor are different individuals or corporate entities, | wherein the host and the sponsor are different individuals or corporate entities, |
| wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host, | wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host; and |
| wherein an interface of a website of the host receives consumer interaction to participate in the incentive program, | receiving consumer interaction through a website of the host to participate in the incentive program, |
| wherein the consumer interaction comprises a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors. | wherein the receiving comprises: receiving a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors. |

### d. Newly Asserted Claims 96 and 97 likewise determined to be disclosed in the prior art

Newly Asserted Claims 96 and 97 each depend from Newly Asserted Claim 95. As noted above, Claim 95 is identical in all material respects to Invalidated Claim 87. The PTAB determined that Claim 87 was anticipated and obvious. *See Groupon I,* 2020 WL 1900402, at *18, *22; *Groupon II*, 2020 WL 1900398, at *15, *25.

Newly Asserted Claim 96 merely adds that the consumer searches for incentive programs by sponsor *name.* Newly Asserted Claim 97 adds that the consumer searches for incentive programs by program *type.* In IPR2019-00061, the PTAB declared Claim 87 invalid based upon prior art disclosing the search for incentive programs using the identity of the *sponsor* (*i.e.*, the

supplier's "storefront" or "brand name").  The PTAB found Claim 87 anticipated by disclosures in Chelliah which allowed for searching through selection of a particular sponsor's storefront or by brand name, as well obvious in light of Chelliah's combination with functionality in Christensen:

> Petitioner contends that Chelliah discloses this limitation by disclosing presenting a consumer with a choice of suppliers. Petitioner contends that the consumer's selection prompts a search of the database for incentive programs of that supplier, and these incentive programs are then displayed to the customer. ... Petitioner's contentions are persuasive.

*Groupon I,* 2020 WL 1900402, at *17 (citations omitted).

> Petitioner asserts that Christensen discloses … the consumer's ability to search "for promotions by brand name, category, or product name from among a plurality of promotions offered to the consumer by the plurality of sponsors." Petitioner reasons that a [POSA] would have been motivated by Chelliah's desire to inform a consumer of incentive programs that may appeal to that consumer "to include [Christensen's] functionality by which the consumer could locate directly incentive programs of interest to that consumer[.] …We find that Petitioner's contentions about the disclosures in Christensen and Chelliah and rationale for combining the teachings of Chelliah and Christensen are persuasive.

*Id*. at *20  (citations omitted).

The PTAB likewise found that it would have been obvious to search by program *type*. Again, in IPR2019-00061, the PTAB declared Claim 87 invalid as obvious in view of disclosures in Christensen whereby a consumer searched by program *type* (*i.e.*, "category"). *See id.*.

Separately, in IPR2019-00044, the PTAB declared Claim 87 obvious in light of disclosures in Kelly of searching for incentive programs by "category":

> Petitioner also asserts that Kelly discloses presenting "a consumer with icons representing a variety of games, and the ability to cause the system to retrieve available games in order to make a selection[.]" … Petitioner reasons it would have been obvious "to employ this existing search functionality to also deliver game categories to the participants, given its usefulness in permitting

selections where there are a large number of potential games
available of differing types." We find these contentions persuasive.

*Groupon II*, 2020 WL 1900398, at *15 (citations omitted).

It is immaterial that Claim 87 did not specifically recite searches by *name* or *type*. The

addition of these limitations does not materially alter the *question of invalidity* resolved by the

PTAB. *See Chrimar Systems, Inc. v. Ruckus Wireless Inc.*, No. 16-cv-00186-SI, 2020 WL

4431787, *5-6 (N.D. Cal. July 31, 2020) (where PTAB had invalidated independent claim

reciting a "piece of central network equipment" based upon prior art that disclosed the use of "a

BaseT Ethernet hub," patentee was collaterally estopped from asserting dependent claim that

specified the recited central network equipment comprised a BaseT Ethernet hub); *see also Ohio*

*Willow Wood Co.,* 735 F.3d at 1342 ("[The Federal Circuit] does not limit collateral estoppel to

patent claims that are identical. Rather, it is the identity of the issues that were litigated that

determines whether collateral estoppel should apply.")

      e.    **"Electronic Card" in Newly Asserted Claims 103, 104 and 107-
            110 indistinguishable from Invalidated Claims 1 and 12**

