# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KROY IP HOLDINGS, LLC,      )
          )
     Plaintiff,     )
          )
   v.      )     Civil Action No. 17-1405-MN-CJB
          )
GROUPON, INC.,      )
          )
     Defendant.     )

---

David E. Moore, Bindu A. Palapura, and Brandon R. Harper, POTTER ANDERSON & CORROON, LLP, Wilmington, DE; David L. Hecht, Conor B. McDonough, and James Zak, HECHT PARTNERS, New York, NY, Attorneys for Plaintiff.

Steven J. Balick and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Thomas L. Duston, Tiffany D. Gehrke, Ryan N. Phelan, Kwanwoo Lee, Raymond R. Ricordati III and Chelsea Murray, MARSHALL, GERSTEIN AND BORUN LLP, Chicago, IL, Attorneys for Defendant.

---

## **MEMORANDUM OPINION**

December 2, 2022
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

In this patent infringement action filed by Plaintiff Kroy IP Holdings, LLC ("Kroy" or "Plaintiff") against Defendant Groupon, Inc. ("Groupon" or "Defendant"), presently before the Court is Defendant's motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (D.I. 117) For the reasons that follow, the Court orders that the Motion is GRANTED.

## I.  BACKGROUND

Plaintiff filed suit against Defendant on October 6, 2017, alleging that Defendant infringed United States Patent No. 6,061,660 (the "'660 patent"), which claims a method and system for providing incentive programs over a computer network. (D.I. 1 at ¶¶ 9-10) More specifically, the '660 patent discloses an incentive builder program with an award fulfillment system that permits multiple sponsors to customize and market incentive programs through a central market place using an interface. (*Id.*) In its original Complaint, Plaintiff asserted 13 "exemplary" claims of the '660 patent against Defendant: claims 1, 10, 16-21, 25, and 27-30. (*Id.* at ¶¶ 43-44 & ex. 3)[1]

In October 2018, Defendant timely filed two *inter partes* review petitions (the "IPRs"), challenging 21 total claims: claims 1, 7, 10, 12, 14, 16-21, 25, 27-30, 67-69, 87, and 101 of the '660 patent (the "Invalidated Claims") with the United States Patent and Trademark Office's

---

[1]  The original '660 patent issued on May 9, 2000, with 15 claims. ('660 patent) The patent thereafter went through an *ex parte* reexamination, and a reexamination certificate was issued on February 6, 2015. In the reexamination, claims 1, 2, 4, 7 and 14 were determined to be patentable as amended, claims 3, 5, 6, 8-13 and 15 were not reexamined, and new claims 16-115 were added. (*Id.*) The '660 patent is found on the docket in this case, (D.I. 1, ex. 1), and herein the Court will simply cite to the "'660 patent." The non-reexamined claims are found at the end of the original '660 patent, while the remaining relevant claims are found in the *Ex Parte* Reexamination Certificate for the '660 patent. (Tr. at 10)

("PTO") Patent Trial and Appeal Board ("PTAB").  (IPR2019-00044, Paper 1 at 1 (P.T.A.B. Oct. 10, 2018); *id.*, Paper 10 at 1 (P.T.A.B. Jan. 3, 2019); IPR2019-00061, Paper 1 at 1 (P.T.A.B. Oct. 10, 2018))  This included all 13 of the "exemplary" claims identified by Plaintiff in its Complaint, plus eight additional claims of the patent.[2]  In IPR2019-00044, Defendant relied on U.S. Patent No. 5,816,918 ("Kelly") as its primary reference; according to Defendant, Kelly disclosed a "system deploying promotional games over a wide area network, like the internet[,]" in which "players us[e] game units to interact with a 'host' server that provides promotional games, including games that may be supplied by a plurality of sponsors."  (IPR2019-00044, Paper 10 at 4, 16-17)  In that same IPR, Defendant also relied on Microsoft® FrontPage Unleashed (1st ed. 1996) ("Stanek"), U.S. Patent No. 5,890,175 ("Wong"), and U.S. Patent No. 5,905,895 ("Halter") as secondary references.  (*Id.* at 3-4)  In IPR2019-00061, Defendant relied on U.S. Patent No. 5,710,887 ("Chelliah") as its primary reference; according to Defendant, Chelliah disclosed an "electronic commerce system with an 'Incentives Subsystem' to create and host incentives programs on behalf of sponsors (i.e., stores)."  (IPR2019-00061, Paper 1 at 4, 20) Defendant also relied on Halter and U.S. Patent No. 6,035,280 ("Christensen") as secondary references.  (*Id.* at 3-4)

On February 6, 2019, a few months after Defendant filed its IPR petitions, Plaintiff filed an Amended Complaint in this case.  (D.I. 76)  In the Amended Complaint, Plaintiff now asserted not only the same 13 claims as it did in its original Complaint, but it also added an

---

[2]    Defendant's counsel stated that at the time Defendant filed these IPR petitions, the 13 claims referenced in the original Complaint were the only claims that Plaintiff had indicated it would assert against Defendant in this case.  (Tr. at 13-14)  Since the '660 patent had 115 claims after reexamination, and since it is "not practical to pursue that many claims in the [PTO, Defendant]" took the 13 "exemplary" claims asserted against it in the original Complaint, added the eight above-referenced "additional [claims,]" and then filed the IPR petitions as to 21 claims in total.  (*Id.*; *see also id.* at 108)

3

additional 22 newly-asserted claims:  claims 12, 75-76, 87-89, 91-93, 95-97, 100-04, and 107-11. (D.I. 76 at ¶¶ 49, 63-64)  Because they were first raised after Defendant's IPR filing deadline had passed, nearly all of these 22 newly-asserted claims were not included in Defendant's IPR petitions.

In April 2019, the PTAB instituted IPR as to both IPR petitions and on all 21 challenged claims of the '660 patent.  (D.I. 93 at 1)  And in May 2019, the parties jointly stipulated that the instant case should be stayed, pending the issuance of Final Written Decisions by the PTAB in both IPR proceedings.  (*Id.*)

On April 16, 2020, the PTAB issued Final Written Decisions in both IPRs, determining that all of the Invalidated Claims were invalid.  *See Groupon, Inc. v. Kroy IP Holdings, LLC*, IPR2019-00061, 2020 WL 1900402 (P.T.A.B. Apr. 16, 2020) (hereinafter "*Groupon I*" or "IPR2019-00061"); *Groupon, Inc. v. Kroy IP Holdings, LLC*, IPR2019-00044, 2020 WL 1900398 (P.T.A.B. Apr. 16, 2020) (hereinafter "*Groupon II*" or "IPR2019-00044").  Plaintiff appealed, but it did not seek to lift the stay of the instant case at that time.  (D.I. 96)  And on June 14, 2021, the United States Court of Appeals for the Federal Circuit summarily affirmed the PTAB's decisions, pursuant to Federal Circuit Rule 36 ("Rule 36").  *Kroy IP Holdings, LLC v. Groupon, Inc.*, 849 F. App'x 930 (Fed. Cir. 2021).

In IPR2019-00061, the PTAB and Federal Circuit invalidated all of the Invalidated Claims with the exception of claims 10 and 12, on the grounds that either Chelliah anticipated these claims or that Chelliah in combination with Christensen rendered the claims obvious. *Groupon I*, 2020 WL 1900402, at *1, *25.  And in IPR2019-00044, the PTAB and Federal Circuit invalidated all of the Invalidated Claims as obvious in light of Kelly and one or more of

the relevant secondary references (i.e., Stanek, Halter and/or Wong). *Groupon II*, 2020 WL 1900398, at *1, *27.