The PTAB concluded Claim 1's system was disclosed and rendered obvious by the

combination of Kelly and Stanek. *See Groupon II*, 2020 WL 1900398, at *10. Newly Asserted

Claims 103 and 107 each recite use of an essentially identical system. Newly Asserted Claim 107

is representative and is identical to Claim 1, other than its addition of an "electronic card":

| Invalid Claim 1 | Newly Asserted Claim 107 |
|---|---|
| A system for incentive program generation, comprising: | A method of incentive program generation and redemption, comprising: |
| a network; a sponsor computer connected to the network; a host computer connected to the network, the host computer having a server; | providing a host computer, said host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| an incentive program builder application, running on the server;[3] | providing an incentive program builder application, running on the host computer; |

---

[3] As noted in the immediately preceding limitation, the server is part of the "host computer."

| Invalid Claim 1 | Newly Asserted Claim 107 |
|---|---|
| a database of objects associated with parameters of the incentive program builder application; and | providing a database of objects associated with parameters of said incentive program builder application; |
| an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program offered to a customer, wherein the sponsor builds an incentive program by interacting with the interface of the incentive program builder application; |
| wherein the host computer is configured to receive first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors, receive second input from a consumer selecting an incentive program from among the plurality of incentive programs, | |
| issue an award to the consumer corresponding to the selected incentive program, | issuing an award to the consumer in accordance with the incentive program, wherein the incentive program is a promotion of the sponsor to the consumer facilitated by the host; |
| receive a request to validate the award from a sponsor among the plurality of sponsors associated with the selected incentive program, and | receiving, from the sponsor, a request to validate the award, wherein the award is received by the sponsor from the consumer; |
| validate the award, | validating the award using the database, |
| wherein the host, the sponsor, and the consumer are different entities, and wherein the host and the sponsor are different individuals or corporate entities. | wherein the host, the sponsor, and the consumer are different individuals or corporate entities; and |
| | issuing an electronic card to the consumer, the electronic card storing information of the consumer for accessing the promotion of the sponsor offered to the consumer. |

The PTAB concluded, however, that the combination of Kelly and Stanek also taught use

of an "electronic card." The PTAB invalidated Claim 12, which recited in relevant part:

> A method of providing incentive program generation and award fulfillment, comprising: …
>
> **<u>providing an electronic card</u>** for fulfillment of an award, having memory for storing information associated with the consumer, wherein the information may be a personal identification number or information associated with the consumer's participation in an incentive program; ….

*See Groupon II*, 2020 WL 1900398, at *18-19 (emphasis added); *see also id.* at *21 ("Petitioner has shown by a preponderance of the evidence that claims 10 and 12 are unpatentable as obvious over Kelly, Stanek, and Halter"); *id.* at *19 (finding step of providing the recited "electronic card," was "taught or suggested by the teachings of Kelly and Stanek.")

The PTAB cited the following arguments in support of its findings:

> Kelly contains numerous disclosures regarding the use of a smart card to store player-specific prize information:
>
>> [A] player can insert a card or other medium which stores electronic data into a suitable output device 18. The game unit 10 then can write electronic data on the medium indicating the specific prize that was won by the player, and/or indicating a number of tickets or prize credits which the player has won. The player can then take the card and insert the card into a suitable card reader connected to a prize selection apparatus[.]
>
> Ex. 1006, 11:24-29, 9:59-63 ("smart cards, etc., can be used as 'specific prize tickets'"); Ex. 1002, ¶¶ 230, 277.
>
> Kelly discloses that such smart cards may include a personal identification number or information associated with the consumer's participation in the incentive program. Ex. 1006, 22:7-11 ("include[es] an electronic form of identification."), 28:1-16 (card stores results of consumer's previous participation in promotional games); Ex. 1002, ¶¶ 233, 276.

*See Groupon II*, 2020 WL 1900398, at *19 (citing IPR2019-00044, Paper 10 at 50-51 (attached as Exhibit B hereto); *see also id.* at *9 ("Petitioner contends Kelly teaches these limitations by disclosing 'the issuance of prizes to participants that are then presented to sponsors and verified'

and 'the issuance of physical tickets or vouchers that may be redeemed for prizes,' where 'prizes need not only be paper coupons or voucher[s], but can also include smart cards or other electronic vouchers.' We find these contentions persuasive.")(citations omitted)..