Following the Federal Circuit's affirmance, the instant case remained stayed. Plaintiff informed this Court that it was determining whether to proceed on the asserted claims that had not been at issue in the IPR (the "Additional Claims"). (D.I. 99) After Plaintiff obtained new outside counsel in the case, (D.I. 101), the parties asked this Court for additional time to address the case's status, (D.I. 102). In November 2021, Plaintiff informed Defendant that it intended to pursue the Additional Claims; both sides agreed that discovery should remain stayed, pending a decision on whether Plaintiff was collaterally estopped from litigating the Additional Claims here. (D.I. 104 at 2-3)

In December 2021, Plaintiff next sought leave to file a Second Amended Complaint (the "Operative Complaint"). (D.I. 107) United States District Judge Maryellen Noreika, to whom this case is otherwise assigned, granted-in-part and denied-in-part the motion to amend on March 2, 2022. The Operative Complaint, which was filed on March 10, 2022, now limited the present action to only 14 asserted claims: claims 91-93, 95-97, 100, 103-04, and 107-11 (the "Newly Asserted Claims"). (D.I. 111 at ¶¶ 48-80) Plaintiff asserted both direct infringement (Count I) and indirect infringement (Count II) of the Newly Asserted Claims. (*Id.*)

Defendant then filed the instant Motion, seeking dismissal of the Operative Complaint, on April 7, 2022. (D.I. 117) On April 12, 2022, the parties consented to the Court's jurisdiction to conduct all proceedings on and enter a final order on the Motion. (D.I. 119) Briefing on the Motion was completed on April 28, 2022, (D.I. 121), and the Court heard oral argument on the Motion on October 12, 2022.

5

## II.    LEGAL STANDARD

Pursuant to Rule 12(b)(6), a party may move to dismiss the plaintiff's complaint based upon the failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  In assessing such a motion, the court first separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft*, 556 U.S. at 679).

A Rule 12(b)(6) movant may also challenge a pleading by invoking an affirmative defense, as Defendant does here.  (Tr. at 16)[3]  The Court may dismiss a claim pursuant to Rule 12(b)(6) in light of an affirmative defense, but only where the well-pleaded factual allegations in the complaint (along with the other materials that the Court may properly consider), construed in the light most favorable to the plaintiff, clearly suffice to establish the defense. *See Jones v.*

---

[3]    Collateral estoppel is an affirmative defense.  *United Therapeutics Corp. v. Liquidia Techs., Inc.*, Civil Action No. 20-755-RGA, 2022 WL 1503923, at *1 (D. Del. May 12, 2022).  This defense can be adjudicated at the motion to dismiss stage.  *M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010).

*Bock*, 549 U.S. 199, 215 (2007); *Wilson Wolf Mfg. Corp. v. Sarepta Therapeutics, Inc*., Civil

Action No. 19-2316, 2020 WL 7771039, at *2 n.1 (D. Del. Dec. 30, 2020).[4]

## III.   DISCUSSION

Defendant's primary basis for dismissal of the Operative Complaint is its assertion that

Plaintiff is collaterally estopped from alleging infringement of the Newly Asserted Claims.  (D.I.

118 at 6-21)[5]  In addressing this issue, the Court will first discuss the law relating to collateral

estoppel in the patent context.  Thereafter, it will address the parties' arguments on the merits,

explaining why Defendant's Motion in this regard is well taken.

### A.   Collateral Estoppel

The doctrine of collateral estoppel, also referred to as "issue preclusion," serves to

"'preclude parties from contesting matters that they have had a full and fair opportunity to

litigate,' which 'protects their adversaries from the expense and vexation attending multiple

lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the

possibility of inconsistent decisions.'"  *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887

---

[4]      Defendant requested that the Court take judicial notice of the PTAB's Final
Written Decisions and the Federal Circuit's order affirming those decisions, (D.I. 118 at 4), and
Plaintiff did not object.  Herein, the Court will do so.  *See Princeton Digital Image Corp. v.
Konami Digital Ent. Inc*., Civil Action No. 12-1461-LPS-CJB, 2017 WL 239326, at *3 n.7 (D.
Del. Jan. 19, 2017).

[5]      Defendant also sought dismissal of the Operative Complaint, in whole or in part,
on two other bases:  (1) that the Newly Asserted Claims lack an inventive concept and are patent
ineligible under 35 U.S.C. § 101 ("Section 101"), (D.I. 118 at 22); and (2) that Count II of the
complaint, via which Plaintiff asserts indirect infringement, fails to allege a direct infringer and
should therefore be dismissed.  (*Id.* at 23-24)  Below, the Court will explain why it concludes
that dismissal of the Operative Complaint is warranted due to Defendant's affirmative defense of
collateral estoppel.  In light of this, the Court need not and will not address the other two issues
raised by Defendant.  (That said, the Court notes for the record that in its answering brief,
Plaintiff had agreed to dismiss Count II with prejudice.).  (D.I. 120 at 8)

F.3d 1376, 1382 (Fed. Cir. 2018) (quoting *Mont. v. United States*, 440 U.S. 147, 153-54 (1979)). When assessing the doctrine in a patent case, a district court must apply regional circuit law to the general procedural question of whether collateral estoppel applies, while applying Federal Circuit law to questions "involving substantive issues of patent law, issues of [collateral estoppel] that implicate substantive patent law issues, or issues of [collateral estoppel] that implicate the scope of [the Federal Circuit's] own previous decisions." *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).  The United States Court of Appeals for the Third Circuit has identified four standard requirements that must be met in order for the doctrine of collateral estoppel to apply:  "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal quotation marks and citation omitted).

The Federal Circuit has held that when the PTAB issues a final judgment on the invalidity of a patent claim, this will have an issue-preclusive effect on any pending or co-pending district court actions involving that same patent claim (even though the district court and PTAB, *inter alia*, require a patent challenger to meet different burdens of proof in order to establish invalidity).  *See XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018); *cf. MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376-77 (Fed. Cir. 2018) (applying collateral estoppel based on a PTAB decision, and stating that "[i]t is well established that collateral estoppel, also known as issue preclusion, applies" when the same issue is before a court and an administrative agency) (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015)).  The Federal Circuit has further held that "[c]omplete identity of claims

is not required to satisfy the identity-of-issues requirement for claim preclusion." *Soverain*, 778 F.3d at 1319; *see also Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("Our precedent does not limit collateral estoppel to patent claims that are identical."). Rather, the inquiry in that instance hinges on the "identity of the *issues* that were litigated." *Ohio Willow Wood Co.*, 735 F.3d at 1342 (emphasis in original). In other words, if "the differences between the unadjudicated patent claims and adjudicated patent claims do not *materially alter the question of invalidity*, collateral estoppel applies." *Id.* (emphasis added).

Therefore, when one considers these two lines of authority together, it follows that: (1) if the PTAB issues a final judgment invalidating a patent claim; and (2) if another claim in the same patent is at issue in a district court litigation; and (3) if any differences between the two claims do not materially alter the question of invalidity regarding the district court claim; then (4) the patentee will be collaterally estopped from litigating the district court claim (assuming the other requirements of the collateral estoppel doctrine are met). *See M2M Solutions LLC, et al. v. Sierra Wireless Am., Inc. et al.*, Civil Action No. 14-1102-RGA, D.I. 213 at 5-7 (D. Del. Mar. 31, 2021) (granting summary judgment on collateral estoppel grounds regarding patent claims that were not materially different from claims in the same patent that had been previously invalidated by the PTAB); *Intellectual Ventures I LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 257 (D. Mass. 2019) ("PTAB decisions have a collateral-estoppel effect in district court on unadjudicated claims that do not 'materially alter the question of invalidity.'") (citation omitted); *see also* (Tr. at 24-26).[6]

---

[6]     This articulation of the law is not disputed by either side here. Plaintiff acknowledged at oral argument that collateral estoppel can, under certain circumstances, apply to bar litigation of patent claims that were not invalidated in an IPR proceeding, but which are not materially different from the claims that were invalidated in such a proceeding. (Tr. at 77, 82) Indeed, a number of district courts have granted motions to dismiss on the basis of collateral

**B.      Discussion**

The parties' primary dispute regarding the Motion relates to the first collateral estoppel

requirement:  whether "the identical issue was previously adjudicated."[7]  As noted above,

---

estoppel, wherein the claims at issue were not identical to, but not materially different from, previously-invalidated/ineligible claims.  *See, e.g.*, *NetSoc LLC v. Oath, Inc.*, No. 18-CV-12267 (RA), 2020 WL 419469, at *5-8 (S.D.N.Y. Jan. 24, 2020); *Arunachalam v. Exxon Mobil Corp.*, CIVIL NO. 6:19-CV-00171-ADA, 2019 WL 10303695, at *2-4 (W.D. Tex. June 26, 2019). Here, the key dispute between the parties is over whether, in fact, each of the Newly Asserted claims is materially different from an invalidity perspective than certain Invalidated Claims.