The PTAB found Kelly and Stanek taught a combination disclosing a system whose operation practiced all of the elements of Claims 103 and 107, including the use of an "electronic card." *Groupon II*, 2020 WL 1900398, at *19. The addition of an electronic card does not materially alter the question of invalidity. *See Chrimar Systems, Inc.*, 2020 WL 4431787, *5-6 (PTAB's decision relied upon prior art combination that it concluded expressly disclosed additional limitation.)

Newly Asserted Claims 104 and 108-110 depend from Claims 103 and 107. Each of these claims further recites use of the electronic card in connection with the consumer's participation in the incentive program or the validation of the award. The PTAB found Kelly disclosed use of an electronic card for each of these purposes. *See Groupon II*, 2020 WL 1900398, at *19-20 (citing and adopting Petitioner's arguments Kelly discloses electronic card to store award information confirmed by "suitable card reader" and "personal identification" information "associated with the consumer's participation in the incentive program."); *see also id.* at *9 (agreeing Kelly disclosed use of electronic cards for prize validation). These claims do not materially alter the question of invalidity. *See Chrimar Systems, Inc.*, 2020 WL 4431787, *5-6.

In both IPRs, the PTAB found combinations of prior art disclosed systems and methods had a scope identical to Newly Asserted Claims 103, 104, and 107-110. Kroy is estopped by this final determination from asserting Claims 103, 104, and 107-110.

**f.      Each element of Newly Asserted Claim 91 was found to be disclosed in the prior art and unpatentable**

The PTAB necessarily determined the method recited in Claim 91 was anticipated by, and obvious in light of, the prior art.  Claim 91 duplicates limitations found in Invalidated Claims 7 and 87.  The PTAB determined that systems and methods having the elements recited in Claims 7 and 87 were "anticipated by Chelliah" (*Groupon I,* 2020 WL 1900402, at *15, *18), "obvious over Chelliah and Christensen" (*id.* at *22), "obvious over Kelly and Stanek" (*Groupon II*, 2020 WL 1900398, at *13, *15), and further "obvious over Kelly and Wong" (*id.* at *21). Claim 91's identity with methods/systems found unpatentable in Claims 7 and 87 is depicted below:

| Newly Asserted Claim 91 | Elements Found by PTAB To Be Disclosed by Prior Art |
|---|---|
| A method for generating an incentive program, comprising: | A method for generating an incentive program, comprising: (Claim 7)<br><br>A system for incentive program generation, comprising: (Claim 87) |
| providing a computer; | providing a computer; (Claim 7)<br><br>a network; a sponsor computer connected to the network;  a host computer connected to the network, the host computer having a server; (Claim 87) |
| providing an incentive program builder application of such computer; | providing an incentive program builder application of such computer; (Claim 7)<br><br>an incentive program builder application, running on the server; (Claim 87) |
| providing a database of objects associated with parameters of an incentive program | providing a database of objects associated with parameters of an incentive program; (Claim 7)<br><br>a database of objects associated with parameters of the incentive program builder application; (Claim 87) |

| Newly Asserted Claim 91 | Elements Found by PTAB To Be Disclosed by Prior Art |
|---|---|
| providing an interface of the incentive program builder application for user entry of parameters for an incentive program | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program; (Claim 7)<br><br>an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, (Claim 87) |
| associating an object with each parameter entered by the user | associating an object in the database with each parameter entered by the plurality of sponsors; (Claim 7)[4] |
| generating an incentive program comprising the objects associated with all of the parameters entered by the user | generating the plurality of incentive programs comprising the objects associated with all of the parameters entered by the plurality of sponsors; (Claim 7) |
| wherein the computer is a host computer provided by a host through which a sponsor offers the incentive program to a consumer, wherein the host, the sponsor, and the consumer are different entities, wherein the host and the sponsor are different individuals or corporate entities, wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host | wherein the host computer is provided by a host, the host computer configured to allow the sponsor to offer the incentive program to a consumer, wherein the host, the sponsor, and the consumer are different entities, wherein the host and the sponsor are different individuals or corporate entities, wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host, (Claim 87) |