[7]      In its answering brief, Plaintiff also raised an issue relating to the third collateral estoppel requirement:  whether the previous determination was necessary to the decision.  Here, Plaintiff argued that because the Federal Circuit summarily affirmed the PTAB's Final Written Decisions pursuant to Rule 36, this precludes application of the collateral estoppel doctrine. (D.I. 120 at 4-5)  More specifically, Plaintiff asserts that collateral estoppel cannot apply because the "Rule 36 affirmance here was silent as to which aspects of the multiple independent grounds relied on by the PTAB [to invalidate the Invalidated Claims] were those the Federal Circuit approved of or not."  (*Id.* at 4)

In response, however, Defendant explained why the fact of the Rule 36 affirmance does not impede its collateral estoppel argument.  Defendant argued, and the Court agrees, that the fact of the Rule 36 affirmance is immaterial here because Plaintiff cannot show how the affirmance could have been premised on a ground that *would not* collaterally estop the assertion of any Newly Asserted Claim.  (D.I. 121 at 4-6; *see also* D.I. 118; Tr. at 59-64); *cf. Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1356-57 (Fed. Cir. 2017) (noting that a Rule 36 judgment can be utilized for collateral estoppel purposes, so long as there is "no uncertainty as to whether the precise issue was raised and determined [by the Federal Circuit] in the prior suit"); *A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 455 (8th Cir. 2016) (noting that even if a state court jury's general verdict meant that the jury's decision of no liability could have been premised on one of two independent grounds, collateral estoppel applied to preclude the instant suit in federal court against the defendant, because either of those grounds led to a determination that the defendant could not be liable in the instant suit).

During oral argument, the Court asked Plaintiff's counsel to point out an example of how the Rule 36 summary affirmance created the possibility that the Federal Circuit could have affirmed the PTAB's judgment of invalidity as to an Invalidated Claim on a ground that would not collaterally estop Plaintiff from litigating a Newly Asserted Claim.  (Tr. at 98-102) Plaintiff's counsel acknowledged that he could not do so, and stated that he was "not aware" of this having occurred here.  (*Id.* at 101)  In light of this, the Court rejects Plaintiff's argument that Defendant has failed to establish the applicability of the third collateral estoppel requirement. (*Id.* at 29 (Defendant's counsel noting that "every conceivable ground upon which the Federal

Defendant contends that Plaintiff is collaterally estopped from raising the Newly Asserted Claims because those Claims are not materially different from the Invalidated Claims for invalidity purposes.  Below, the Court will assess each of the Newly Asserted Claims, explaining why it agrees with Defendant that Plaintiff is collaterally estopped from litigating those claims in this case.

### 1.    Newly Asserted Claims 111 & 95

Newly Asserted Claim 111 is nearly identical to Invalidated Claim 14.  (D.I. 118 at 7-8)  The PTAB found that claim 14 was invalid as:  (1) anticipated by Chelliah, *Groupon I*, 2020 WL 1900402, at *15; (2) obvious over Chelliah and Christensen, *id.* at *22; (3) obvious over Kelly and Stanek, *Groupon II*, 2020 WL 1900398, at *14; and (4) obvious over Kelly and Wong, *id.* at *21.  Claims 14 and 111 are reproduced below:

| Invalidated Claim 14 | Newly Asserted Claim 111 |
|---|---|
| A method of incentive program generation, comprising: | A method of incentive program generation, comprising: |
| providing a host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; | providing a host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| providing an incentive program builder application, running on the host computer; | providing an incentive program builder application, running on the host computer; |
| providing a database of objects associated with parameters of said incentive program builder application; | providing a database of objects associated with parameters of said incentive program builder application; |
| providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive |

Circuit could have premised its affirmance would invalidate the claims that the plaintiff is asserting"); *see also id.* at 32, 34)

It is not disputed that the second and fourth collateral estoppel requirements have been met.  And so for the remainder of this opinion, the Court will focus on the parties' arguments about the first requirement.

| Invalidated Claim 14 | Newly Asserted Claim 111 |
|---|---|
| program by interacting with the incentive program builder application; | program by interacting with the incentive program builder application; |
| receiving first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors; | receiving first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors; |
| receiving second input from a consumer selecting an incentive program from among the plurality of incentive programs; | receiving second input from a consumer selecting an incentive program from among the plurality of incentive programs; |
| issuing an award to the consumer corresponding to the selected incentive program; | issuing an award to the consumer corresponding to the selected incentive program; |
| receiving a request to validate the award from a sponsor among the plurality of sponsors associated with the selected incentive program; and | receiving a request to validate the award; and |
| validating the award. | validating the award. |

('660 patent, Reexamination Certificate, cols. 2:33-61, 10:11-36)

As for Newly Asserted Claim 95, it is nearly identical to Invalidated Claim 87. The

PTAB found claim 87 invalid as: (1) anticipated by Chelliah, *Groupon I*, 2020 WL 1900402, at

\*18; (2) obvious over Chelliah and Christensen, *id.* at \*22; (3) obvious over Kelly and Stanek,

*Groupon II*, 2020 WL 1900398, at \*15; and (4) obvious over Kelly and Wong, *id.* at \*25.

Claims 87 and 95 are reproduced below:

| Invalidated Claim 87 | Newly Asserted Claim 95 |
|---|---|
| A system for incentive program generation, comprising: | A method of incentive program generation, comprising: |
| a network; a sponsor computer connected to the network; a host computer connected to the network, the host computer having a server; | providing a host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| an incentive program builder application, running on the server; | providing an incentive program builder application, running on the host computer[]; |
| a database of objects associated with parameters of the incentive program builder application; and | providing a database of objects associated with parameters of said incentive program builder application; |
| an interface of the incentive program builder application for sponsor entry of parameters | providing an interface of the incentive program builder application for sponsor entry |

| Invalidated Claim 87 | Newly Asserted Claim 95 |
|---|---|
| for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, | of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, |
| wherein the host computer is provided by a host, the host computer configured to allow the sponsor to offer the incentive program to a consumer, | wherein the host computer is provided by a host, the host computer configured to allow the sponsor to offer the incentive program to a consumer, |
| wherein the host, the sponsor, and the consumer are different entities, | wherein the host, the sponsor, and the consumer are different entities, and |
| wherein the host and the sponsor are different individuals or corporate entities, | wherein the host and the sponsor are different individuals or corporate entities, |
| wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host, | wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host; and |
| wherein an interface of a website of the host receives consumer interaction to participate in the incentive program, | receiving consumer interaction through a website of the host to participate in the incentive program, |
| wherein the consumer interaction comprises a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors. | wherein the receiving comprises:  receiving a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors. |

('660 patent, Reexamination Certificate, cols. 5:56-6:19, 7:4-34)

Defendant argued that Newly Asserted Claims 111 and 95 are essentially "identical" to their respective Invalidated Claims, and thus, that collateral estoppel should apply. (D.I. 118 at 7-8, 11-12 (emphasis omitted))  In response, Plaintiff noted that the respective claims are not literally identical, asserting that "at least one entire element differs between" the respective Invalidated and Newly Asserted Claims. (D.I. 120 at 6)[8] It suggested that these differences will make a difference when assessing the first collateral estoppel requirement.