---

[4]   Invalidated Claims 10 and 12 likewise recite an incentive builder application program comprising a database of objects each associated with an action of the incentive program, an application for associating such objects with sponsor entered parameters, a file built from such objects, generating code therefrom, then translating(classifying) that code into numbers assembled into tables that are capable of being interpreted and executed by computer. *See Groupon II*, 2020 WL 1900398, at *21 ("Petitioner has shown by a preponderance of the evidence that claims 10 and 12 are unpatentable as obvious over Kelly, Stanek, and Halter.")  As discussed in Section IV.B, *infra*, this Court has also found Claim 10 to be directed to an abstract idea for purposes of 35 U.S.C. §101. D.I. 58.

| Newly Asserted Claim 91 | Elements Found by PTAB To Be Disclosed by Prior Art |
|---|---|
| receiving consumer interaction through a website of the host to participate in the incentive program wherein the receiving comprises, receiving a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors. | receiving second input from a consumer selecting an incentive program from among the plurality of incentive programs[.](Claim 7)<br><br>wherein an interface of a website of the host receives consumer interaction to participate in the incentive program, wherein the consumer interaction comprises a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors. (Claim 87) |

The PTAB found that Chelliah alone, and the combinations of Kelly with both Stanek and Wong, disclosed systems/methods having the elements recited in Claim 91. That Claim 7 and 87 may include additional limitations not recited in Claim 91 is irrelevant. Claim 91 employs the open-ended transitional phrase "comprising," which does not exclude additional, unrecited elements or steps. *See Invitrogen Corp. v. Biocrest Manufacturing, L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003). To illustrate, the following diagram depicts how, in determining that the elements/steps of Claim 7 and 87 were encompassed by Chelliah's system, the PTAB necessarily determined that the elements of Claim 91 were similarly anticipated that system:



In both IPRs, the PTAB found that the prior art, and combinations of the prior art that a person of skill would have been motivated to make, disclosed systems and methods that encompassed the method claimed in Newly Asserted Claim 91.

g.    **Newly Asserted Claims 92 and 93 Further Recite Searching by Sponsor *Name* and Program *Type*—Limitations Declared Insufficient to Render Such Claims Patentable**

Newly Asserted Claims 92 and 93 each depend from Newly Asserted Claim 91.  As noted above, the PTAB determined that each limitation of the invention recited in Claim 91 was disclosed in the prior art and that methods having such steps would have been both anticipated and obvious in light of those disclosures.  Newly Asserted Claim 92 merely adds a requirement that the consumer search for incentive programs by sponsor *name*.  Newly Asserted Claim 93 adds a requirement that the consumer search for incentive programs by program *type*. As discussed above in connection with Newly Asserted Claims 96 and 97, the PTAB has already found claims of such scope invalid as anticipated and obvious.  *See Groupon I,* 2020 WL 1900402, at *17, *20; *Groupon II*, 2020 WL 1900398, at *15.

2.    **The issues were actually litigated**

As discussed above, the issue of anticipation over Chelliah and of obviousness in view of the combination of Chelliah with Christensen, Kelly with Stanek and Kelly with Wong, was actually litigated, inclusive of all subsidiary issues. *See* Section IV.A, above.

3.    **The determination was essential to the final judgment**

The determinations made concerning whether the prior art disclosed each element found in the Invalidated Claims were essential to the PTAB's determinations that the prior art anticipated the Invalidated Claims, and rendered them obvious.

4.    **Kroy was represented by counsel and had a full and fair opportunity to litigate the issues**

Kroy was represented by counsel in the prior proceedings and had a full and fair opportunity to argue the validity of the Invalidated Claims.

**B.**      **The Newly Asserted Claims Lack an "Inventive Concept" and are Invalid Under Section 101 in Light of This Court's Previous Determinations**

This Court previously found Kroy's claims reciting systems and methods for building incentive programs to be directed to an abstract idea.  D.I. 58 at 9-19.  This Court, however, did not dismiss Kroy's action at that time after concluding that, drawing all inferences in favor of Kroy, fact issues existed concerning whether the claims embodied an inventive concept. D.I. 58 at 20.  As described above in Section IV.A.1, the subsequent decisions of the PTAB and the Federal Circuit have now established that Kroy's claims are not "inventive." As such, dismissal is appropriate on the independent ground that the Newly Asserted Claims are directed to unpatentable subject matter and invalid under 35 U.S.C. §101.