_____

[8] In this opinion, the Court will only address the arguments that Plaintiff actually made in its briefing regarding asserted material differences between the Invalidated Claims and the Newly Asserted Claims. (D.I. 120 at 5-6)  As will become clear, those arguments were few in number, as they took up less than one full page of Plaintiff's answering brief. (*Id.*; *see also* Tr. at 5 (Plaintiff's counsel stating that Plaintiff "did not accept the implication to go claim by claim [in explaining why particular Newly Asserted Claims were materially different from an invalidity perspective from certain Invalidated Claims]"); *id.* at 79-80)  To the extent there are

other differences between a particular Invalidated Claim and Newly Asserted Claim that Plaintiff did not identify as material in its briefing, the Court will assume those differences are not relevant to the collateral estoppel issues discussed herein.  Plaintiff has waived any argument to the contrary.  (Tr. at 81-82 (Plaintiff's counsel agreeing that it must make arguments in its briefing if it wishes the Court to consider those arguments in resolving the Motion); *id.* at 85 (same)); *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. App'x 950, 954 (Fed. Cir. 2014) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."); *see also Kiger v. Mollenkopf*, Civ. No. 21-409-RGA, 2021 WL 5299581, at *2 n.2 (D. Del. Nov. 15, 2021) (deeming arguments not made in the plaintiff's answering brief regarding a motion to dismiss to be waived); *Freed v. St. Jude Med., Inc.*, 364 F. Supp. 3d 343, 351 n.6 (D. Del. 2019) (same).

At times during oral argument, Plaintiff's counsel suggested that one reason why the arguments on this point in its briefing were not more developed is that "there were page limits here."  (Tr. at 72; *see also id.* at 78)  But pursuant to this Court's Local Rules, Plaintiff could have filed an answering brief of up to 20 pages (or, to the extent that 20 pages was not sufficient, Plaintiff could have sought leave of the Court to permit additional pages of briefing).  D. Del. LR 7.1.3(a)(4).  Instead, Plaintiff filed an answering brief that was seven and a half pages long.  (D.I. 120; Tr. at 79)  So Plaintiff had more than enough briefing space to make detailed arguments about the collateral estoppel issues at play here.  (D.I. 121 at 11; Tr. at 80)  The Court will only address herein the arguments Plaintiff *did* make.

Plaintiff's counsel also suggested during oral argument that a reason why Plaintiff did not say more in its briefing about questions of materiality was because Plaintiff did not want to risk being "boxed in" to those positions "without the proper claim construction [having yet occurred]" or being "trapped into making arguments now that could impact our infringement case" in the future.  (Tr. at 73, 81-83)  But this cannot be a viable defense to Defendant's Motion.  Patentees, for example, face similar circumstances when responding to motions to dismiss premised on Section 101 grounds; there, as here, a movant is arguing that the presence of an affirmative defense, evident in the complaint and exhibits attached thereto, warrants dismissal of the plaintiff's pleading.  In the Section 101 context, it is not enough for a patentee to simply point to the fact that the case is at an early stage and suggest that, as a result, it need not persuasively address the merits of the defendant's motion.  Instead, if there are reasons why the motion should be denied, the patentee is expected to actually express those reasons to the Court; failure to do so could lead to a grant of the motion.  *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (affirming the district court's grant of a motion to dismiss based on Section 101 grounds, and rejecting the plaintiff's argument that the district court had erred in determining ineligibility without first conducting claim construction, because the plaintiff "ha[d] not explained how it might benefit from any particular term's construction under an *Alice* § 101 analysis"); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1359-60 (Fed. Cir. 2017) (affirming the district court's dismissal of a complaint on Section 101 grounds at the pleading stage and rejecting the plaintiff's argument that "the district court should have undertaken claim construction and developed the factual record before analyzing whether the claims were eligible" under Section 101, by further noting that the plaintiff "provided no proposed construction of any terms or proposed expert testimony that

More specifically, for Newly Asserted Claim 111, Plaintiff focused on the "receiving a request to validate the award" element; here, it noted that this element is "different from the allegedly 'corresponding' element in [Invalidated Claim] 14[,]" in that claim 111's element has no further content to it, but claim 14 claims "receiving a request to validate the award *from a sponsor among the plurality of sponsors associated with the selected incentive program*." ('660 patent, Reexamination Certificate, col. 2:58-60 (emphasis added); *see also* D.I. 120 at 6 n.4)  Similarly, with regard to Newly Asserted Claim 95, Plaintiff pointed to the fact that the "host computer" referenced therein "does not include the limitation of '*having a server*' [that is] present in [Invalidated Claim] 87." (D.I. 120 at 6 n.4 (emphasis added))

The Court finds this argument to be deficient.  To start, as Plaintiff has acknowledged, the fact that the claim language of the relevant element of the Invalidated Claim and the Newly Asserted Claim is *different* is not dispositive as to whether collateral estoppel applies here.  (Tr. at 82)  Instead, the issue is whether the differences between the respective claims *materially alter the question of invalidity*; if they do not, then collateral estoppel can apply.  *See, e.g., Ohio Willow Wood*, 735 F.3d at 1342.  Beyond pointing out the superficial differences in language between the respective claims, Plaintiff made no further argument as to why those differences actually are material to the invalidity inquiry.  *See NetSoc LLC v. Oath, Inc.*, No. 18-CV-12267

---

would change the § 101 analysis"); (Tr. at 83-84).  So too here—Plaintiff's failure to sufficiently articulate reasons why Defendant's Motion is not well taken can be a factor that leads to grant of the Motion.  (Tr. at 19-20, 108-09); *cf. Fellowes, Inc. v. Acco Brands Corp.*, Case No. 10 cv 7587 (consolidated), Case No. 11 cv 8148 (related), 2019 WL 1762910, at *4 (N.D. Ill. Apr. 22, 2019) (concluding that it would be futile for a patentee to amend its pleading to assert certain patent claims because the patentee would be collaterally estopped from doing so, and explaining that the court's conclusion regarding collateral estoppel as to certain claims was bolstered by the fact that "Plaintiff . . . fail[ed] to explain how [a particular limitation found in certain of the asserted claims but not in the adjudicated claims] would change an invalidity analysis").

(RA), 2020 WL 419469, at *7 (S.D.N.Y. Jan. 24, 2020) (granting a motion to dismiss on collateral estoppel grounds, where the patentee merely pointed to facial differences between the invalidated and unadjudicated patent claims, in part because "while Plaintiff's assertions as to how the '107 Patent and '591 Patent differ are accurate, these differences do not alter the patents in any material way."). Furthermore, as Defendant persuasively points out, Newly Asserted Claims 95 and 111 are, in fact, *broader* than their comparable Invalidated Claims. (D.I. 121 at 6-7) Claim 111 does not require, as Invalidated Claim 14 did, that the request to validate the award at issue must come from one of the sponsors associated with the incentive program. And claim 95 does not require, as Invalidated Claim 87 did, that the host computer referenced therein must be one "having a server." In these circumstances, where the claim found invalid by the PTAB and the Federal Circuit is narrower in scope than the Newly Asserted Claim, that must mean that the broader Newly Asserted Claim is similarly invalid.[9] (D.I. 121 at 6-7)

Plaintiff makes one other argument about the purported materiality of a difference between Newly Asserted Claim 95 and Invalidated Claim 87; it notes that claim 95 is a method claim, while claim 87 is directed to a system. (D.I. 120 at 6 n.4) But Plaintiff put forward no further argument as to how or why this difference should matter in the invalidity/collateral estoppel analysis. And absent any further elucidation on this point from Plaintiff, the Court

---

[9]        *Cf. AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 982 n.2 (Fed. Cir. 2013) ("[T]his Court observes that broader claims are necessarily invalid where narrower claims have been found to be obvious."); *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319-20 (Fed. Cir. 2007) (finding that where the Federal Circuit had previously decided that two dependent claims of a patent were invalid as obvious, that necessarily meant that the two "broader" independent claims from which the previously-invalidated claims depended must also be invalid); *see also Microsource, LLC v. Eco World Grp., LLC*, 587 F. Supp. 3d 770, 790-93 (N.D. Iowa 2022) (noting that "[i]f a prior claim is invalidated for obviousness, then asserted claims of broader scope raise no new issues of invalidity[,]" and determining that certain claims of an asserted patent were invalid for obviousness on collateral estoppel grounds, where the PTAB had previously declared invalid nearly identical, narrower claims of a different, related patent).

cannot fathom why it should. After all, the Federal Circuit has held in the analogous Section 101/eligibility context that system and method claims that "contain only minor differences in terminology [but] require performance of the same basic process . . . should rise or fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (internal quotation marks and citation omitted) (alteration in original); s*ee also Bancorp Servs. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1276-77 (Fed. Cir. 2012) (explaining that if the claims at issue in an eligibility analysis are otherwise comparable, the fact that some are system/machine/medium claims and others are method/process claims need not make a difference in the patentability analysis). As is indicated above, Newly Asserted Claim 95 is a method claim that is: (1) worded nearly identically to Invalidated Claim 87 and (2) makes use of all material elements of claim 87's system in the claimed method. Thus, the Court discerns no material difference regarding invalidity between the two claims.