This Court previously found, "[c]ontrary to Plaintiffs suggestion, the claims are not directed to an improvement in technology used to administer incentive award systems, but rather to the more general concept of providing an incentive award system (using computers). Providing an incentive award system is simply a method of organizing human activity—a concept regularly found abstract at Alice step one." D.I. 58 at 15.  This Court concluded that Kroy's claims did not present a situation where the claimed invention "is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*  This Court determined originally asserted independent and dependent claims 1, 10, 16-21, 25 and 27-30 were "plainly abstract ideas."  *Id.* 16-19.

As the comparisons discussed in Section IV.A.1 establish, the Newly Asserted Claims recite the same limitations as claims previously declared abstract.[5]  The Newly Asserted Claims

---

[5]   While Claims 91-93 and 95-97 additionally recite searches by the consumer, the mere addition of *searching* does not alter this Court's previous determination that these incentive builder claims are directed to abstract ideas.  *See, e.g., Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 941 (N.D. Cal. 2015) ("searching" database of programs deemed an abstract idea)

are also directed to the general concept of providing an incentive award system using "generic computer components used in their ordinary capacity." *Id.* at 16.

In an attempt to avoid invalidation, Kroy's Second Amended Complaint alleges the Newly Asserted Claims embody inventive concepts:

> [T]he 660 Patent introduced a novel incentive program builder with an award fulfillment system, including the unconventional combination of (1) a host computer; (2) an incentive program builder application, (3) a database of parameter source code modules, (4) a referential table for capturing merchant's parameter selections and assigning each a unique identifier, and (5) a validation system.

D.I. 111, ¶13.

The PTAB and Federal Circuit, however, have declared these purported inventive concepts lack inventiveness.  *See* discussion, Section IV.A.1, *supra*; *see also* D.I. 20 (This Court noting the '660 Patent "contains numerous statements that the computer components used to implement the claimed incentive award system are 'conventional' and 'standard.'"") "There is, in short, nothing 'inventive' about any claim details, individually or in combination, that are not themselves in the realm of abstract ideas." *SAP America, Inc. v. INVESTPIC, LLC,* 898 F. 3d 1161, 1170 (Fed. Cir. 2018). The Newly Asserted Claims are directed to unpatentable subject matter and dismissal with prejudice is warranted.

### C.   Kroy's Indirect Infringement Allegations (Count II) Fail to Allege a Direct Infringer and are Properly Dismissed

Kroy alleges Groupon induces "customers, subscribers, and users" to infringe the Newly Asserted Claims, and/or "contributes to" their direct infringement.  None of these parties are alleged to perform any, let alone all, of the steps of the claimed methods.  "There can be no inducement or contributory infringement without an underlying act of direct infringement." *See Intellectual Ventures I LLC V. v. Motorola Mobility LLC*, 870 F.3d 1320, 1336 (Fed. Cir. 2017).

Direct infringement requires performance by a single party of each and every step of the patented method. *See Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F. 3d 1312, 1320 (Fed. Cir. 2009) .

Each of the Newly Asserted Claims requires (1) providing a host computer; (2) providing an incentive program builder application; (3) providing an interface thereto; (4) providing a database of objects associated with parameters thereof; (5) receiving input from sponsors and consumers; and, (6) issuing and validating awards to consumers.  Kroy does not (nor can it) plausibly allege that "customers, subscribers, and users" provide the host computer or the incentive program builder application, or that they receive their own input or issue to themselves awards they then validate.  Kroy's allegations fail to assert these third-parties directly infringe the claimed methods.  Kroy's indirect infringement allegations must fail.

## V.   CONCLUSION

For the foregoing reasons, Kroy is collaterally estopped from contesting the invalidity of Newly Asserted Claims 91-93, 95-97, 100, 103-104, and 107-111 of the '660 Patent.  These Newly Asserted Claims also lack an inventive concept and are, therefore, invalid under Section 101 in light of previous rulings of this Court.  Lastly, Kroy's allegations of indirect infringement do not state a cause of action, nor could Kroy plausibly allege the necessary direct infringement by third parties. Kroy's Second Amended Complaint, therefore, should be dismissed with prejudice.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor

P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

Thomas L. Duston
Tiffany D. Gehrke
Ryan N. Phelan
Kwanwoo Lee
Raymond R. Ricordati III
MARSHALL, GERSTEIN AND BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL  60606-6357
(312) 474-6300

Dated:  April 7, 2022

*Attorneys for Defendant*