For these reasons, it is clear that any differences between Newly Asserted Claims 111 and 95 and Invalidated Claims 14 and 87, respectively, are insufficient to preclude the application of collateral estoppel.

## 2. Newly Asserted Claim 100

Newly Asserted Claim 100 recites a method of incentive program generation and redemption utilizing websites through which a sponsor and a consumer interact with the host, wherein the sponsor builds the incentive program, and the consumer interacts with the interface to participate. Much (though not all) of the content of claim 100's method is found in the similarly-worded system claim of Invalidated Claim 16. The PTAB found claim 16, which depends from claim 1, invalid as: (1) anticipated by Chelliah, *Groupon I*, 2020 WL 1900402, at *12; (2) obvious over Chelliah and Christensen, *id.* at *22; and (3) obvious over Kelly and

17

Stanek, *Groupon II*, 2020 WL 1900398, at \*11.  Claim 16[10] and most of claim 100 are

reproduced below:

| Invalidated Claim 16 | Newly Asserted Claim 100 |
|---|---|
| A system for incentive program generation, comprising: | A method of incentive program generation and redemption, comprising: |
| a network; a sponsor computer connected to the network; a host computer connected to the network, the host computer having a server; | providing a host computer, said host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| an incentive program builder application, running on the server; | providing an incentive program builder application, running on the host computer; |
| a database of objects associated with parameters of the incentive program builder application; | providing a database of objects associated with parameters of said incentive program builder application; |
| and an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application, wherein the host computer is configured to receive first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors, | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program offered to a customer, wherein the sponsor builds an incentive program by interacting with the interface of the incentive program builder application; |
| receive second input from a consumer selecting an incentive program from among the plurality of incentive programs, | |
| issue an award to the consumer corresponding to the selected incentive program, | issuing an award to the consumer in accordance with the incentive program, |
| wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host. | wherein the incentive program is a promotion of the sponsor to the consumer facilitated by the host; |
| receive a request to validate the award from a sponsor among the plurality of sponsors associated with the selected incentive program, | receiving, from the sponsor, a request to validate the award, wherein the award is received by the sponsor from the consumer; |
| and validate the award, | validating the award using the database, |

---

[10]    Below, the elements of claim 1 (from which claim 16 depends) and the additional element of claim 16 are reproduced together as "Invalidated Claim 16."

| Invalidated Claim 16 | Newly Asserted Claim 100 |
|---|---|
| wherein the host, the sponsor, and the consumer are different entities, and wherein the host and the sponsor are different individuals or corporate entities. | wherein the host, the sponsor, and the consumer are different individuals or corporate entities, |
| . . . wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host. | wherein the host computer is provided by a host through which the sponsor offers the incentive program to a consumer, |

('660 patent, Reexamination Certificate, cols. 1:23-54, 2:62-64, 7:53-8:14)

There is a remaining portion of claim 100, not excerpted above, that relates to the

websites through which sponsors and consumers interact with the host.  These website elements

are referenced, in similarly worded form, in Invalidated Claims 17 and 29, as is depicted below:

| Invalidated Claims 17 and 29 | Remaining Elements of Newly Asserted Claim 100 |
|---|---|
| **17.** The system of claim 16, wherein the host computer is configured to host a website of the host through which the sponsor builds the incentive program. | wherein the host computer hosts a website of the host through which the sponsor builds the incentive program; |
| **29.** The system of claim 16, wherein an interface of a website of the host receives consumer interaction to participate in the incentive program. | and providing an interface of a website of the host, wherein the consumer interacts with the interface to participate in the incentive program, wherein the website of the host provides to the consumer incentive programs of a plurality of sponsors. |

('660 patent, Reexamination Certificate, cols. 2:65-67, 3:27-29, 8:14-21)

The PTAB determined that claim 17, which encompasses the system of claim 16 with the

added limitation that the host computer hosts a website through which the sponsor builds the

incentive program, was invalid for several reasons.  First, the PTAB concluded that claim 17 was

anticipated by Chelliah, and was obvious over Chelliah in view of Christensen, because Chelliah

disclosed a "graphical interface (e.g., the Store Management Dashboard ['the Dashboard

interface']) for the sponsor to build incentive programs"; even though Chelliah did not explicitly

state that the Dashboard interface is a web interface, the PTAB found that "[a person of ordinary

skill in the art] would have known to implement the Dashboard interface as such." *Groupon I*, 2020 WL 1900402, at *12-13 (alteration in original); *see also id*. at *21-22.  The PTAB also found that claim 17 was obvious over Kelly in view of Stanek because "Stanek teaches that the host's web server can be configured to provide a sponsor with functionality necessary to build a promotional web game employing the FrontPage Editor." *Groupon II*, 2020 WL 1900398, at *11 (internal quotation marks and citation omitted).

As for claim 29, which encompasses the system of claim 16 and adds that the interface of a website of the host receives consumer interaction to participate in the incentive program, the PTAB also found the claim invalid for several reasons.  The PTAB first concluded that claim 29 was anticipated by Chelliah, and obvious over Chelliah and Christensen, because Chelliah discloses "a consumer participating in the incentive programs via the website of the host 'using a WWW browser application across a TCP/IP connection[.]'" *Groupon I*, 2020 WL 1900402, at *13-14; *see also id*. at *19-22.  The PTAB also found claim 29 as obvious over Kelly and Stanek where Kelly disclosed that a "player . . . may interact via a website of the host to participate in the promotional game[.]" *Groupon II*, 2020 WL 1900398, at *12.

Defendant therefore argues that in invalidating claims 17 and 29, "the PTAB necessarily found that Chelliah, as well as a system combining Kelly and Stanek, disclosed host systems having websites with which sponsors interacted to build incentive programs, and consumers interacted to participate." (D.I. 118 at 11)  And thus, it asserts that Newly Asserted Claim 100, which contains requirements similar to claims 17 and 29, is not materially different from an invalidity perspective. (*Id.*)

In its briefing, Plaintiff responded only by noting Defendant's argument (i.e., "that the PTAB found that 'website' elements of asserted claim 100 were found in the prior art") and by

accusing Defendant of wrongly "attempting a 'mix-n'-match' style of patent validity analysis" (hereafter, Plaintiff's "mix-and-match" argument).  (D.I. 120 at 6)[11]

The Court sides with Defendant.  The PTAB found that Chelliah and Kelly/Stanek disclosed the website elements of claims 17 and 29, and it found that the remaining system elements describing those two claims were disclosed in:  (1) Chelliah; (2) Chelliah in combination with Christensen; and (3) Kelly in combination with Stanek.  And relatedly, claim 100's elements (as is shown in the charts above), appear to include all of the important content of claims 17 and 29, including the website elements.  Now to be sure, claim 100 has two website elements, and both of those elements are not found in the same Invalidated Claim; instead, one element apiece is found in Invalidated Claim 17 and 29, respectively.  But that fact should not make a difference to the collateral estoppel analysis.  If Chelliah or Chelliah/Christensen or Kelly/Stanek all invalidate claim 17 *and* claim 29, then this must mean that the same

---

[11]      In explaining what it meant by this "mix-and-match" argument, Plaintiff simply cited to the Federal Circuit's opinion in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), and particularly to *KSR*'s statement that a claim "composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." 550 U.S. at 418.  *KSR* does say this, of course.  In *KSR*, the Federal Circuit explained that in order to find a claim invalid as obvious, an accused infringer must not only demonstrate that each of the claim elements was found in the prior art references at issue, but must also, *inter alia*, "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does."  *Id*.

However, the Court does not understand why this portion of *KSR* is in conflict with the analysis it is undertaking here.  In finding that certain of the Invalidated Claims were invalid as obvious, the PTAB necessarily found both that the invalidating references at issue disclosed all of the Invalidated Claims' elements, *and* that a POSITA would have been motivated to combine those elements in the way that the claimed invention does.  (D.I. 121 at 8)  In this opinion, the Court is simply assessing, from there, whether any limitations found in the Newly Asserted Claims that differ from those in the Invalidated Claims are material to an invalidity analysis. This is not a wrongful "mix-and-match style of patent validity analysis."  It is the very type of collateral estoppel analysis that the Federal Circuit has instructed federal district courts to conduct.  (*Id*.)

reference/reference combinations disclose all of the content found in claim 100 too.  And while there are otherwise a few words in claim 100 that differ from the words used in claims 17 and 29 (and claim 16, from which they depend), Plaintiff did not offer any argument as to why such wording differences are material to the Court's analysis here.  *See Ohio Willow Wood*, 735 F.3d at 1343 ("Thus, the mere use of different words in these portions of the claims does not create a new issue of invalidity.").  Nor can the Court discern any reason why they would be.

Therefore, the Court concludes that Plaintiff is collaterally estopped from asserting claim 100.  *See In re Arunachalam*, 709 F. App'x 699, 703 (Fed. Cir. 2017) (applying collateral estoppel where "any differences between the two sets of claims[, one set in one patent having been deemed unpatentable by the PTAB, the other set in a related patent having been asserted in the instant district court litigation, were] not material such that those differences would affect the patentability of the challenged claims").

### 3.    Newly Asserted Claims 103, 104 and 107-110

Next, the Court addresses six additional claims:  Newly Asserted Claims 103, 104 and 107-110.  The Court will begin with claims 103 and 107 and in doing so, it will focus solely on claim 107. [12]

Defendant argued that claim 107 recites the use of a nearly identical asserted invention to that found in Invalidated Claim 1, a system claim.  (D.I. 118 at 14)  The PTAB concluded that

---

[12]    In its briefing, Defendant asserted that claim 107 is "representative" of claim 103 because the two claims are "essentially identical[.]"  (D.I. 118 at 14)  Plaintiff did not dispute this.  (D.I. 120)  And claim 103 and claim 107 are indeed very similar; the former is a "method of incentive program generation" and the latter is a "method of incentive program generation and redemption[.]"  ('660 patent, Reexamination Certificate, cols. 8:56-9:16, 9:24-10:3)  Claim 107 appears to contain nearly all of claim 103's meaningful limitations, and it also adds a few additional narrowing limitations (e.g., its "issuing an award" and "receiving, from the sponsor" elements) relating to an award issued to a consumer.  The Court thus sees no reason not to treat claim 107 as representative of claim 103 for these purposes.  It will do so here.

the system in claim 1 was invalid as obvious over Kelly and Stanek. *Groupon II*, 2020 WL

1900398, at *10.  Claim 1 and claim 107 are reproduced below:

| Invalidated Claim 1 | Newly Asserted Claim 107 |
|---|---|
| A system for incentive program generation, comprising: | A method of incentive program generation and redemption, comprising: |
| a network; a sponsor computer connected to the network; a host computer connected to the network, the host computer having a server; | providing a host computer, said host computer connected to a network for hosting a sponsor having a sponsor computer connected to the network; |
| an incentive program builder application, running on the server; | providing an incentive program builder application, running on the host computer; |
| a database of objects associated with parameters of the incentive program builder application; and | providing a database of objects associated with parameters of said incentive program builder application; |
| an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program building application, | providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program offered to a customer, wherein the sponsor builds an incentive program by interacting with the interface of the incentive program builder application; |
| wherein the host computer is configured to receive first input from a plurality of sponsors corresponding to the parameters for creating a plurality of incentive programs associated with the plurality of sponsors via the interface of the incentive program builder application from a plurality of sponsors, receive second input from a consumer selecting an incentive program from among the plurality of incentive programs, | |
| issue an award to the consumer corresponding to the selected incentive program, and | issuing an award to the consumer in accordance with the incentive program, wherein the incentive program is a promotion of the sponsor to the consumer facilitated by the host; |
| receive a request to validate the award from a sponsor among the plurality of sponsors associated with the selected incentive program, and | receiving, from the sponsor, a request to validate the award, wherein the award is received by the sponsor from the consumer; |
| validate the award, | validating the award using the database, |
| wherein the host, the sponsor, and the consumer are different entities, and wherein | wherein the host, the sponsor, and the consumer are different individuals or corporate entities; and |

23

| Invalidated Claim 1 | Newly Asserted Claim 107 |
|---|---|
| the host and the sponsor are different individuals or corporate entities. | |
| | issuing an electronic card to the consumer, the electronic card storing information of the consumer for accessing the promotion of the sponsor offered to the consumer. |

('660 patent, Reexamination Certificate, cols. 1:23-54, 9:24-10:3)

As can be seen in the chart above, the only element in Newly Asserted Claim 107 that does not have a clear analogue in Invalidated Claim 1 is claim 107's final "electronic card" limitation ("issuing an electronic card to the consumer, the electronic card storing information of the consumer for accessing the promotion of the sponsor offered to the consumer"). But in its briefing, Defendant noted that another Invalidated Claim—Invalidated Claim 12— *did* have an electronic card limitation. (D.I. 118 at 15) Claim 12 recites in relevant part:

> A method of providing incentive program generation and award fulfillment, comprising: . . .
>
> providing an electronic card for fulfillment of an award, having memory for storing information associated with the consumer, wherein the information may be a personal identification number or information associated with the consumer's participation in an incentive program; . . .

('660 patent, cols. 48:58-59, 49:13-18) In IPR2019-00044, the PTAB concluded that Kelly and Stanek disclosed the electronic card limitation found in claim 12. *Groupon II*, 2020 WL 1900398, at *18-21. In support of this conclusion, the PTAB cited, *inter alia*, to the following arguments that Defendant made during the IPR:

> Kelly contains numerous disclosures regarding the use of a smart card to store player-specific prize information:
>
> [A] player can insert a card or other medium which stores electronic data into a suitable output device 18. The game unit 10 then can write electronic data on the medium indicating the specific prize that was won by the player, and/or indicating a

> number of tickets or prize credits which the player has won.  The
> player can then take the card and insert the card into a suitable card
> reader connected to a prize selection apparatus[.] . . .
>
> Kelly discloses that such smart cards may include a personal
> identification number or information associated with the
> consumer's participation in the incentive program.

(IPR2019-00044, Paper 10 at 50-51 (citations omitted) (*cited in Groupon II*, 2020 WL 1900398,

at *19))

In light of all of this, Defendant argues that the electronic card limitation in Newly

Asserted Claim 107 is not materially different from the electronic card limitation in Invalidated

Claim 12.  It therefore asserts that the PTAB necessarily found that Kelly and Stanek disclosed

all of the elements of claim 107 (as part of its validity analysis of claims 1 and 12), including the

electronic card limitation, such that Plaintiff is collaterally estopped from asserting claim 107

(and, relatedly, claim 103).  (D.I. 118 at 17)

In response, Plaintiff again said very little in its briefing.  It merely noted that the

"electronic card" element was absent from Invalidated Claim 1, and it again suggested that

Defendant was somehow wrongly attempting a "mix-and-match" invalidity argument.  (D.I. 120

at 6)

At oral argument, Plaintiff's counsel added a bit more.  Counsel stated that its "strongest"

arguments against estoppel relate to the claims with the electronic card limitation in them.  (Tr. at

86)  Counsel then pointed to claim 107's requirement that the method not only "issu[es] an

electronic card to the consumer, the electronic card storing information of the consumer" but that

this information is to be used "for accessing the promotion of the sponsor offered to the

consumer."  ('660 patent, Reexamination Certificate, col. 10:1-3; *see also* Tr. at 86 ("Here the

claim language includes the accessing feature, and that was not disclosed in the prior art.  So

right there is a difference.")) That said, aside from noting that this "for accessing the promotion" language was "different" from the language in claim 12, and making the bald statement that this limitation "was not disclosed in the prior art[,]" counsel did not say any more about why this additional claim language was material to patentability. (Tr. at 86) The Court then followed up. It asked why it was "plausible . . . from an invalidity perspective [that] there could be a material difference between what was disclosed in this prior art [i.e., Kelly] . . . versus what the electronic card limitation [discloses] in [c]laim 107[.]" (*Id*. at 86-87) On that front, Plaintiff's counsel acknowledged that Plaintiff "did[ not] make [that type of] argument" in its briefing (i.e., about why claim 107's "for accessing the promotion" language was material to patentability); instead, counsel acknowledged that its briefing had relied on "conclusory" statements regarding materiality. (*Id*. at 87-89) Counsel noted that Plaintiff had not yet assessed the prior art in order to be able to better answer the Court's question, and so he was not "prepared to" make such an argument at this stage of the case. (*Id*. at 87-91) [13]

The Court concludes that Plaintiff is collaterally estopped from asserting Newly Asserted Claim 107 (and thus, also Newly Asserted Claim 103). The electronic card limitation in claim 107 first requires that an electronic card be issued and that it be for "storing information of the consumer[.]" ('660 patent, Reexamination Certificate, col. 10:2) There can be no question that this concept is found in claim 12 and was disclosed in Kelly, (Tr. at 50); indeed, Plaintiff does not argue otherwise. As for the electronic card limitation's additional requirement that the card

---

[13]      Twice during this portion of oral argument, Plaintiff's counsel suggested that claim construction might illuminate why the "for accessing the promotion"  language in claim 107 makes a material difference regarding patentability. (Tr. at 88, 90) The Court then asked why this was so—i.e., what construction would Plaintiff give to that term, and how would such a construction help to demonstrate that this aspect of claim 107 was not disclosed by Kelly? (*Id*. at 92) To that, Plaintiff's counsel responded that he could not answer that question now, but would be prepared to do so at the summary judgment stage of the case. (*Id*.)

be "for accessing the promotion of the sponsor offered to the consumer[,]" ('660 patent,

Reexamination Certificate, col. 10:2-3), the record clearly indicates that this aspect of the

invention was also implicated by claim 12 and disclosed in Kelly.  More specifically:

- Claim 12 had a limitation requiring that the electronic card described therein was one "for fulfillment of an award" and that the information retained by the card was "associated with the consumer's participation in an incentive program[.]"  ('660 patent, col. 49:13-17)  In other words, the claim facially required that the electronic card must be capable of being used by the consumer to participate in the incentive program and to obtain (or "fulfil[l]") an award offered by the program's sponsor.  (Tr. at 50 (Defendant's counsel noting that the electronic card in claim 12 contains "information for accessing the promotion of a sponsor because it . . . is an electronic card that is intended to fulfill an award [and it] has information necessary for the customer's or consumer's participation in the in[c]entive program"); *id.* at 51)  In order to be able to use an electronic card to fulfill an award offered by a sponsor (i.e., what is described in claim 12), the card would necessarily have to be able to be used for "accessing the promotion of the sponsor" (i.e., what is described in claim 107).

- In determining that Kelly disclosed the electronic card limitation in claim 12, the PTAB cited to Defendant's description of Kelly.  That description noted how Kelly disclosed that:  (1) the consumer information on the electronic card described therein is "associated with the consumer's participation in the incentive program"; and (2) the electronic card can be inserted "into a suitable card reader connected to a prize selection apparatus[.]"  This demonstrates that Kelly disclosed use of an electronic card "for accessing the promotion of the sponsor offered to the consumer."  (*Id.* at 51-52)

Therefore, in light of the PTAB's finding that claims 1 and 12 were invalid as obvious in light of

Kelly and Stanek, Plaintiff is collaterally estopped from asserting claims 103 and 107, since no

additional elements in those claims would materially alter the question of invalidity.

This then leads to the analysis of Newly Asserted Claims 104 and 108-10, all of which

depend from Claims 103 and 107.  Claims 104 and 108-10 each contain further limitations

relating to the electronic card element of claims 103 and 107—in that they require "validating participation of the consumer in the promotion using the electronic card" or "validating the award using the database and the electronic card" or "wherein the electronic card indicates participation of the consumer in the promotion." ('660 patent, Reexamination Certificate, cols. 9:17-19, 10:4-11)  Defendant argues that these four additional claims each simply "recite[ further] use of the electronic card in connection with the consumer's participation in the incentive program or the validation of the award" and that Kelly "disclosed use of an electronic card for each of these purposes." (D.I. 118 at 17)  The Court cannot see why Defendant's position is incorrect. (S*ee* IPR2019-00044, Paper 10 at 50-51 (Defendant noting to the PTAB that Kelly discloses use of the electronic card for insertion into a card reader that is connected to the prize selection apparatus))  And crucially, Plaintiff provided *no specific argument to the contrary*, either in its briefing or at oral argument, and thus has waived any such argument here. *See supra* n.8.  Thus, the Court finds that collateral estoppel precludes Plaintiff's assertion of these additional claims, as well.

### 4.   Newly Asserted Claim 91

Defendant next argued that Newly Asserted Claim 91 "duplicates limitations found in Invalidated Claims 7 and 87[,]" and, therefore, "[t]he PTAB necessarily determined the method recited in Claim 91 was anticipated by, and obvious in light of, the prior art." (D.I. 118 at 18)  The PTAB found that Claims 7 and 87 were invalid as:  (1) anticipated by Chelliah, *Groupon I*, 2020 WL 1900402, at *14-15, *17-18; (2) obvious over Chelliah and Christensen, *id.* at *22; (3) obvious over Kelly and Stanek, *Groupon II*, 2020 WL 1900398, at *13, *15; and (4) obvious over Kelly and Wong, *id.* at *21.  The relevant portions of claim 7, along with the entirety of claim 87 and claim 91, are reproduced below:

28

| Invalidated Claims 7 and 87 | Newly Asserted Claim 91 |
|---|---|
| A method for generating an incentive program, comprising: (Claim 7)<br><br>A system for incentive program generation, comprising:  (Claim 87) | A method for generating an incentive program, comprising: |
| providing a computer;  (Claim 7)<br><br>a network; a sponsor computer connected to the network; a host computer connected to the network, the host computer having a server; (Claim 87) | providing a computer; |
| providing an incentive program builder application of such computer;  (Claim 7)<br><br>an incentive program builder application, running on the server;  (Claim 87) | providing an incentive program builder application of such computer; |
| providing a database of objects associated with parameters of an incentive program; (Claim 7)<br><br>a database of objects associated with parameters of the incentive program builder application;  (Claim 87) | providing a database of objects associated with parameters of an incentive program |
| providing an interface of the incentive program builder application for sponsor entry of parameters for an incentive program; (Claim 7)<br><br>an interface of the incentive program builder application for sponsor entry of parameters for an incentive program, wherein the sponsor builds an incentive program by interacting with the incentive program builder application,  (Claim 87) | providing an interface of the incentive program builder application for user entry of parameters for an incentive program |
| associating an object in the database with each parameter entered by the plurality of sponsors;  (Claim 7) | associating an object with each parameter entered by the user |
| generating the plurality of incentive programs comprising the objects associated with all of the parameters entered by the plurality of sponsors;  (Claim 7) | generating an incentive program comprising the objects associated with all of the parameters entered by the user |
| wherein the host computer is provided by a host, the host computer configured to allow the sponsor to offer the incentive program to a consumer, wherein the host, the sponsor, and | wherein the computer is a host computer provided by a host through which a sponsor offers the incentive program to a consumer, wherein the host, the sponsor, and the |

| Invalidated Claims 7 and 87 | Newly Asserted Claim 91 |
|---|---|
| the consumer are different entities, wherein the host and the sponsor are different individuals or corporate entities, wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host,  (Claim 87) | consumer are different entities, wherein the host and the sponsor are different individuals or corporate entities, wherein the incentive program is a promotion of the sponsor offered to the consumer and facilitated by the host; |
| receiving second input from a consumer selecting an incentive program from among the plurality of incentive programs[.]  (Claim 7)<br><br>wherein an interface of a website of the host receives consumer interaction to participate in the incentive program, wherein the consumer interaction comprises a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors.  (Claim 87) | receiving consumer interaction through a website of the host to participate in the incentive program wherein the receiving comprises:  receiving a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors. |

('660 patent, Reexamination Certificate, cols. 2:1-31, 5:56-6:19, 6:28-57)

Plaintiff's only rejoinder to Defendant's argument was to note that certain "elements of claim 91" were not found in claims 7 or 87 (it did not say which ones it was talking about), and to make its "mix-and-match" argument.

Again here, the Court sides with Defendant.  Although there are certain elements of claim 91 whose equivalent is not found in claim 7 or claim 87, respectively, Defendant sufficiently demonstrated how the equivalent of every element in claim 91 was found in *either* claim 7 or 87. (D.I. 118 at 20)  As a result, because the PTAB found that Chelliah anticipated both claims 7 and 87, here that necessarily means that Chelliah anticipates claim 91 as well.  And because the PTAB found that Chelliah/Christensen, Kelly/Stanek and Kelly/Wong all rendered both claims 7 and 87 obvious, here that necessarily means that these combinations also render claim 91 obvious.  Moreover, though it is true that some of the wording in claim 91 is slightly different

than that in claims 7 and 87, [14] Plaintiff has not articulated (and the Court cannot see) how those slight differences would make a difference in a validity analysis. *See Ohio Willow Wood*, 735 F.3d at 1342.  The Court therefore concludes that Defendant has established that the assertion of Claim 91 is precluded by collateral estoppel.

### 5. Newly Asserted Claims 92-93 & 96-97

Lastly, the Court assesses Newly Asserted Claims 92-93 and 96-97.  It begins with the latter two claims.

Claims 96 and 97 depend from Newly Asserted Claim 95; as discussed above, Plaintiff is collaterally estopped from litigating claim 95 here in light of the PTAB's decision regarding Invalidated Claim 87.  Claim 95 required, *inter alia*, that the claimed method comprises "receiving a consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors."  ('660 patent, Reexamination Certificate, col. 7:32-34)  Claim 96 simply adds that the consumer request must involve searching for the promotions "using a *name of the sponsor*[,]" while claim 97 adds only that the request has to involve searching by "*type of promotion*[.]"  (*Id*., col. 7:37-39, 7:43-45 (emphasis added))

---

[14]     By way of example, Invalidated Claim 7 includes a limitation requiring that the method comprises "associating an object in the database with each parameter entered by *the plurality of sponsors*[,]" while Newly Asserted Claim 91 includes a limitation requiring that the method comprises "associating an object with each parameter entered *by the user*[.]"  ('660 patent, Reexamination Certificate, cols. 2:16-17, 6:38-39 (emphasis added))  Does this difference in wording (regarding who enters the parameters at issue) materially alter the question of invalidity?  Again, Plaintiff *never specifically argued that it did*.  At oral argument, the Court questioned Defendant's counsel about this issue, and counsel persuasively explained that in claim 91, the term "user" can include reference to the "sponsor."  (Tr. at 55)  This is because the claim explains that it is the "sponsor" who offers the incentive program, and that the "user" is the one who is associating objects with certain parameters that are used to build that very same incentive program.  (*Id*.)  So it does in fact appear that the "user" in claim 91 can be a "sponsor" (as described in claim 7).  Thus, these two claim limitations do not appear to be materially different in scope from an invalidity perspective.

With regard to claim 96's add of searching by sponsor name, Defendant argued that the PTAB found claim 87 invalid "based upon prior art disclosing the search for incentive programs using the identity of the *sponsor* (*i.e.*, the supplier's 'storefront' or 'brand name')." (D.I. 118 at 12-13 (emphasis in original))  More specifically, in IPR2019-00061, the PTAB found claim 87 anticipated by Chelliah; in doing so, it noted that:  (1) claim 87 required that, *inter alia*, a consumer make a request to "search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors"; and (2) this limitation was found in Chelliah, which involved a consumer request that "prompts a search of the database for incentive programs *of th[e] supplier*[.]"  *Groupon I*, 2020 WL 1900402 at *17 (emphasis added).  Additionally, the PTAB also found claim 87 obvious in light of Chelliah in combination with Christensen; in doing so, the PTAB agreed that Christensen disclosed the customer's "ability to search for promotions by *brand name*[.]"  *Id.* at *20 (internal quotation marks and citations omitted) (emphasis added).  These do appear to be clear indications from the PTAB that Chelliah and Chelliah/Christensen disclosed the ability to search for incentive programs by sponsor name.

As for claim 97's limitation that requires searching by type of promotion, Defendant noted that the PTAB found claim 87 invalid as obvious and, in doing so, "found that it would have been obvious to search by program *type*." (D.I. 118 at 13 (emphasis in original))  More specifically, in IPR2019-00061, when assessing claim 87's limitation that the method include a "consumer request to search for promotions from among a plurality of promotions offered to the consumer by a plurality of sponsors[,]" the PTAB agreed that Christensen revealed the limitation because it disclosed the customer's ability to search for promotions by "*category*[.]"  *Groupon I*, 2020 WL 1900402, at *20 (emphasis added).  And in IPR2019-00044, the PTAB also found the limitation disclosed in light of Kelly and Stanek, in that Kelly "disclos[ed] presenting 'a

consumer with icons representing a variety of games, and the ability to cause the system to retrieve available games in order to make a selection,'" and so "it would have been obvious 'to employ this existing search functionality to also *deliver game categories* to the participants, given its usefulness in permitting selections where there are a large number of potential games available of differing types.'"  *Groupon II*, 2020 WL 1900398, at *15 (citations omitted) (emphasis added).  These also appear to be clear indications from the PTAB that Chelliah/Christensen and Kelly/Stanek disclosed the ability to search for incentive programs by promotion type.

Plaintiff did not respond to these arguments at all in its briefing or at oral argument.  In light of that, and in light of the analysis set out above, the Court agrees with Defendant that the limitations added by claims 96 and 97 are found in the same prior art that invalidated claim 87. Thus, these additional limitations in Claims 96 and 97 do not materially alter the question of invalidity, such that collateral estoppel applies.  *See Chrimar Sys., Inc. v. Ruckus Wireless, Inc.*, Case No. 16-cv-00186-SI, 2020 WL 4431787, at *5-6 (N.D. Cal. July 31, 2020) (concluding that the patentee was collaterally estopped from litigating amended claim 145, which included the requirement that a "BaseT Ethernet hub" be utilized, because in concluding that claim 1 of the patent was invalid, the PTAB had explained that a reference ("Hunter") disclosed use of such a hub, and Hunter and another reference would otherwise render amended claim 145 obvious).

This leaves Newly Asserted Claims 92 and 93, which depend from Newly Asserted Claim 91.  Above, the Court concluded that Plaintiff is collaterally estopped from pursuing claim 91 in light of the PTAB's determination that claims 7 and 87 were invalid in light of Chelliah, Chelliah/Christensen, Kelly/Stanek and Kelly/Wong.  Claims 92 and 93 add to claim 91 the very same additional limitations found in claims 96 and 97—that is, claim 92 adds a limitation that

the method receives a request to search for incentive programs by sponsor name, while Claim 93 adds that the request requires searching by program type.  (D.I. 118 at 21; '660 patent, Reexamination Certificate, col. 6:58-67)  Given the application of collateral estoppel to claims 96 and 97 in light of the disclosures in certain of the invalidating art listed above, the Court similarly concludes that Plaintiff is also estopped from asserting claims 92 and 93.  Like with claims 96 and 97, Plaintiff did not make any argument regarding material differences found in claims 92 and 93, and the Court sees none.

## IV.     CONCLUSION

This is one of those (perhaps somewhat rare) circumstances where, even at the motion to dismiss stage, a defendant has demonstrated that a plaintiff is collaterally estopped from asserting certain patent claims in light of the PTAB's decision that other (slightly-differently-worded) claims of the same patent were invalid.  Defendant here made fulsome arguments as to why any differences in the Newly Asserted Claims and Invalidated Claims did not materially alter the question of invalidity.  And Plaintiff did not provide much in the way of response.  Thus, for the foregoing reasons, the Court GRANTS Defendant's Motion.

Plaintiff did not seek to amend its Operative Complaint in lieu of dismissal, and the Court has not been provided with an example as to how amendment would be anything other than a futile exercise.  So, the Court further rules that the operative complaint be dismissed WITH PREJUDICE.

An appropriate Order will issue.